UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AIG GLOBAL INVESTMENT CORP.,

Plaintiff,

v.

TYCO INTERNATIONAL GROUP, S.A.,

Defendant.

---

No. _____

07 CV 3693

**COMPLAINT**

JUDGE SCHEINDLIN

MAY 09 2007

Plaintiff AIG Global Investment Corp., by its undersigned attorneys, as and for its complaint in this action, alleges on its own knowledge or otherwise on information and belief:

### Nature of the Action

1. This is an action for a declaratory judgment and to enjoin false and misleading disclosures in connection with a tender offer for public notes. On April 27, 2007, defendant Tyco International Group, S.A., (the "Company" or "Tyco") filed an Offer to Purchase and Consent Solicitation Statement (the "Solicitation Documents") with the Securities and Exchange Commission. In furtherance of a plan for liquidating the Company, Tyco's Solicitation Documents (a) offer to acquire, for a below-contract price, the public debt securities that Tyco issued in 1998 and 2003 (the "Notes"), and (b) also solicit the consent (in a coercive manner) of Tyco's public noteholders to so-called "clarifying amendments" to the "Successor Obligor" Clauses contained within the 1998 and 2003 Indentures governing those Notes.

2. Specifically, the Successor Obligor Clauses forbid Tyco from transferring the Notes unless the Company is also transferring "all or substantially all" of

its assets to the same transferee. Tyco says that the simple words "all or substantially all" should now be "clarified," but the characterization of these amendments as mere "clarifications" is totally false and misleading. Indeed, although Tyco never acknowledges it in the Solicitation Documents, the proposed amendments in fact effect a material change to the Successor Obligor Clauses – a change which, as we discuss below, is directly in conflict with the well-established law on the meaning of such clauses in this Circuit. The Solicitation Documents not only omit the highly material information that Tyco's proposal violates the noteholder's rights, but also state the obviously erroneous view that Tyco could proceed with the liquidation even without the "clarifying" amendments.

3.  The Company, issuer of the Notes under the 1998 and 2003 Indentures, has announced a plan of liquidation involving the break-up of Tyco into three separate public companies and the subsequent dissolution of the issuing Company (the "Proposed Liquidation Transaction"). In the Solicitation Documents, Tyco states that, notwithstanding the Successor Obligor Clauses, it is free to carry out this Proposed Liquidation Transaction without the consent of the noteholders by simply transferring the Notes to one of the three new companies, a new company comprised of assets that, according to Tyco, today make up only 27% of the Company. This is so, says Tyco, because after spinning off 73% of its assets to its shareholders, the remaining company will hold "all or substantially all" of the Company's assets within the meaning of the Successor Obligor Clauses. Tyco's "clarifying" amendments rewrite the Successor Obligor Clauses to expressly allow Tyco to transfer the Notes to this new company – almost certainly at the noteholders' expense.

4. Tyco's Proposed Liquidation Transaction violates the Successor Obligor Clauses in the 1998 and 2003 Indentures. In *Sharon Steel Corp. v. The Chase Manhattan Bank*, 691 F.2d 1039 (2d Cir. 1982), the Court of Appeals considered successor obligor clauses substantively identical to those in the 1998 and 2003 Indentures. Considering the effect of the clauses in the context (as here) of a liquidation plan, the Second Circuit held "that boilerplate successor obligor clauses do not permit assignment of public debt to another party in the course of a liquidation unless 'all or substantially all' of the assets of the company *at the time the plan of liquidation is determined upon* are transferred to a single purchaser." *Id.* at 1051 (emphasis added).

5. Thus, as a matter of law, Tyco cannot transfer its Notes to a new company that will hold less than a third of the Tyco's assets at the time Tyco announced its plan of liquidation. Consequently, Tyco's proposed amendments are not "clarifications"; they are attempts to circumvent the holding of *Sharon Steel*. The Solicitation Documents say not a word about *Sharon Steel*, nor the Company's intention to circumvent this longstanding and controlling legal authority. Nothing in Tyco's disclosures indicates that its Proposed Liquidation Transaction, and the consents solicited therefor, violate the rights of noteholders that *Sharon Steel* firmly established.

6. The Solicitation Documents thereby violate the federal securities laws in a manner that only an injunction restraining the tender offer and consent solicitation may remedy.

7. Significantly, Tyco did not have to pursue this path. Under the Indentures, Tyco is able to fully redeem the Notes at an already agreed upon price. Tyco,

3

however, has chosen not to honor that contractual obligation. Instead, through its coercive tender offer, Tyco is seeking to obtain all of the benefits of the redemption provisions, without paying the noteholders the previously agreed upon price. This they simply cannot do. By this action, plaintiff, holder of Notes under both the 1998 and the 2003 Indentures, seeks just such declaratory relief.

