RECEIVED
MAY 09 2007
JUDGMENT CLERK'S OFFICE

PAUL WEISS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIG GLOBAL INVESTMENT CORP.,

Plaintiff,

v.

TYCO INTERNATIONAL GROUP, S.A.,

Defendant.

07 CV 3693
JUDGE SCHEINDLIN

No. ____________

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Attorneys for Plaintiffs
1285 Avenue of the Americas
New York, New York 10019-6064

# TABLE OF CONTENTS

Page

Preliminary Statement ........................................................................................ 1

Statement of Facts............................................................................................. 3

A. The Parties ................................................................................................ 3

B. The Indentures' Successor Obligor Clauses ............................................. 4

C. The Proposed Liquidation Transaction...................................................... 5

D. The Proposed Amendments to the Indenture............................................. 6

E. The Deadline for Consent Solicitation Is Near .......................................... 8

Argument .......................................................................................................... 9

I. THIS COURT SHOULD ENTER A PRELIMINARY INJUNCTION REQUIRING THE COMPANY TO ISSUE CORRECTIVE DISCLOSURES ..... 9

A. Plaintiff Will Suffer Irreparable Harm Absent Immediate Injunctive Relief ........................................................................................................ 9

B. Plaintiff Is Likely To Succeed on the Merits of Its Claim That the Solicitation Documents Violate Section 14(e) ......................................... 11

C. The Balance of Hardships Tips Decidedly In Plaintiff's Favor ................ 15

Conclusion ........................................................................................................ 16

# TABLE OF AUTHORITIES

Page

## CASES

*American Insured Mortgage Investors* v. *CRI, Inc.*, No. 90 Civ. 6630, 1990 WL 192561 (S.D.N.Y. Nov. 26, 1990) .......... 10

*Berkman* v. *Rust Craft Greeting Cards, Inc.*, 454 F. Supp. 787 (S.D.N.Y. 1978), .......... 15

*Blanchette* v. *Providence & Worcester Co.*, 428 F. Supp. 347 (D. Del. 1977) .......... 14

*Camelot Industrial* v. *Vista Resources Corp.*, 535 F. Supp. 1174 (S.D.N.Y. 1982) .......... 15

*Consol. Gold Fields PLC* v. *Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989) .......... 9

*E.ON AG* v. *Acciona S.A.* 468 F.Supp.2d 537 (S.D.N.Y. 2006) .......... 10

*Federal Express Corp.* v. *Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000) .......... 15

*Forest City Daly Housing, Inc.* v. *Town of N. Hempstead*, 175 F.3d 144 (2d Cir. 1999) .......... 9

*Gulf & Western Industrial, Inc.* v. *Great Atlantic & Pac. Tea Co.*, 476 F.2d 687 (2d Cir. 1973) .......... 9

*Mony Group, Inc.* v. *Highfields Capital Management, L.P.I*, 368 F.3d 138 (2d Cir. 2004) .......... 9

*Piper* v. *Chris-Craft Industrial, Inc.*, 430 U.S. 1 (1977) .......... 11

*Prudent Real Estate Trust* v. *Johncamp Realty, Inc.*, 599 F.2d 1140 (2d Cir. 1979) .......... 11

*Schmidt* v. *Enertec*, 598 F.Supp. 1528 (S.D.N.Y. 1984) .......... 11

*Schreiber* v. *Burlington Northern*, 472 U.S. 1 (1985) .......... 11

*Sharon Steel Corp.* v. *The Chase Manhattan Bank*,
691 F.2d 1039 (2d Cir. 1982) ....................passim

*Sonesta International Hotels Corp.* v. *Wellington Associates*,
483 F.2d 247 (2d Cir. 1973) ....................9, 10

*Spencer Trask Software & Information Services LLC* v. *RPost International Ltd.*,
190 F. Supp. 2d 577 (S.D.N.Y. 2002) ....................9

*TSC Industrial, Inc.* v. *Northway, Inc.*,
426 U.S. 438 (1976) ....................11

**FEDERAL STATUTES**

15 U.S.C. § 78n(e) ....................11

This is an action to enjoin false and misleading disclosures made in connection with a tender offer for public notes.