## The Parties

8. Plaintiff AIG Global Investment Corp. is a New Jersey corporation with its principal place of business in New York City, New York. AIG serves as investment adviser and/or subadviser to various funds and accounts. AIG is a holder of the Notes under both the 1998 and 2003 Indentures.

9. Defendant Tyco International Group, S.A. (again, "Tyco" or the "Company") is a Luxembourg company that is a wholly owned subsidiary of Tyco International Limited, a Bermuda corporation.

10. The Company, which operates in over one hundred countries around the globe, is a diversified manufacturing and service company that engages in three major lines of business: (a) designing, manufacturing and distributing engineered electronic components, network solutions and wireless systems (the "Electronics Business"); (b) developing, manufacturing and distributing medical devices and supplies, diagnostic imaging agents and pharmaceuticals for use in clinical and home settings (the "Healthcare Business"); and (c) designing, manufacturing, installing and servicing fire detection and suppression systems, as well as installing, monitoring and maintaining electronic security systems (the "Fire and Security Business"). The Proposed Liquidation

Transaction contemplates breaking these three businesses into three new, separate public companies.

### Jurisdiction & Venue

11. This action arises under Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(e), and the rules and regulations promulgated thereunder, 17 C.F.R. § 240.14d-1, *et seq.*

12. Jurisdiction over the subject matter is based on 28 U.S.C. §§ 1331 and 1367, and Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa.

13. Venue in this district is proper pursuant to Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391.

### Tyco's False and Misleading Disclosures

**The Successor Obligor Clauses**

14. Tyco issued approximately $4.6 billion of public debt under the 1998 Indenture, and approximately $1 billion of public debt under the 2003 Indenture.

15. Under the Indentures governing the Notes, Tyco cannot sell, transfer or convey "all or substantially all" of its assets to another entity unless that transferee entity assumes Tyco's obligations under the Notes. Each of the Indentures specifically includes a Successor Obligor Clause, which says that Tyco:

> **will not merge or consolidate with any other Person** *or sell or convey all or substantially all of its assets to any Person*, **unless** (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or **the successor entity** or the Person which acquires by sale or

> conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be) ***shall expressly assume the due and punctual payment*** of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, execute and delivered to the Trustee by such corporation. . . .

(1998 Indenture, at § 8.1; 2003 Indenture, at § 10.01 (emphasis added).)

16.     This so-called "successor obligor" clause is intended, among other things, to protect noteholders from the disposition of all or nearly all of a company's assets unless the Notes follow those assets.

**The Proposed Liquidation Transaction**

17.     On January 13, 2006, Tyco announced that its Board of Directors had approved a plan to separate Tyco's portfolio of diverse businesses into three new, independent, publicly-traded companies: "one for its healthcare business (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services business (Tyco and Tyco International Finance S.A.)." (Solicitation Documents, at A-1.)

18.     The first two steps of the Proposed Liquidation Transaction involve the transfer of the Company's Healthcare and Electronics Businesses, which, according to Tyco, represent approximately 73% of Tyco's assets, to two newly formed entities – respectively, Covidien Ltd. and Tyco Electronics Ltd.  (Specifically, the Company has stated that its Healthcare Business comprises 42% of its business and its

Electronics Business comprises 31% of the Company's business.) The Company then intends to spin off these two new entities to its parent company's shareholders.

19. The third step of the Proposed Liquidation Transaction involves the transfer of all of Tyco's remaining assets – its Fire and Security Business – to a third newly formed entity called Tyco International Finance, S.A. ("TIFSA"), and the assumption of the Notes by TIFSA. This will be immediately followed by the liquidation of the Company.

**The Proposed Amendments**

20. The Solicitation Documents consist of (a) an offer to purchase the Notes (the "Tender Offer") and (b) a consent solicitation statement seeking the noteholders' consent to certain proposed amendments to the Indentures ("Proposed Amendments"). The two are intertwined insofar as the Company's obligation to purchase the Notes pursuant to the Tender Offer is conditioned upon the noteholders' consent to the Proposed Amendments.