On April 27, 2007, defendant Tyco International Group, S.A. (the "Company" or "Tyco") filed an Offer to Purchase and Consent Solicitation Statement (the "Solicitation Documents") with the Securities and Exchange Commission. (A copy of the Solicitation Documents is attached to the May 9, 2007 Declaration of Andrew G. Gordon ("Gordon Decl.") as Exhibit A.) In furtherance of a plan for liquidating the Company, Tyco's Solicitation Documents (1) offer to acquire, for a below-contract price, the public debt securities that Tyco issued in 1998 and 2003 (the "Notes"), and (2) also solicit the consent (in a coercive manner) of Tyco's noteholders to so-called "clarifying amendments" to the Successor Obligor Clauses in the Indentures governing the Notes.

The Successor Obligor Clauses specifically forbid Tyco from transferring its public notes unless the Company is also transferring "all or substantially all" of its assets to the same transferee. Tyco says that the simple words "all or substantially all" should now be "clarified."

The characterization of these amendments as mere "clarifications," however, is patently false and coyly misleading. Indeed, although Tyco never mentions it in the Solicitation Documents, the proposed amendments actually effect a material change in the Successor Obligor Clauses in both the 1998 and 2003 Indentures – a change which is directly in conflict with established law on the meaning of such clauses in this Circuit. The Solicitation Documents not only omit the highly material information that Tyco's proposal violates noteholder rights, but also state the obviously erroneous

view that Tyco could proceed with the liquidation even without the "clarifying" amendments.

Here is Tyco's scheme: The Company, issuer of the Notes under the 1998 and 2003 Indentures, has announced a plan of liquidation involving the break-up of Tyco into three separate, new public companies and the subsequent dissolution of the issuing Company (the "Proposed Liquidation Transaction"). According to Tyco, notwithstanding the Successor Obligor Clauses, it is free to proceed with this Proposed Liquidation Transaction, with or without the consent of the noteholders, by simply transferring the Notes to one of the three new companies, a new company which, according to Tyco, is comprised of assets that today make up only 27% of the Company. This is so, says Tyco, because after spinning off 73% of its assets to its shareholders, the remaining company will hold "all or substantially all" of the Company's assets within the meaning of the Successor Obligor Clauses. Nevertheless, supposedly to avoid any confusion, Tyco's "clarifying" amendments rewrite the Successor Obligor Clauses to allow Tyco to transfer the Notes to this new company, almost certainly at the noteholders' expense.

Tyco's scheme, however, is an unabashed violation of the unambiguous Successor Obligor Clauses in the Indentures – and Tyco knows it. In the landmark case of *Sharon Steel Corp.* v. *The Chase Manhattan Bank*, 691 F.2d 1039 (2d Cir. 1982), the Court of Appeals considered identical successor obligor clauses in the context of a plan of liquidation. (*See* Gordon Decl., Ex. B.) The Second Circuit held "that boilerplate successor obligor clauses do not permit assignment of public debt to another party in the course of a liquidation unless 'all or substantially all' of the assets of the company *at the*

*time the plan of liquidation is determined upon* are transferred to a single purchaser." *Id.* at 1051 (emphasis added). In other words, as a matter of law, Tyco cannot transfer its Notes to a new company that holds less than a third of the Tyco's assets at the time Tyco announced its plan of liquidation.

Tyco's proposed amendments are thus not "clarifications" at all; they are intentionally concealed attempts to circumvent the straightforward holding in *Sharon Steel*. Tyco's disclosures say not a word about *Sharon Steel*, nor the Company's intention to circumvent this longstanding and controlling legal authority. Nothing in Tyco's disclosures indicates, even by indirection, that its Proposed Liquidation Transaction, and the consents solicited therefor, violate the rights of noteholders that *Sharon Steel* firmly established. On the contrary, in direct contravention of *Sharon Steel*'s holding, Tyco's disclosures falsely assert that the Proposed Liquidation Transaction is "not prohibited by the Indentures."

The Solicitation Documents thereby violate the federal securities laws in a manner that only an injunction restraining the tender offer and consent solicitation may remedy. Accordingly, plaintiff AIG Global Investment Corp. ("AIG") respectfully requests that this Court issue a temporary restraining order and preliminarily enjoin Tyco from taking any further steps to consummate its tender offer unless and until Tyco makes corrective disclosures.