21. In connection with the Proposed Liquidation Transaction, the Company is pursuing the Tender Offer in order to refinance its outstanding debt. The Solicitation Documents explain that "the Company's obligation to accept for purchase, and to pay for, any Notes validly tendered and not validly withdrawn pursuant to each of the Tender Offers is conditioned upon . . . the receipt of the applicable Requisite Consents . . ." (Solicitation Documents, at iv; *see also id.* at 3 ("A valid tender of . . . Notes will be deemed to be a valid delivery of . . . Consent.").) The Company has therefore conditioned its Tender Offer on consent to the Proposed Amendments.

22.  In the Proposed Amendments, the Company seeks to reconcile the Proposed Liquidation Transaction – under which the Company will transfer its Notes to a newly formed entity receiving only 27% of its assets – with the Indentures' Successor Obligor Clauses, which prohibit the transfer of the Notes unless the Company sells "all or substantially all" of its assets. In relevant part, the Proposed Amendments provide:

> In connection with the Separation Transactions (as defined in Section 8.1(c)), the provisions of Section 8.1(a) shall be interpreted as follows:
>
> (i) the transfer of a portion of the [Tyco International Group, S.A.'s] assets to Tyco Electronics (as defined in Section 8.1(c)) and a portion of the Issuer's assets to Covidien (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed **not** to be a sale or conveyance of all or substantially all of the Issuer's assets or Tyco's assets;
>
> (ii) **the transfer of a portion of the Issuer's assets to Tyco International Finance S.A. (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to Tyco International Finance S.A.** and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and
>
> (iii) the distribution by [Tyco International, Ltd.] to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed **not** to be a sale or conveyance of all or substantially all of Tyco's assets.

(Solicitation Documents, at A-1 (emphasis added).)

23.  These allegedly "clarifying" Proposed Amendments rewrite the Successor Obligor Clauses solely to suit the Proposed Liquidation Transaction.

24.  Tyco's Solicitation Documents are schizophrenic. On the one hand, Tyco seeks the "clarifying" amendment to bless its Proposed Liquidation Transaction. On the other hand, according to Tyco, the transfer of only 27% of Tyco's

assets as of today (based on Tyco's numbers) is a transfer of "all or substantially all" of Tyco's assets for purposes of the Successor Obligor Clauses, because only that portion would remain after the initial transfers in the Proposed Liquidation Transaction. Thus, Tyco is of the view that the "all or substantially all" determination should be made only *after* the first two steps of the Proposed Liquidation Transaction are complete, 73% of the Company's assets are spun off, and only the TIFSA assets representing 27% of the Company's assets remain.

25. Tyco's scheme, however, is a plain violation of the Successor Obligor Clause. The Second Circuit's decision in *Sharon Steel* concerned a liquidation transaction materially indistinguishable from the Proposed Liquidation Transaction. *Sharon Steel* held that successor obligor clauses "do not permit assignment of the public debt to another party in the course of a liquidation unless 'all or substantially all' of the assets of the company *at the time the plan of liquidation is determined upon* are transferred to a single purchaser." *Id.* at 1051 (emphasis added). Under the law of this Circuit, therefore, the "all or substantially all" determination must be made as of January 13, 2006, when the Company approved the Proposed Liquidation Transaction. As of that date, the assets that Tyco plans to transfer to TIFSA represented a mere 27% of the Company's assets – not "all or substantially all" by any means.

**False And Misleading Statements In The Solicitation Documents**

26. As a document filed in connection with a tender offer, Tyco's Solicitation Documents must comply with Sections 14(e) of the Exchange Act, which provides that "it shall be unlawful for any person to make any untrue statement of material fact or omit to state any material fact in order to make the statements made, in

9

the light of the circumstances under which they are made, not misleading." 15 U.S.C. § 78n(e).

27. The Solicitation Documents are false and misleading because they contain affirmative and material misstatements that must be corrected and omit material facts that must be disclosed in order to avoid irreparable harm to plaintiff as well as to other noteholders who may otherwise tender their Notes in reliance thereupon. In particular, the Solicitation Documents are false and misleading because they:

- represent that "the transfer of the [the Company's] assets to [TIFSA] . . . as contemplated by the [Proposed Liquidation] Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to TIFSA." (Solicitation Documents, at A-1; *see also id.* at 1-2, 7, 10, B-1-2.)

- describe the Indenture Amendments as "clarify[ing] the application of certain provisions of the Indentures to the Proposed [Liquidation Transaction]," even though they represent a dramatic change from the true meaning of the Successor Obligor Clauses (*Id.* at ii; *see also id.* at 1, 6, 7, 9, 10);

- assert that "the Company believe[s] that the various steps in the [Proposed Liquidation Transaction] are not prohibited by the Indentures" (*id.* at ii); and

- fail to disclose the existence of a controlling decision in this Circuit, *Sharon Steel*, which requires the determination of "all or substantially all" be made as of the date the plan of liquidation was approved by the Company, and not after a piecemeal liquidation of the Company.