## Statement of Facts

### A. The Parties

Plaintiff AIG Global Investment Corp. is a New Jersey corporation with its principal place of business in New York City, New York. AIG serves as investment

adviser and/or sub-adviser to various funds and accounts. AIG is a holder of the Notes under both the 1998 and 2003 Indentures. (Complaint ("Cplt."), ¶ 8.)

Defendant is a Luxembourg company that is a wholly owned subsidiary of Tyco International Limited, a Bermuda corporation. (*See id.*, ¶ 9.) The Company, which operates in over one hundred countries around the globe, is a diversified manufacturing and service company that engages in three major lines of business: (a) designing, manufacturing and distributing engineered electronic components, network solutions and wireless systems (the "Electronics Business"); (b) developing, manufacturing and distributing medical devices and supplies, diagnostic imaging agents and pharmaceuticals for use in clinical and home settings (the "Healthcare Business"); and (c) designing, manufacturing, installing and servicing fire detection and suppression systems, as well as installing, monitoring and maintaining electronic security systems (the "Fire and Security Business"). The Proposed Liquidation Transaction contemplates breaking these three businesses into three new, separate public companies. (*Id.*, ¶ 10.)

**B. The Indentures' Successor Obligor Clauses**

Tyco issued approximately $4.6 billion of public debt under the 1998 Indenture, and approximately $1 billion of public debt under the 2003 Indenture. (*Id.*, ¶ 14.) Under the Indentures governing the Notes, Tyco is prohibited from transferring the Notes to another entity unless it sells or conveys "all or substantially all" of its assets to that entity. In particular, each of the Indentures includes a Successor Obligor Clause which states that Tyco:

> **will not merge or consolidate with any other Person** ***or sell or convey all or substantially all of its assets to any Person*****, unless** (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or **the successor entity** or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as

> the case may be (if other than the Issuer or such Guarantor, as the case may be) ***shall expressly assume the due and punctual payment*** of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, execute and delivered to the Trustee by such corporation. . .

(1998 Indenture, at § 8.1, Gordon Decl. Ex. C; 2003 Indenture, at § 10.01, Gordon Decl. Ex. D (emphasis added).)

As the Second Circuit made perfectly clear in *Sharon Steel*, this so-called "successor obligor" clause is intended, among other things, to protect noteholders from the disposition of all or nearly all of a company's assets unless the notes follow those assets in order "to insure that the principal operating assets of a borrower are available for satisfaction of the debt." *Sharon Steel*, 691 F.2d at 1050.

### C. <u>The Proposed Liquidation Transaction</u>

On January 13, 2006, Tyco announced that its Board of Directors had approved a plan to separate Tyco's portfolio of diverse businesses into three independent, publicly-traded companies: "one for Tyco's healthcare business (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services business (Tyco and Tyco International Finance S.A.)." (Cplt., ¶ 10; *see also* Gordon Decl., Ex. A, at A-1.)

Under the Company's announced plan of liquidation, the Company has stated that it first plans to transfer the Company's Healthcare and Electronics Businesses, representing approximately 73% of Tyco's assets, to two newly formed entities – respectively, Covidien Ltd. and Tyco Electronics Ltd. According to Tyco, its Healthcare Business comprises 42% of its business and its Electronics Business comprises 31% of

the Company's business. The Company has stated that it then intends to spin off these two new entities to its parent company's shareholders. The third step of the Proposed Liquidation Transaction involves the transfer of all of Tyco's remaining assets – its Fire and Security Business – to a third newly formed entity called Tyco International Finance, S.A. ("TIFSA"), and the assumption of the Notes by TIFSA. This will be immediately followed by the liquidation of the Company. (*See* Cplt., ¶¶ 18-19.)

**D. <u>The Proposed Amendments to the Indenture</u>**

The Solicitation Documents consist of (a) the Tender Offer to purchase the Notes, and (b) a consent solicitation statement seeking the noteholders' consent to certain proposed amendments to the Indentures ("Proposed Amendments"). The two are intertwined insofar as the Company's obligation to purchase the Notes pursuant to the Tender Offer is conditioned upon the noteholders' consent to the Proposed Amendments. (*Id.*, ¶ 20.)