**The Deadline for Consent Solicitations Is Imminent**

28. On May 2, 2007, plaintiff's counsel sent a letter to the Corporate Trust Administrator for The Bank of New York, who is the Indenture Trustee for the Indentures (the "Trustee"), outlining the issues described above, and asking the Trustee

for its view on how the Proposed Liquidation Transaction can be harmonized with *Sharon Steel*. To date, the Trustee has not responded to that letter.

29. Although the Solicitation Documents' say the Company's request for the noteholders' consent to the Proposed Amendments expires on May 24, 2007, the Company has made clear in the Solicitation Documents – in a deliberate effort to coerce the noteholders – that the only way noteholders can actually receive the entire tender amount is by consenting to the Proposed Amendments before the early consent deadline of 5:00 p.m. on May 10, 2007. (*See* Solicitation Documents, at i-ii, 11.)

30. As the early consent deadline for consent approaches, it is critical that Tyco be enjoined from making materially false statements and omissions in violation of Section 14(e) of the Securities and Exchange Act.

**First Claim for Relief**
**(Violation of Section 14(e) of the Securities Exchange Act)**

31. The allegations of foregoing paragraphs are repeated and incorporated by reference into this Count.

32. Section 14(e) of the Securities Exchange Act provides that "it shall be unlawful for any person to make any untrue statement of material fact or omit to state any material fact in order to make the statements made, in the light of the circumstances under which they are made, not misleading." 15 U.S.C. § 78n(e).

33. As more specifically set forth above, Tyco's statements in the Solicitation Documents include material, untrue facts and systematically omitted facts

11

necessary in order to make their statements, in light of the circumstances under which they were made, not misleading.

34. The false statements in and material omissions from the Tender Offer set forth herein are material, and a reasonable noteholder would consider them important to know in deciding whether to tender its Notes.

35. Plaintiff is entitled to an order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure preliminarily and permanently restraining Tyco from consummating the Tender Offer.

**Second Claim for Relief**
**(For Declaratory Judgment)**

36. The allegations of foregoing paragraphs are repeated and incorporated by reference into this Count.

37. The Indentures are valid and enforceable contracts of which the Company and the Trustee are parties, and plaintiff is an explicit third-party beneficiary.

38. The Successor Obligor Clauses of the Indentures allow a successor to assume the Company's obligations on the Notes and Indenture, and require such assumption, only in connection with a sale of "all or substantially all" of the Company's assets. Substitution in connection with a sale of less than "substantially all" of the Company's assets would be a breach of the 1998 and 2003 Indenture and an Event of Default under both the Indentures.

39. The Proposed Liquidation Transaction, as memorialized in the Solicitation Documents, violates the Successor Obligor Clauses of the Indentures for multiple reasons. *First*, under *Sharon Steel*, the "all or substantially all" determination must be made as of January 13, 2006, when the Company approved the Proposed Liquidation Transaction. As of that date, the assets that Tyco plans to transfer to TIFSA represented a mere 27% of the Company's assets – not "all or substantially all" by any means. *Second*, even were that not the case, the transfer of approximately 73% of the Company's assets to Tyco Electronics and Covidien as part of the Proposed Liquidation Transaction will constitute a sale of "all or substantially all" of the Company's assets, such that those transfers without a concurrent assumption of the Notes by such entities render the Company in breach of the 1998 and 2003 Indenture.

40. By virtue of the foregoing, an actual controversy exists among the plaintiff and Tyco.

41. Plaintiff entitled to a judgment declaring that the Proposed Liquidation Transaction is a violation of the Successor Obligor Clauses contained in the 1998 and 2003 Indentures.

**Prayer for Relief**

WHEREFORE, plaintiff seeks relief as follows:

(i) A temporary, preliminary and permanent injunction restraining Tyco from consummating the Tender Offer based on the Solicitation Documents;

(ii) a declaratory judgment that the Proposed Liquidation Transaction violates the Successor Obligor Clauses of the 1998 and 2003 Indentures; and

(ii) such other relief as the Court deems just and proper.

Dated: May 9, 2007

                PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
           Gerard E. Harper (GH-0279)
           Andrew G. Gordon (AG-9239)

1285 Avenue of the Americas
New York City, New York 10019
(212) 373-3000

*Attorneys for Plaintiff AIG Global Investment Corp.*