In connection with the Proposed Liquidation Transaction, the Company is pursuing the Tender Offer in order to refinance its outstanding debt. The Solicitation Documents explain that "the Company's obligation to accept for purchase, and to pay for, any Notes validly tendered and not validly withdrawn pursuant to each of the Tender Offers is conditioned upon . . . the receipt of the applicable Requisite Consents . . ." (Gordon Decl., Ex. A, at iv; *see also id.* at 3 ("A valid tender of . . . Notes will be deemed to be a valid delivery of . . . Consent.").) The Company has therefore conditioned its Tender Offer on consent to the Proposed Amendments. (*See* Cplt., ¶ 21.)

In the Proposed Amendments, the Company seeks to reconcile the Proposed Liquidation Transaction – under which the Company will transfer its Notes to a newly formed entity receiving (according to Tyco) only 27% of its assets – with the

Indentures' Successor Obligor Clauses, which, as already noted, clearly prohibit the transfer of the Notes unless the Company sells "all or substantially all" of its assets. (*Id.*, ¶ 22.) In relevant part, the Proposed Amendments provide:

> In connection with the Separation Transactions (as defined in Section 8.1(c)), the provisions of Section 8.1(a) shall be interpreted as follows:
>
> (i) the transfer of a portion of [defendant Tyco International Group, S.A.'s] assets to Tyco Electronics (as defined in Section 8.1(c)) and a portion of the Issuer's assets to Covidien (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed **not** to be a sale or conveyance of all or substantially all of the Issuer's assets or Tyco's assets;
>
> (ii) **the transfer of a portion of the Issuer's assets to Tyco International Finance S.A. (as defined in Section 8.1(c)), as contemplated by the [Proposed Liquidation] Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to Tyco International Finance S.A.** and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and
>
> (iii) the distribution by [Tyco International, Ltd.] to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed **not** to be a sale or conveyance of all or substantially all of Tyco's assets.

(Gordon Decl., Ex. A, at A-1 (emphasis added).)

Through these allegedly "clarifying" Proposed Amendments, Tyco thus seeks to rewrite the Successor Obligor Clauses solely to suit the Proposed Liquidation Transaction. But, Tyco's scheme can only be described as schizophrenic. On the one hand, Tyco wants the "clarifying" amendment in order to bless its Proposed Liquidation Transaction. On the other hand, according to Tyco, the transfer of only 27% of Tyco's assets as of today (based on Tyco's numbers and public filings) is a transfer of "all or substantially all" of Tyco's assets for purposes of the Successor Obligor Clauses, because only that portion would remain after the initial transfers in the Proposed Liquidation Transaction. (*See* Cplt., ¶¶ 23-24.)

Thus, for Tyco, the "all or substantially all" determination is to be made only *after* the first two steps of the Proposed Liquidation Transaction are complete, 73% of the Company's assets are spun off, and only the TIFSA-assets representing 27% of the Company's assets remain. (*Id.*, ¶ 24.) There is one problem, however. Although not disclosed anywhere in the Solicitation Documents, the Second Circuit's decision in *Sharon Steel* – which concerned a liquidation transaction materially indistinguishable from the Proposed Liquidation Transaction – makes it perfectly clear that Tyco's announced scheme concerning its planned conveyance of the Notes is impermissible.

**E. <u>The Deadline for Consent Solicitation Is Near</u>**

On May 2, 2007, plaintiff's counsel sent a letter to the Corporate Trust Administrator for The Bank of New York, who is the Indenture Trustee for the Indentures (the "Trustee"), outlining the issues described above, and asking the Trustee for its view on how the Proposed Liquidation Transaction could be harmonized with the Second Circuit's holding in *Sharon Steel*. To date, the Trustee has not responded to that letter. (*See* Cplt., ¶ 28; Gordon Decl., Ex. E.)

Although the Solicitation Documents' say the Company's request for the noteholders' consent to the Proposed Amendments expires on May 24, 2007, the Company has made clear in the Solicitation Documents – in a deliberate effort to coerce the noteholders – that the only way noteholders can actually receive the entire tender amount is by consenting to the Proposed Amendments before the early consent deadline of 5:00 p.m. on May 10, 2007. (*See* Cplt., ¶ 29.) As the deadline for consent approaches, it is critical that Tyco be enjoined from making materially false statements and omissions in violation of Section 14(e) of the Securities and Exchange Act.

## Argument

### I. THIS COURT SHOULD ENTER A PRELIMINARY INJUNCTION REQUIRING THE COMPANY TO ISSUE CORRECTIVE DISCLOSURES

"To secure a preliminary injunction in district court, the moving party must demonstrate '(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and balance of hardships tipping decidedly in its favor.'" *Mony Group, Inc.* v. *Highfields Capital Mgmt., L.P.I*, 368 F.3d 138, 143 (2d Cir. 2004) (*quoting Forest City Daly Hous., Inc.* v. *Town of N. Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999)).[1] Here, there can be little doubt that plaintiff easily can demonstrate this requisite showing.

#### A. Plaintiff Will Suffer Irreparable <u>Harm Absent Immediate Injunctive Relief</u>

The Second Circuit has repeatedly and consistently made clear that where, as here, a corporate transaction may be approved through unlawful means, the harm is irreparable and injunctive relief should be granted. *See, e.g., Consol. Gold Fields PLC* v. *Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir. 1989) ("Erring on the side of granting the injunction becomes especially imperative in corporate control contests because once the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to unscramble the eggs."); *Sonesta Int'l Hotels Corp.* v. *Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir. 1973) (citing cases); *Gulf & Western Indus., Inc.* v. *Great Atl. & Pac. Tea Co.*, 476 F.2d 687, 699 (2d Cir. 1973) (affirming

---

[1] "The standard for granting a temporary restraining order and a preliminary injunction . . . are identical." *Spencer Trask Software & Info. Servs. LLC* v. *RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).

injunction of tender offer for violations of Section 14(e)); *see also E.ON AG* v. *Acciona S.A.*, 468 F.Supp.2d 537, 556 (S.D.N.Y. 2006) (holding that injunctive relief "should issue where there has been a failure 'to adequately disclose material information'" in a Schedule 13D filing); *American Insured Mortgage Investors* v. *CRI, Inc.*, No. 90 Civ. 6630 (MBM), 1990 WL 192561, at *20 (S.D.N.Y. Nov. 26, 1990) (enjoining continuing violations of Section 14(e) and requiring corrective disclosures). Indeed, as the Second Circuit has explained, this is because once a corporate transaction is consummated, it usually cannot be "unscrambled" even if it is later found to have been the product of improper or illegal conduct:

> preliminary injunctive relief is a particularly useful remedy for prevention of probable violations of the disclosure requirements of the Act, for the reason that prior to the consummation of the offer the court still has a variety of methods available to it for the correction of the misstatements or omissions. But once the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to "unscramble the eggs."

*Sonesta*, 483 F.2d at 250.

Like the defendants in *Sonesta*, Tyco has failed to disclose material information in its tender offer in violation of Section 14(e), and plaintiff will be irreparably harmed if Tyco is not required to correct its disclosures. Without such injunctive relief, Tyco's noteholders, including plaintiff, will be forced to make their tender decision based on incomplete and inaccurate information, and without full knowledge of their rights under *Sharon Steel*. Further, it will be especially difficult for the Court to unwind this transaction if Tyco's tender offer were permitted to close without corrective disclosures. A temporary restraining order and preliminary injunction is thus the only remedy that will adequately protect plaintiff.

**B. Plaintiff Is Likely To Succeed on the Merits of Its Claim That the Solicitation Documents Violate Section 14(e)**

As documents filed in connection with a tender offer, Tyco's Solicitation Documents must comply with Section 14(e) of the Exchange Act, which provides that "it shall be unlawful for any person to make any untrue statement of material fact or omit to state any material fact in order to make the statements made, in the light of the circumstances under which they are made, not misleading." 15 U.S.C. § 78n(e).

As the Supreme Court has explained, Section 14(e)'s purpose is to "insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information." *Piper* v. *Chris-Craft Indus., Inc.*, 430 U.S. 1, 35 (1977). As such, this "broad antifraud provision" places "an obligation" upon all tender offerors – whether for the purchase of equity or debt securities, *see Schmidt* v. *Enertec*, 598 F.Supp. 1528, 1539-40 (S.D.N.Y. 1984) – "to make *full disclosure* of material information to those with whom they deal." *Schreiber* v. *Burlington Northern*, 472 U.S. 1, 11 (1985) (emphasis in original). An omitted fact is "material" if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also Prudent Real Estate Trust* v. *Johncamp Realty, Inc.*, 599 F.2d 1140, 1146-47 (2d Cir. 1979).

Here, the Tender Offer fails to disclose material facts in a manner intended to further coerce and fraudulently induce existing noteholders to sell their Notes without full knowledge of the consequences of their choice or the facts necessary to make an informed investment decision. Specifically, the Company has announced its intention to

proceed with a plan of liquidation involving the break-up of Tyco into three separate public companies and the subsequent dissolution of the Company. According to the Solicitation Documents, moreover, Tyco – notwithstanding the Successor Obligor Clauses – is free to go ahead with the Proposed Liquidation Transaction (with or without the consent of the noteholders) by transferring the notes to TIFSA, a new company comprised of assets that today make up only 27% of the Company. This is so, the Company says in the Solicitation Documents, because after contributing 73% of its assets to Covidien and Tyco Electronics, the Company's contribution of the remaining assets to TIFSA will constitute the "sale or conveyance of substantially all" of the Company's assets within the meaning of the Successor Obligor Clauses. (*See* Gordon Ex. A, at 7; *see also id.* at 1-2, 10, A-1 & B-1.) Indeed, the Company goes so far as to inform noteholders that the "various steps" in the Proposed Liquidation Transaction "are not prohibited by the Indentures," including, without limitation, the Successor Obligor Clauses. (*Id.* at ii.)

That, however, is a clear misstatement of the controlling law in this Circuit. Indeed, Tyco completely fails to mention that the Court of Appeals in *Sharon Steel* deemed a similar plan in violation of the successor obligor clause of the governing indenture in that case – so that Tyco's Proposed Liquidation Transaction is therefore in fact "prohibited" under the Indentures' Successor Obligor Clauses.

In *Sharon Steel Corp.* v. *The Chase Manhattan Bank* (Gordon Decl. Ex. B), the Court of Appeals considered successor obligor clauses substantively identical to those contained in the Indentures. There, UV Industries, Inc. ("UV") issued a series of debt instruments pursuant to certain indentures, each of which contained "a 'successor

obligor' provision allowing UV to assign its debt to a corporate successor which purchases 'all or substantially all' of UV's assets." *Sharon Steel*, 691 F.2d at 1044-45. Like Tyco here, UV subsequently announced a single plan of liquidation that would allow it to sell off pieces of the company, in three steps, over a twelve-month period. After two initial sales, in which UV sold off approximately 70% of the book value of its assets, UV sold its remaining assets to Sharon Steel. As part of that transaction, Sharon Steel assumed all of UV's outstanding liabilities, including the public debt issued under the indentures. *See id.* at 1046.

Thereafter, UV announced that it had no further obligations under the indentures based on the successor obligor clauses – which is precisely what the Solicitation Documents inform the noteholders that Tyco intends to do here. Significantly, however, the Second Circuit held UV's scheme a plain violation of the successor obligor clauses. As the Court explained, "boilerplate successor obligor clauses do not permit assignment of public debt to another party in the course of a liquidation unless 'all or substantially all' of the assets of the company *at the time the plan of liquidation is determined upon* are transferred to a single purchaser." *Id.* at 1051 (emphasis added). To hold otherwise, the Court reasoned, "would severely impair the interests of lenders," since it

> would allow a borrowing corporation to engage in a piecemeal sale of assets, with concurrent liquidating dividends to that point at which the asset restrictions of an indenture prohibited further distribution. A sale of "all or substantially all" of the remaining assets could then be consummated, a new debtor substituted, and the liquidation of the borrower completed. The assignment of the public debt might thus be accomplished, even though the last sale might be nothing more than a cash for cash transaction in which the buyer purchases the public indebtedness.

*Id.* Because, as of the date UV's plan of liquidation was approved, the assets being transferred to Sharon Steel only amounted to 41% of the book value of UV's operating properties, the Second Circuit concluded that no sale of "substantially all" of the assets had taken place. "The successor obligor clauses are, therefore, inapplicable." *Id.* at 1052.

The same will be true here. Under the law of this Circuit, in examining the Proposed Liquidation Transaction, the "all or substantially all" determination must be made as of January 13, 2006, when the Company approved the Proposed Liquidation Transaction. As of that date, the assets that Tyco plans to transfer to TIFSA represented approximately 27% of the Company's assets – not "all or substantially all" by any means. Thus, as a matter of law, Tyco cannot transfer its notes to TIFSA. Consequently, the Proposed Amendments are not, as Tyco claims, mere "clarifications" (*see* Gordon Decl. Ex. A, at 1, 6, 7, 9 & 10); they are instead dramatic changes from the true meaning of the Successor Obligor Clauses and nothing less than an illegimate attempt to circumvent the holding of *Sharon Steel*.

Notably, the Solicitation Documents do not even mention *Sharon Steel*. Nor do they disclose the Company's intention to circumvent this longstanding and controlling legal authority. And, Tyco's affirmative statements in the Solicitation Documents that the "various steps" of the Proposed Liquidation Transaction "are not prohibited by the Indentures" are completely false and misleading. Given these repeated misstatements and material omissions, plaintiff is likely to succeed on the merits. *See Blanchette* v. *Providence & Worcester Co.*, 428 F. Supp. 347, 353 (D. Del. 1977) (enjoining tender offer because prospectus failed to contain "information which was

important for the stockholders to have in deciding whether to accept the tender offer."). Indeed, it is hard to envision a stronger case for injunctive relief under Section 14(e).

C. **<u>The Balance of Hardships Tips Decidedly In Plaintiff's Favor</u>**

For the foregoing reasons, plaintiff clearly can establish that it will likely succeed on the merits. But, even if the Court does not find a likelihood of success on the merits, it should nonetheless grant a preliminary injunction based on an irrefutable showing of serious questions going to the merits and a balance of the hardships tipping decidedly in favor of granting the injunction. *See Fed. Express Corp.* v. *Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000). Plaintiff, along with other noteholders, will suffer substantial and irreparable harm if they are forced to respond to the Tender Offer without full disclosure.

By contrast, Tyco need only make a curative disclosure and conform its Proposed Liquidation to the law set forth in *Sharon Steel*. *See Camelot Indus.* v. *Vista Resources Corp.*, 535 F. Supp. 1174, 1184 (S.D.N.Y. 1982) (finding that any harm caused by postponing a board election and "reissuance of the proxy materials . . . is mere delay, which is greatly outweighed by the harm to the shareholders if such relief were not granted, namely . . . a vote based on misleading information."); *Berkman* v. *Rust Craft Greeting Cards, Inc.*, 454 F. Supp. 787, 794 (S.D.N.Y. 1978) ("little hardship accru[es] from the relatively short delay of [an] election pending resolicitation").

Indeed, Tyco does not even anticipate consummating the Proposed Liquidation Transaction itself until late June. Yet, in a deliberate effort to coerce the noteholders, the only way noteholders like AIG can actually receive the entire tender amount is by consenting to the Proposed Amendments before the early consent deadline of 5:00 p.m. on May 10, 2007 – fourteen days before the Tender itself ends. In short,

postponing that consent deadline until Tyco provides accurate and truthful information to the noteholders will have little impact on Tyco and its proposed plan of liquidation. On the contrary, Tyco will still be able to pursue its plan to reacquire its outstanding public debt – except, this time, the noteholders will be able to evaluate that plan, and any related Tender Offer for their Notes, with all the facts a reasonable investor would need to make an informed decision.

**Conclusion**

The Solicitation Documents violate the federal securities laws in a manner that only an injunction restraining the tender offer and consent solicitation may remedy. Accordingly, for the reasons discussed above, plaintiff respectfully requests that the Court issue a temporary restraining order and preliminary injunction barring the consummation of Tyco's Tender Offer unless and until Tyco issues corrective disclosures in compliance with Section 14(e) of the Securities Exchange Act.

Dated: May 9, 2007
New York, New York

Respectfully submitted,
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: ______________________________
Gerard E. Harper (GH-0279)
Andrew G. Gordon (AG-9239)

1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for AIG Global Investment Corp.*