Holders whose Notes are tendered and accepted for purchase pursuant to the Tender Offers will be entitled to any and all accrued and unpaid interest on their Notes up to, but not including, the Payment Date. **Under no circumstances will any additional interest be payable because of any delay in the transmission of funds to the Holders of purchased Notes or otherwise.**

Tendering Holders of Notes purchased in the Tender Offers will not be obligated to pay brokerage commissions, fees or transfer taxes with respect to the purchase of their Notes unless the box entitled "Special Issuance Instructions" or the box entitled "Special Delivery Instructions" on a Letter of Transmittal has been completed, as described in the Instructions thereto. The Company will pay all other charges and expenses in connection with the Tender Offers. See "Dealer Managers; Solicitation Agents; Information Agent; Depositary" and "Miscellaneous."

## PROCEDURES FOR TENDERING NOTES AND DELIVERING CONSENTS

**The tender of Notes pursuant to the Tender Offers and in accordance with the procedures described below also will be deemed to constitute delivery of a Consent with respect to the Notes tendered. Holders who tender their Notes pursuant to the Tender Offers are obligated to deliver their Consent to the applicable Proposed Amendments and to the execution and delivery of the applicable Supplemental Indenture. Holders may not deliver a Consent without tendering their Notes pursuant to the applicable Tender Offer.** A defective tender of Notes (which defect is not waived by the Company) will not constitute valid delivery of a Consent to the applicable Proposed Amendments, will not be counted for purposes of determining whether the Requisite Consents have been obtained and will not entitle the Holder thereof to an Early Consent Payment. Any beneficial owner whose Notes are registered in the name of a Custodian or held through the Book-Entry Transfer Facility and who wishes to tender its Notes and deliver a Consent should contact such Holder promptly and instruct such Holder to tender its Notes and deliver Consents on such beneficial owner's behalf.

### Tender of Notes Held Through DTC and Delivery of Consents

The Depositary and DTC have confirmed that the Tender Offers and the Consent Solicitations are eligible for ATOP. Accordingly, DTC participants may electronically transmit their acceptance of the applicable Tender Offers by causing DTC to transfer their Notes to the Depositary in accordance with DTC's ATOP procedures for such a transfer. In addition, DTC participants may electronically deliver their Consents pursuant to the Consent Solicitations as part of the electronic transmission of their acceptance of the applicable Tender Offers. DTC will then send an Agent's Message to the Depositary.

The term "Agent's Message" means a message transmitted by DTC, received by the Depositary and forming part of the Book-Entry Confirmation (as defined below), which states that DTC has received an express acknowledgment from the DTC participant tendering Notes which are the subject of such Book-Entry Confirmation that such DTC participant (i) has received and agrees to be bound by the terms of the Tender Offers and the Consent Solicitations as set forth in this Offer to Purchase and the Letter of Transmittal and that the Company may enforce such agreement against such participant, and (ii) consents to the Proposed Amendments and the execution and delivery of the Supplemental Indenture as described in this Offer to Purchase. **Holders desiring to tender their Notes on the Early Consent Date or the Expiration Date should note that they must allow sufficient time for completion of the ATOP procedures during the normal business hours of DTC on such respective date. Tenders not received by the Depositary on or prior to the Expiration Date will be disregarded and of no effect.**

### Tender of Notes held in Physical Form and Delivery of Consents

For a Holder to validly tender its Notes held in physical form pursuant to the Consent Solicitations or the Tender Offers, the certificates for the tendered Notes, a properly completed and validly executed Letter of Transmittal (or a facsimile thereof), together with any signature guarantees and any other documents required by the instructions to the Letter of Transmittal, must be received by the Depositary at its address set forth on the back cover of this Offer to Purchase on or prior to the Early Consent Date or the Expiration Date, as the case may be.

**The Letter of Transmittal and Notes should be sent only to the Depositary, and not to Tyco, the Company, the Dealer Managers, the Information Agent or the Book-Entry Transfer Facility.**

**The method of delivery of Notes, the Letter of Transmittal and all other required documents to the Depositary is at the election and risk of the Holder tendering Notes and delivering Consents. Delivery of such documents will be deemed made only when actually received by the Depositary. If such delivery is by mail, it is suggested that the**

13

Holder use properly insured, registered mail with return receipt requested, and that the mailing be made sufficiently in advance of the Early Consent Date or the Expiration Date, as the case may be, to permit delivery to the Depositary on or prior to such respective date. No alternative, conditional or contingent tenders of Notes or deliveries of Consents will be accepted.

## Signature Guarantees

Signatures on the Letter of Transmittal must be guaranteed by a firm that is a participant in the Security Transfer Agents Medallion Program or the Stock Exchange Medallion Program or is otherwise an "eligible guarantor institution" as that term is defined in Rule 17Ad-15 under the Exchange Act (generally a member of a registered national securities exchange, a member of the National Association of Securities Dealers, Inc., or a commercial bank or trust company having an office in the United States) (an "Eligible Institution"), unless (i) the Letter of Transmittal is signed by the registered Holder of the Notes tendered therewith and payment of the Purchase Price and the Early Consent Payment, if applicable, is to be made, or if any Notes for principal amounts not tendered or not accepted for purchase are to be issued, directly to such Holder and neither the "Special Issuance Instructions" box nor the "Special Delivery Instructions" box on the Letter of Transmittal has been completed, or (ii) such Notes are tendered and Consents delivered for the account of an Eligible Institution.

## Book-Entry Transfer

The Depositary will establish and maintain an account with respect to the Notes at DTC (the "Book-Entry Transfer Facility") promptly after the date of this Offer to Purchase (to the extent such arrangements have not been made previously by the Depositary), and any financial institution that is a participant in the Book-Entry Transfer Facility system and whose name appears on a security position listing as the owner of the Notes may make book-entry delivery of Notes by causing the Book-Entry Transfer Facility to transfer such Notes into the Depositary's account in accordance with the Book-Entry Transfer Facility's procedures for such transfer. The confirmation of a book-entry transfer of Notes into the Depositary's account at the Book-Entry Transfer Facility as described above is referred to herein as a "Book-Entry Confirmation." Delivery of documents to the Book-Entry Transfer Facility in accordance with such Book-Entry Transfer Facility procedures does not constitute delivery to the Depositary.

## Lost or Missing Certificates

If a Holder desires to tender Notes pursuant to the Tender Offers and to deliver Consents pursuant to the Consent Solicitations, but the certificates representing such Notes have been mutilated, lost, stolen or destroyed, such Holder should write to or telephone the Trustee at the address or telephone number listed below, about procedures for obtaining replacement certificates for such Notes or arranging for indemnification or any other matters that require handling by the Trustee:

The Bank of New York
101 Barclay St., 4E
New York, NY 10286
Facsimile: (212) 815-5802
Attention: Global Finance Unit

## Other Matters

Notwithstanding any other provision hereof, payment for Notes accepted for payment pursuant to the Tender Offers will in all cases be made only after timely receipt by the Depositary of (i) certificates for, or a timely Book-Entry Confirmation with respect to, such Notes, (ii) a properly completed and validly executed Letter of Transmittal (or a facsimile thereof), with any required signature guarantees, or, in the case of a book-entry transfer, an Agent's Message, and (iii) any other documents required by the Letter of Transmittal. Under no circumstances will interest be paid on the Purchase Price or the Early Consent Payment as a result of any delay in making such payments.

Tenders of Notes and deliveries of Consents pursuant to any of the procedures described above, and acceptance thereof by the Company for purchase, will constitute a binding agreement between the Company and the tendering and consenting Holder of such Notes, upon the terms and subject to the conditions of the Tender Offers and the Consent Solicitations in effect on the Expiration Date.

By executing a Letter of Transmittal as set forth above (or by tendering Notes through book-entry transfer), and subject to and effective upon acceptance for purchase of, and payment for, the Notes tendered therewith, a tendering Holder: (i) irrevocably sells, assigns and transfers to or upon the order of the Company all right, title and interest in and to all the Notes tendered thereby; (ii) waives any and all other rights with respect to the Notes (including the tendering Holder's waiver of any existing or past defaults and their consequences in respect of the Notes and the Indenture under which the Notes were issued); (iii) releases and discharges the Company, TIFSA and Tyco from any and all claims such Holder may have now, or may have in the future, arising out of, or related to, the Notes, including any claims that such Holder is entitled to receive additional principal or interest payments with respect to the Notes or to participate in any redemption or defeasance of the Notes; (iv) delivers such Holder's consent to the 1998 Indenture Amendments or the 2003 Indenture Amendments, as applicable; and (v) irrevocably constitutes and appoints the Depositary as the true and lawful agent and attorney-in-fact of such Holder with respect to any such tendered Notes, with full power of substitution and resubstitution (such power of attorney being deemed to be an irrevocable power coupled with an interest) to (a) deliver certificates representing such Notes, or transfer ownership of such Notes on the account books maintained by DTC, together, in any such case, with all accompanying evidences of transfer and authenticity, to the Company, (b) present such Notes for transfer on the relevant security register, (c) receive all benefits or otherwise exercise all rights of beneficial ownership of such Notes (except that the Depositary will have no rights to, or control over, funds from the Company, except as agent for the tendering Holders, for the Total Consideration or Purchase Price, as the case may be, and accrued and unpaid interest for any tendered Notes that are purchased by the Company), and (d) deliver to the Company and the Depositary the Letter of Transmittal as evidence of the Holder's Consent to the Proposed Amendments and to the execution and delivery of the Supplemental Indenture and as certification that consents to the Proposed Amendments duly executed by Holders have been received, all in accordance with the terms of the Tender Offers and the Consent Solicitations.

All questions as to the form of all documents and the validity (including time of receipt) and acceptance of all tenders of Notes and deliveries of Consents will be determined by the Company, in its sole discretion, the determination of which shall be final and binding. Alternative, conditional or contingent tenders of Notes or deliveries of Consents will not be considered valid. The Company reserves the absolute right, in its sole discretion, to reject any or all tenders of Notes and deliveries of Consents that are not in proper form or the acceptance of which, in the Company's opinion, would be unlawful. The Company also reserves the right to waive any defects, irregularities or conditions of tender as to particular Notes or of delivery as to accompanying Consents.

The Company's interpretation of the terms and conditions of the Tender Offers and the Consent Solicitations (including the instructions in the Letter of Transmittal) will be final and binding.

Any defect or irregularity in connection with tenders of Notes or deliveries of Consents must be cured within such time as the Company determines, unless waived by the Company. Tenders of Notes and deliveries of Consents shall not be deemed to have been made until all defects and irregularities have been waived by the Company or cured. A defective tender (which defect is not waived by the Company) will constitute neither a valid tender of Notes nor a valid Consent. None of Tyco, the Company, the Depositary, the Trustee, the Information Agent, the Dealer Managers, the Solicitation Agents or any other person will be under any duty to give notice of any defects or irregularities in tenders of Notes and accompanying deliveries of Consents, or will incur any liability to Holders for failure to give any such notice.

## WITHDRAWAL OF TENDERS AND REVOCATION OF CONSENTS; ABSENCE OF APPRAISAL RIGHTS

Holders who tender their Notes in the Tender Offers and Consent Solicitations are obligated to deliver a Consent to all of the applicable Proposed Amendments. Notes tendered prior to the Early Consent Date may be validly withdrawn at any time prior to the Early Consent Date (by following the procedures set forth below), but not thereafter unless the relevant Tender Offer is terminated without any Notes being purchased thereunder. A valid withdrawal of tendered Notes prior to the Early Consent Date will be deemed a valid revocation of the related Consent. Any Notes tendered after the Early Consent Date may not be withdrawn after the Early Consent Date, but if the Tender Offer with respect to any of the Notes is terminated thereafter without any such Notes having been purchased, the related Proposed Amendments will not become operative.

Holders who wish to exercise their right of withdrawal with respect to a Tender Offer and Consent Solicitation must give written notice of withdrawal by mail, hand delivery or manually signed facsimile transmission, or a properly transmitted "Request Message" through ATOP, which notice must be received by the Depositary at one of its addresses set forth on the back cover of this Offer to Purchase (or, in the case of Notes tendered by book-entry transfer, through ATOP) on or prior to the Early Consent Date or at such other permissible times as are described herein. In order to be valid, a notice of withdrawal must specify the name of the person who deposited the Notes to be withdrawn (the "Depositor"), the name in which the Notes are registered (or, if tendered by book-entry transfer, the name of the participant in the Book-Entry Transfer Facility whose name appears on the security position listing as the owner of such Notes), if different from that of the Depositor, and the principal amount of Notes to be withdrawn and related Consents to be revoked. If certificates have been delivered or otherwise identified (through confirmation of book-entry transfer of such Notes) to the Depositary, the name of the Holder and the certificate number or numbers relating to such Notes withdrawn must also be furnished to the Depositary as aforesaid prior to the physical release of the certificates for the withdrawn Notes (or, in the case of Notes transferred by book-entry transfer, the name and number of the account at the Book-Entry Transfer Facility to be credited with withdrawn Notes). The notice of withdrawal (other than a notice transmitted through ATOP) must be signed by the Holder in the same manner as the Letter of Transmittal (including, in any case, any required signature guarantees), or be accompanied by evidence satisfactory to the Company that the person withdrawing the tender has the legal authority to withdraw such tender on behalf of the Holder. Holders may not rescind withdrawals of tendered Notes. However, validly withdrawn Notes may be retendered by following the procedures therefor described elsewhere in this Offer to Purchase at any time prior to the Expiration Date.

**A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's Notes will constitute the concurrent valid revocation of such Holder's Consent. As a result, a Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or the Early Consent Payment unless such Notes are retendered in accordance with the procedures and deadlines described in this Offer to Purchase. Any Notes validly tendered and Consents validly delivered prior to the Early Consent Date may not be withdrawn after the Early Consent Date.**

All questions as to the form and validity (including time of receipt) of any tender of a Note delivery or delivery of a Consent or revocation of a tender of a Note and delivery of a Consent, will be determined by the Company, in its sole discretion, which determination shall be final and binding. None of Tyco, the Company, the Trustee, the Depositary, the Information Agent, the Dealer Managers, the Solicitation Agents or any other person will be under any duty to give notification of any defect or irregularity in any delivery or revocation of a Consent or incur any liability for failure to give any such notification.

If the Company is delayed in its acceptance for purchase of, or payment for, the Notes or is unable to accept for purchase or pay for Notes pursuant to the Tender Offers for any reason, then, without prejudice to the Company's rights hereunder, tendered Notes may be retained by the Depositary on behalf of the Company (subject to Rule 14e-1 under the Exchange Act, which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the Holders thereof promptly after the termination or withdrawal of a tender offer).

**Appraisal Rights**

The Notes are debt obligations of the Company guaranteed as to payment of principal, premium, if any, and interest by Tyco, and are governed by the Indenture. There are no appraisal or other similar statutory rights available to Holders in connection with the Tender Offers or the Consent Solicitations.

## CONDITIONS OF THE TENDER OFFERS AND CONSENT SOLICITATIONS

Notwithstanding any other provision of the Tender Offers and the Consent Solicitations, the Company will not be required to accept for purchase, or to pay for, Notes tendered pursuant to the Tender Offers and may terminate, extend or amend either of the Tender Offers and may (subject to Rule 14e-1 under the Exchange Act, which requires that an offeror pay the consideration offered or return the securities deposited by or on behalf of the Holders thereof promptly after the termination or withdrawal of a tender offer) postpone the acceptance for purchase of, and payment for, Notes so tendered if, on or prior to the Expiration Date, any of the following shall not have occurred with respect to either of the Tender Offers: (a) the Company having available from the Bridge Loan Facilities and from cash on hand, prior to the Expiration Date, funds sufficient to pay the aggregate Total Consideration; (b) the receipt of the applicable Requisite Consents on or prior to the Early Consent Date; (c) the execution of the applicable Supplemental Indenture containing the Proposed Amendments following receipt of the applicable Requisite Consents; and (d) satisfaction of the General Conditions set

forth in the following paragraph. The Company will not be required to make any Early Consent Payment in connection with a Tender Offer unless the Company shall have accepted the applicable Notes for purchase pursuant to such Tender Offers. The Company reserves the right to waive any and all conditions of either of the Tender Offers and the Consent Solicitations.

For purposes of the foregoing provision, all of the "General Conditions" shall be deemed to be satisfied, unless any of the following conditions, as applicable to each Tender Offer and Consent Solicitation, shall occur and not be waived on or after the date of this Offer to Purchase:

    (i) There shall have been instituted, threatened or be pending any action or proceeding before or by any court, governmental, regulatory or administrative agency or instrumentality, or by any other person, in connection with the applicable Tender Offer or Consent Solicitation, that is, or is reasonably likely to be, in the sole judgment of the Company, materially adverse to the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA or Tyco, or their respective subsidiaries or affiliates or which would or might, in the reasonable judgment of the Company, prohibit, prevent, restrict or delay consummation of the Tender Offers or the Consent Solicitations;

    (ii) There shall have occurred any development which would, in the reasonable judgment of the Company, materially adversely affect the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA, Tyco or their respective subsidiaries or affiliates;

    (iii) An order, statute, rule, regulation, executive order, stay, decree, judgment or injunction shall have been proposed, enacted, entered, issued, promulgated, enforced or deemed applicable by any court or governmental, regulatory or administrative agency or instrumentality (collectively, a "Legal Event") that, in the reasonable judgment of the Company, would or might prohibit, prevent, restrict or delay consummation of the Tender Offers or the Consent Solicitations;

    (iv) There shall have occurred or be reasonably likely to occur (a) any event affecting the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA, Tyco or their respective subsidiaries or affiliates that, in the sole judgment of the Company, would or might prohibit, prevent, restrict or delay consummation of the Tender Offers or the Consent Solicitations, or (b) any Legal Event which in the sole judgment of the Company is, or is reasonably likely to be, materially adverse to the business, operations, properties, condition (financial or otherwise), assets, liabilities or prospects of the Company, TIFSA, Tyco or their respective subsidiaries or affiliates;

    (v) The Trustee under the Indenture shall have objected in any respect to or taken any action that could, in the reasonable judgment of the Company, adversely affect the consummation of the Tender Offers or Consent Solicitations or the Company's ability to effect any of either the 1998 Indenture Amendments or the 2003 Indenture Amendments, as applicable, or shall have taken any action that challenges the validity or effectiveness of the procedures used by the Company in soliciting the Consents (including the form thereof) or in the making of the Tender Offers or Consent Solicitations or the acceptance of, or payment for, the Notes or the Consents;

    (vi) There shall exist, in the sole judgment of the Company, any actual or threatened legal impediment (including a default under an agreement, indenture or other instrument or obligation to which the Company, TIFSA or Tyco is a party, or by which it is bound) to the acceptance for payment of, or payment for, any of the Notes or to the scope, validity or effectiveness of the Consents solicited hereby; or

    (vii) There shall have occurred (a) any general suspension of, or limitation on prices for, trading in the United States securities or financial markets or any other significant adverse change in United States securities or financial markets, (b) a material impairment in the trading market for debt securities, (c) a declaration of a banking moratorium or any suspension of payments in respect of banks by federal or state authorities in the United States, Bermuda or Luxembourg (whether or not mandatory), (d) any limitation (whether or not mandatory) by any government or governmental, administrative or regulatory authority or agency, domestic or foreign, or other event that, in the sole judgment of the Company, might affect the extension of credit by banks or other lending institutions, (e) there is (i) an outbreak or escalation of hostilities or acts of terrorism involving the United States or declaration of a national emergency or war by the United States or (ii) any other calamity or crisis or any change in political, financial or economic conditions, if the effect of any such event in (i) or (ii), in the Company's sole judgment, makes it

impracticable or inadvisable to proceed with such Tender Offer and Consent Solicitation, or (f) in the case of any of the foregoing existing on the date hereof, a material acceleration or worsening thereof.

The conditions to the Tender Offers and Consent Solicitations are for the sole benefit of the Company and may be asserted by the Company in its sole discretion regardless of the circumstances giving rise to such conditions or may be waived by the Company, in whole or in part, and with respect to either of the Tender Offers and Consent Solicitations, in its sole discretion, whether or not any other condition of the Tender Offers and the Consent Solicitations also is waived. The Company has not made a decision as to what circumstances would lead it to waive any such condition, and any such waiver would depend on circumstances prevailing at the time of such waiver. Any determination by the Company concerning the events described in this section shall be final and binding upon all Holders. The failure by the Company at any time to exercise any of the foregoing rights will not be deemed a waiver of any other right and each right will be deemed an ongoing right which may be asserted at any time and from time to time.

**Although the Company has no present plans or arrangements to do so, the Company reserves the right to amend, at any time prior to the Expiration Date, the terms of the Tender Offers or the Consent Solicitations. The Company will give Holders notice of such amendments as may be required by applicable law.**

## MARKET AND TRADING INFORMATION

None of the Notes are listed on any national or regional securities exchange or reported on a national quotation system. To the extent that any of the Notes are traded, prices of the Notes may fluctuate greatly depending on the trading volume and the balance between buy and sell orders. Holders are urged to obtain current information with respect to the market prices for their Notes.

## DESCRIPTION OF NOTES

### The 1998 Notes

The 1998 Notes were issued pursuant to the 1998 Indenture among the Company, Tyco and the Trustee. The terms of the 1998 Notes are those stated in the 1998 Indenture, as supplemented, and those made part of the 1998 Indenture by reference to the Trust Indenture Act. The 1998 Notes are subject to all such terms and the Holders of the 1998 Notes are referred to the 1998 Indenture and the Trust Indenture Act for a statement thereof. The 1998 Notes are redeemable at the Company's option on any date prior to the maturity date, in whole or in part, at a redemption price determined in accordance with the 1998 Indenture. The title, principal amount issued, date of issuance and interest payment dates of the 1998 Notes are as follows:

| Title of Securities | Principal Amount Issued | Date Issued | Interest Payment Date(s) |
|---|---|---|---|
| 6.125% notes due 2008 | $400,000,000 | November 2, 1998 | May 1st, November 1st |
| 6.125% notes due 2009 | $400,000,000 | January 12, 1999 | January 15th, July 15th |
| 6.75% notes due 2011 | $1,000,000,000 | February 21, 2001 | February 15th, August 15th |
| 6.375% notes due 2011 | $1,500,000,000 | October 26, 2001 | April 15th, October 15th |
| 7.0% notes due 2028 | $500,000,000 | June 9, 1998 | June 15th, December 15th |
| 6.85% notes due 2029 | $800,000,000 | January 12, 1999 | January 15th, July 15th |

Substantially all of the 1998 Notes remained outstanding as of the date of this Offer to Purchase.

### The 2003 Notes

The 2003 Notes were issued pursuant to the 2003 Indenture among the Company, Tyco and the Trustee. The terms of the 2003 Notes are those stated in the 2003 Indenture and those made part of the 2003 Indenture by reference to the Trust Indenture Act. The 2003 Notes are subject to all such terms and the Holders of the 2003 Notes are referred to the 2003 Indenture and the Trust Indenture Act for a statement thereof. Copies of the 2003 Indenture are available from the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase.

The 2003 Notes were issued on November 12, 2003 in an original aggregate principal amount of $1.0 billion substantially all of which remained outstanding as of the date of this Offer to Purchase. Interest on the 2003 Notes is

payable semi-annually, on each May 15 and November 15, to the holders of record at the close of business on the date 15 days prior to the payment date, at an annual rate of 6.0%.

The 2003 Notes are redeemable at the Company's option on any date prior to the maturity date, in whole or in part, at a redemption price determined in accordance with the 2003 Indenture.

Copies of the Indentures are available from the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase.

### MATERIAL UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS

**TO ENSURE COMPLIANCE WITH INTERNAL REVENUE SERVICE CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT THE DISCUSSION OF TAX MATTERS SET FORTH IN THIS STATEMENT WAS WRITTEN IN CONNECTION WITH THE PROMOTION AND MARKETING OF THE TENDER OFFER AND THE CONSENT SOLICITATION AND WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER UNITED STATES FEDERAL, STATE, OR LOCAL TAX LAW. EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

The following is a general discussion of the material United States federal income tax consequences of the Tender Offer and Consent Solicitation to Holders. This discussion is a summary for general information purposes only and does not consider all aspects of United States federal income taxation which may be relevant to particular Holders in light of their individual investment circumstances or to certain types of Holders subject to special tax rules (e.g., financial institutions, broker-dealers, traders in securities that elect to use a mark-to-market method of accounting for their securities holdings, banks, insurance companies, tax-exempt organizations, persons liable for the alternative minimum tax, persons that hold Notes as part of a "straddle," a "hedge," a "conversion transaction" or other integrated transaction, U.S. Holders (as defined below) that have a functional currency other than the U.S. dollar and investors in pass-through entities), nor does it address state, local or foreign tax considerations. This summary assumes that Holders have held their Notes as "capital assets" within the meaning of Section 1221 of the Internal Revenue Code of 1986, as amended (the "Code"). This summary is based on the Code and applicable Treasury Regulations, rulings, administrative pronouncements and decisions as of the date hereof, all of which are subject to change or differing interpretations at any time with possible retroactive effect.

**HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE SPECIFIC FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSIDERATIONS APPLICABLE TO THE TENDER OFFERS AND THE CONSENT SOLICITATIONS.**

#### Consequences to U.S. Holders

For purposes of this discussion, a U.S. Holder means a beneficial owner of Notes that, for U.S. federal income tax purposes, is: (i) a citizen or resident of the United States; (ii) a corporation created or organized in or under the laws of the United States or any state thereof (or the District of Columbia); (iii) an estate the income of which is subject to United States federal income taxation regardless of its source; or (iv) a trust if (a) a court within the United States can exercise primary supervision over its administration, and one or more United States persons have the authority to control all of the substantial decisions of that trust, or (b) the trust has a valid election in effect under applicable U.S. Treasury regulations to be treated as a U.S. person. If a partnership holds Notes, the tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. A Holder that is a partner in a partnership holding Notes should consult its own tax advisor regarding the tax consequences of the Tender Offers and Consent Solicitations.

#### Tendering and Consenting U.S. Holders

*Tender of a Note.* The receipt of cash by a U.S. Holder in exchange for a Note will be a taxable transaction for United States federal income tax purposes. Subject to the market discount rules discussed below, a U.S. Holder will recognize capital gain or loss in an amount equal to the difference between (i) the amount of cash received (other than amounts attributable to any accrued but unpaid interest not previously included in income by the U.S. Holder and the Early Consent Payment if it is not treated as proceeds from the sale or exchange of a Note for United States federal income tax purposes) and (ii) the U.S. Holder's adjusted tax basis in the Note. Generally, a U.S. Holder's adjusted tax basis in a Note will be equal to the price paid for the Note by such U.S. Holder, reduced (but not below zero) by any amortizable bond premium

19

deducted with respect to the Note, and increased by any market discount with respect to the Note that has previously been taken into income by the U.S. Holder. Such capital gain or loss will be long-term capital gain or loss if the U.S. Holder held the Note for more than one year at the time the Note was purchased by the Company. Long-term capital gains of non-corporate taxpayers are generally taxed at lower rates than those applicable to ordinary income. The deductibility of capital losses is subject to certain limitations. Any cash received attributable to accrued but unpaid interest that has not yet been included in the U.S. Holder's income will be taxable as ordinary income.

*Market Discount.* A Note has "market discount" if its stated principal amount exceeds the U.S. Holder's tax basis in the Note immediately after its acquisition by the U.S. Holder, unless a statutorily defined de minimis exception applies. Gain recognized by a U.S. Holder with respect to a Note acquired with market discount will generally be subject to tax as ordinary income to the extent of the market discount accrued, unless the U.S. Holder previously had elected to include market discount in income as it accrued for United States federal income tax purposes.

*Early Consent Payment.* The tax treatment of the receipt of an Early Consent Payment by a U.S. Holder whose Note is purchased pursuant to a Tender Offer is uncertain because there are no authorities that directly address the treatment of such payment. Under Section 1271 of the Code, any amount received by a holder on retirement of a debt instrument is treated as being received in exchange for the debt instrument. It is possible, however, that the Early Consent Payment may be treated as a separate fee that would be subject to tax as ordinary income, rather than additional consideration for the Note. If the Early Consent Payment is treated as additional consideration for the Note, the Early Consent Payment would be treated as part of the amount of cash received, as provided in the discussion under the caption "Tender of a Note."

### Non-Tendering U.S. Holders

Generally, the modification of a debt instrument will be treated, for United States federal income tax purposes, as a "deemed" exchange of an old debt instrument for a new debt instrument if such modification is "significant" as determined for United States federal income tax purposes. Under the Treasury Regulations that govern the determination of whether a modification is a significant modification, a change in the obligor of a recourse debt instrument is treated as a significant modification unless certain exceptions apply. In the case of the Notes, because there will be a change in obligor and none of the enumerated exceptions apply, the modification will be treated as "significant". Accordingly, a non-tendering U.S. Holder will be treated as having exchanged its "old" Notes for "new" Notes for United States federal income tax purposes. If the "old" Notes and the "new" Notes are both treated as "securities" for United States federal income tax purposes, such exchange would be treated as a tax-free reorganization for United States federal income tax purposes. In such case, (a) a non-tendering U.S. Holder would not recognize any gain or loss on the deemed exchange, except that a portion of the "new" Notes of a non-tendering U.S. Holder may be allocated to the accrued but unpaid interest on the "old" Notes and the U.S. Holder may be required to recognize ordinary income equal to that amount, (b) except for any portion of the "new" Notes which may be allocated to such interest, a non-tendering U.S. Holder should have the same adjusted tax basis and holding period in the "new" Notes as in its "old" Notes immediately prior to the deemed exchange, and (c) if the "old" Notes have "market discount" in the hands of the non-tendering U.S. Holder, such market discount may be treated as market discount on the "new" Notes (thereby resulting in ordinary income treatment upon the disposition of the "new" Notes). The Company believes that the "old" Notes and "new" Notes should be treated as "securities" for U.S. federal income tax purposes.

If the deemed exchange does not qualify as a tax-free reorganization for United States federal income tax purposes, a non-tendering U.S. Holder would recognize capital gain or loss in an amount equal to the difference between the U.S. Holder's adjusted tax basis in the "old" Notes and the issue price of the "new" Notes deemed received in exchange therefor. However, any such gain attributable to accrued or previously unrecognized market discount, and any portion of the "new" Notes attributable to accrued but unpaid interest, would be subject to tax as ordinary income. In such case, the non-tendering U.S. Holder's holding period in the "new" Notes would begin the day after the effective date of the Proposed Amendments and such non-tendering U.S. Holder's basis in the "new" Notes would equal the issue price thereof. If the Notes are not considered to be readily tradable on an established securities market (as that term is defined for purposes of the installment sale rules), gain, if any, recognized on the deemed exchange may be eligible for reporting under the installment sale rules. U.S. Holders should consult their own tax advisors regarding the timing and character of any recognized gain on a deemed exchange.

In the case of a deemed exchange, if neither the "old" Notes nor the "new" Notes are traded on an established securities market (for purposes of the original issue discount provisions of the Code), the issue price of such "new" Notes should equal their stated principal amount. If the "old" Notes were traded on an established securities market, but such "new" Notes are not so traded, the issue price would be equal to the fair market value of the "old" Notes on the date the

"new" Notes are deemed to be issued; if such "new" Notes are so traded, their issue price would equal the fair market value of the "new" Notes as of the date the "new" Notes are deemed to be issued. In any such case, the "new" Notes may be issued with original issue discount if their stated redemption price at maturity exceeds their issue price, or, alternatively, may be issued with bond premium (which may be amortizable to the extent provided in Section 171 of the Code) if the adjusted tax basis of the "new" Notes exceeds the amount payable at maturity. Except where it falls under a statutory de minimis rule, any original issue discount would be required to be included in the income of the Holders of the "new" Notes on a constant yield to maturity basis over the term of the "new" Notes and in advance of cash payments attributable to such income regardless of such Holder's regular method of tax accounting.

### Backup Withholding and Information Reporting

A U.S. Holder may be subject to backup withholding at the applicable withholding rate with respect to the receipt of cash in exchange for a Note unless the U.S. Holder provides to the Company a correct Taxpayer Identification Number ("TIN") and certifies that the U.S. Holder is a U.S. person, the TIN is correct (or that the U.S. Holder is awaiting a TIN) and the U.S. Holder is either (a) exempt from backup withholding, (b) has not been informed by the Internal Revenue Service ("the IRS") that backup withholding is required due to underreporting of interest and dividends from payments made to the U.S. Holder or (c) has been informed by the IRS that backup withholding is no longer required. Any amount paid as backup withholding would be allowed as a credit against the U.S. Holder's federal income tax liability and may entitle the U.S. Holder to a refund, provided the required information is provided to the IRS.

We will provide information statements to the IRS reporting the payment of the consideration pursuant to the Tender Offer, except with respect to U.S. Holders that are exempt from the information reporting rules, such as corporations.

### Consequences to Non-U.S. Holders

A Non-U.S. Holder is any beneficial owner of Notes that is not a U.S. Holder and that is not an entity or arrangement treated as a partnership for United States federal income tax purposes.

This discussion does not describe the U.S. federal income tax consequences to Non-U.S. Holders who are engaged in a trade or business in the United States with which the Notes are effectively connected.

Subject to the discussion below regarding the backup withholding requirements of the Code, a Non-U.S. Holder will generally not be subject to U.S. federal income tax on any gain recognized by a Non-U.S. Holder on the tender of a Note, on the receipt of any accrued but unpaid interest or on the receipt of an Early Consent Payment.

*Backup Withholding and Information Reporting.* Any payment received by a Non-U.S. Holder from the sale of a Note to or through a foreign office of a broker will not be subject to backup withholding. In addition, any payment received by a Non-U.S. Holder from the sale of a Note to or through the United States office of a broker will be subject to backup withholding unless the Non-U.S. Holder properly establishes an exemption from backup withholding. Backup withholding is not an additional tax. The amount of any backup withholding from a payment to a Non-U.S. Holder will be allowed as a credit against such holder's United States federal income tax liability and may entitle the Non-U.S. Holder to a refund, provided the required information is furnished to the IRS.

When required, we will provide information statements to the IRS reporting the payment of consideration pursuant to a Tender Offer.

**THE FEDERAL INCOME TAX DISCUSSION SET FORTH ABOVE IS INCLUDED FOR GENERAL INFORMATION PURPOSES ONLY. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS TO DETERMINE THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TENDER OF NOTES PURSUANT TO THE TENDER OFFERS, THE CONSENT SOLICITATIONS AND THE ADOPTION OF THE PROPOSED AMENDMENTS.**

### DEALER MANAGERS; SOLICITATION AGENTS; INFORMATION AGENT; DEPOSITARY

The Company has retained Goldman, Sachs & Co. and Morgan Stanley to act as the Dealer Managers for the Tender Offers and Solicitation Agents for the Consent Solicitations. In their capacities as Dealer Managers and Solicitation Agents, they may contact Holders regarding the Tender Offers and the Consent Solicitations and may request Custodians to forward this Offer to Purchase and related materials to beneficial owners of Notes.

The Company has agreed to pay Goldman, Sachs & Co. and Morgan Stanley customary fees and to reimburse Goldman, Sachs & Co. and Morgan Stanley for their reasonable out-of-pocket expenses for their services in connection with the Tender Offers and the Consent Solicitations. The Company also has agreed to indemnify Goldman, Sachs & Co. and Morgan Stanley and their respective affiliates against certain liabilities under federal or state law or otherwise caused by, relating to or arising out of the Tender Offers and the Consent Solicitations.

The Dealer Managers and their respective affiliates have provided investment banking and financial advisory services to the Company and its affiliates in the past, for which they have received or will receive customary compensation. The Dealer Managers and their respective affiliates may also from time to time be engaged in transactions with and perform services in the ordinary course of their business for the Company and its affiliates.

In addition, at any time the Dealer Managers and their respective affiliates may trade or hold, or may have traded or held, the Notes or other securities issued by the Company or its affiliates, for their own account or for the accounts of customers, and, accordingly, may hold or may have held a long or short position in the Notes or such other securities. In addition, each of the Dealer Managers may tender Notes in the Tender Offers for its own account.

Global Bondholder Services Corporation has been appointed the Information Agent with respect to the Tender Offers and the Consent Solicitations. The Company will pay the Information Agent customary fees for its services and reimburse the Information Agent for its reasonable out-of-pocket expenses in connection therewith. The Company also has agreed to indemnify the Information Agent for certain liabilities. Requests for additional copies of documentation may be directed to the Information Agent at the address and telephone numbers set forth on the back cover of this Offer to Purchase.

Global Bondholder Services Corporation has been appointed the Depositary for the Tender Offers and the Consent Solicitations. All deliveries and correspondence sent to the Depositary should be directed to one of the addresses set forth on the back cover of this Offer to Purchase. The Company will pay the Depositary customary fees for its services and reimburse the Depositary for its reasonable out-of-pocket expenses in connection therewith. The Company has also agreed to indemnify the Depositary for certain liabilities.

None of the Dealer Managers, the Information Agent or the Depositary assumes any responsibility for the accuracy or completeness of the information concerning the Company or its affiliates contained in this Offer to Purchase or related documents or for any failure by the Company to disclose events that may have occurred and may affect the significance or accuracy of such information.

**NONE OF THE COMPANY, TYCO, THE TRUSTEE, THE DEALER MANAGERS, THE SOLICITATION AGENTS, THE DEPOSITARY OR THE INFORMATION AGENT MAKES ANY RECOMMENDATION TO YOU AS TO WHETHER OR NOT YOU SHOULD TENDER YOUR NOTES UNDER THE TENDER OFFERS AND DELIVER YOUR CONSENT TO THE PROPOSED AMENDMENTS IN THE CONSENT SOLICITATIONS, AND NO ONE HAS BEEN AUTHORIZED BY ANY OF THEM TO MAKE ANY SUCH RECOMMENDATION. HOLDERS SHOULD MAKE THEIR OWN DECISION AS TO WHETHER TO TENDER NOTES AND DELIVER CONSENTS TO THE PROPOSED AMENDMENTS.**

## MISCELLANEOUS

The Tender Offers and the Consent Solicitations are not being made to (nor will tenders of Notes or deliveries of Consents be accepted from or on behalf of) Holders of Notes in any jurisdiction in which the making or acceptance of the Tender Offers and the Consent Solicitations would not be in compliance with the laws of such jurisdiction. However, the Company, in its sole discretion, may take such action as it may deem necessary to make or extend the Tender Offers and the Consent Solicitations in any such jurisdiction.

No person has been authorized to give any information or make any representation on behalf of the Company that is not contained in this Offer to Purchase or in the Letter of Transmittal and, if given or made, such information or representation should not be relied upon.

## ANNEX A

## THE PROPOSED AMENDMENTS TO THE 1998 INDENTURE

The following is a description of the 1998 Indenture Amendments to be made effective in accordance with the terms of Article Seven of the 1998 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 1998 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 1998 Supplemental Indenture.

The provisions of the 1998 Indenture reprinted below are qualified in their entirety by reference to the 1998 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex A without definition have the same meanings as set forth in the 1998 Indenture.

**Article Eight of the Indenture would be amended to read in its entirety as follows:**

SECTION 8.1      Issuer and Guarantors May Consolidate, etc., on Certain Terms.

(a) Each of the Issuer, Tyco and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be), shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the case may be, or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or agreement.

(b) In connection with the Separation Transactions (as defined in Section 8.1(c)), the provisions of Section 8.1(a) shall be interpreted as follows:

(i)      the transfer of a portion of the Issuer's assets to Tyco Electronics (as defined in Section 8.1(c)) and a portion of the Issuer's assets to Covidien (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed not to be a sale or conveyance of all or substantially all of the Issuer's assets or Tyco's assets;

(ii)      the transfer of a portion of the Issuer's assets to Tyco International Finance S.A. (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

(iii)      the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c) For purposes of this Article, the following terms have the meanings ascribed to them.

*"Covidien"* refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

*"Separation Transactions"* means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies: one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.). The steps of the Separation Transactions will include: (i) the contribution of the assets and liabilities of the healthcare businesses of the Issuer to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Issuer to Tyco Electronics Group S.A. and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Issuer to Tyco

A-1

International Finance S.A.; (ii) the assumption by Tyco International Finance S.A. as the successor entity under this Article of the Issuer's obligations under this Indenture and under the Securities, which will continue to be guaranteed by Tyco; (iii) the liquidation of the Issuer and the liquidating distribution to Tyco in connection therewith of all of the shares of capital stock of Covidien Ltd., Tyco Electronics Ltd. and Tyco International Finance S.A.; and (iv) the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd.

*"Tyco Electronics"* refers to both Tyco Electronics Ltd., a Bermuda company, and Tyco Electronics Group S.A., a Luxembourg company.

*"Tyco International Finance S.A."* refers to Tyco International Finance S.A., a Luxembourg company.

SECTION 8.2        Successor Entity Substituted.

In case of any such consolidation, merger, sale or conveyance in which the Issuer or any Guarantor, as the case may be, is not the continuing entity, and following such an assumption by the successor entity, such successor entity shall succeed to and be substituted for the Issuer or such Guarantor, as the case may be, with the same effect as if it had been named herein. Such successor entity may cause to be signed, and may issue either in its own name or in the name of the Issuer or such Guarantor, as the case may be, prior to such succession any or all of the Securities or Guarantees as the case may be, issuable hereunder which theretofore shall not have been signed by the Issuer or such Guarantor, as the case may be, and delivered to the Trustee; and, upon the order of such successor entity instead of the Issuer or such Guarantor, as the case may be, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or Guarantees, as the case may be, which previously shall have been signed and delivered by the officers of the Issuer or such Guarantor, as the case may be, to the Trustee for authentication, and any Securities or Guarantees, as the case may be, which such successor entity thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities or Guarantees, as the case may be, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or Guarantees, as the case may be, theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities or such Guarantees, as the case may be, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale, lease or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities or Guarantees thereafter to be issued as may be appropriate.

In the event of any such sale or conveyance (other than a conveyance by way of lease) the Issuer or any Guarantor or any successor entity which shall theretofore have become such in the manner described in this Article shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

SECTION 8.3        Opinion of Counsel to Trustee.

The Trustee, subject to the provisions of Sections 5.1 and 5.2, may receive an Opinion of Counsel, prepared in accordance with Section 11.5, as conclusive evidence that any such consolidation, merger, sale, lease or conveyance, and any such assumption, and any such liquidation or dissolution, complies with the applicable provisions of this Indenture.

SECTION 8.4        Exception Applicable to Certain Guarantors.

The provisions of this Article shall not apply to a merger, consolidation, sale or conveyance of a Guarantor other than Tyco, if, in connection with such merger, consolidation, sale or conveyance, the Guarantee of such Guarantor is released and discharged in accordance with Section 3.11(b).

## ANNEX B

### THE PROPOSED AMENDMENTS TO THE 2003 INDENTURE

The following is a description of the 2003 Indenture Amendments to the 2003 Indenture to be made effective in accordance with the terms of Article IX of the 2003 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 2003 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 2003 Supplemental Indenture.

The provisions of the 2003 Indenture reprinted below are qualified in their entirety by reference to the 2003 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex B without definition have the same meanings as set forth in the 2003 Indenture.

**Article X of the Indenture would be amended to read in its entirety as follows:**

Section 10.01      <u>Consolidation, Merger and Sale of Assets.</u>

(a)  Each of Tyco and the Company covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless

> (i)      either Tyco or the Company, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of Tyco or the Company, as the case may be (if other than Tyco or the Company, as the case may be), (A) shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all the Securities, or, if applicable, the obligations under any Guarantee, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by Tyco or the Company, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such Person and (B) is an entity treated as a "corporation" for United States tax purposes or Tyco or the Company, as the case may be, obtains either (x) an opinion, in form and substance reasonably acceptable to the Trustee, of tax counsel of recognized standing reasonably acceptable to the Trustee, which counsel shall include Gibson, Dunn & Crutcher LLP, or (y) a ruling from the United States Internal Revenue Service, in either case to the effect that such merger or consolidation, or such sale or conveyance, will not result in an exchange of the Securities for new debt instruments for United States federal income tax purposes; and

> (ii)      no Event of Default and no event that, after notice or lapse of time or both, would become an Event of Default shall be continuing immediately after such merger or consolidation, or such sale or conveyance.

(b)  In connection with the Separation Transactions (as defined in Section 10.03), the provisions of Section 10.01(a) shall be interpreted as follows:

> (i)      the transfer of a portion of the Company's assets to Tyco Electronics (as defined in Section 10.03) and a portion of the Company's assets to Covidien (as defined in Section 10.03) as contemplated by the Separation Transactions shall be deemed not to be a sale or conveyance of all or substantially all of the Company's assets or Tyco's assets;

> (ii)      the transfer of a portion of the Company's assets to Tyco International Finance S.A. (as defined in Section 10.03) as contemplated by the Separation Transactions shall be deemed to be a conveyance of substantially all of the Company's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

(iii)      the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c)  The Company shall deliver to the Trustee prior to the consummation of the proposed transaction an Officer's Certificate to the foregoing effect and an Opinion of Counsel stating that the proposed transaction and such supplemental indenture comply with this Indenture.

(d)  To the extent that a Board Resolution or supplemental indenture pertaining to any series provides for different provisions relating to the subject matter of this Article X, the provisions in such Board Resolution or supplemental indenture shall govern for purposes of such series.

Section 10.02      Successor Person Substituted.

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of Tyco or the Company, as the case may be, the successor Person formed by such consolidation or into or with which Tyco or the Company, as the case may be, is merged or to which such sale, lease, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, Tyco or the Company, as the case may be, under this Indenture with the same effect as if such successor Person has been named as Tyco or the Company, as the case may be, herein. In the event of any such sale or conveyance (other than a conveyance by way of lease) Tyco or the Company, as the case may be, or any successor entity which shall theretofore have become such in the manner described in this Article, shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

Section 10.03      Definitions of Certain Terms.

For purposes of this Article X, the following terms have the meanings ascribed to them.

*"Covidien"* refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

*"Separation Transactions"* means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies:  one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.).  The steps of the Separation Transactions will include:  (i) the contribution of the assets and liabilities of the healthcare businesses of the Company to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Company to Tyco Electronics Group S.A. and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Company to Tyco International Finance S.A.; (ii) the assumption by Tyco International Finance S.A. as the successor person under this Article X of the Company's obligations under this Indenture and under  the Securities, which will continue to be guaranteed by Tyco; (iii) the liquidation of the Company and the liquidating distribution to Tyco in connection therewith of the shares of Covidien Ltd., Tyco Electronics Ltd. and Tyco International Finance S.A.; and (iv) the distribution by Tyco to its shareholders of all of the shares of capital stock of Covidien Ltd. and Tyco Electronics Ltd.

*"Tyco Electronics"* refers to both Tyco Electronics Ltd., a Bermuda corporation and Tyco Electronics Group S.A., a Luxembourg company.

*"Tyco International Finance S.A."* refers to Tyco International Finance S.A., a Luxembourg company.

ANNEX C

## FORMULA TO DETERMINE THE TOTAL CONSIDERATION

| | | |
|---|---|---|
| YLD | = | Cash Flow Yield expressed as a percentage rounded to three decimal places. |
| CPN | = | The nominal rate of interest currently payable on Notes expressed as a percentage. |
| N | = | The number of semi-annual interest payments from (but not including) the most recent payment of semi-annual interest to (and including) the maturity date. |
| S | = | The number of days from and including the semi-annual interest payment date immediately preceding the applicable Payment Date up to (but not including) the applicable Payment Date. The number of days is computed using the 30/360 day-count method. |
| R | = | $1,000 principal amount of the Notes. |
| / | = | Divide. The term immediately to the left of the division symbol is divided by the term immediately to the right of the division symbol before any other addition or subtraction operations are performed. |
| Exp | = | Exponentiate. The term to the left of "exp" is raised to the power indicated by the term to the right of "exp". |
| $\sum_{k=1}^{N}$ | = | Summate. The term in the brackets to the right of the summation symbol is separately calculated "N" times (substituting for "k" in that term each whole number between 1 and N, inclusive), and the separate calculations are then added. |
| Total Consideration | = | The Total Consideration to be paid per $1,000 principal amount of Notes. The Total Consideration is rounded to the nearest cent, with five one-thousandths of a dollar to be taken as a full cent. |
| Accrued Interest | = | Accrued and unpaid interest per $1,000 principal amount up to but not including the Payment Date. The accrued interest is rounded to the nearest cent with five one-thousandths of a dollar to be taken as a full cent. |
| Accrued Interest | = | 1000(CPN/2)(S/180) |

$$\text{Total Consideration} = \left[ \frac{R}{(1+YLD/2)\exp(N-S/180)} \right] + \sum_{k=1}^{N} \left[ \frac{1000(CPN/2)}{(1+YLD/2)\exp(k-S/180)} \right]$$

$$- 1000(CPN/2)\,(S/180)$$

ANNEX D

**HYPOTHETICAL PRICING EXAMPLES**

Set forth below are hypothetical illustrations of the Total Consideration for the Notes based on hypothetical data.  It should, therefore, be used solely for the purpose of obtaining an understanding of the calculation of the Total Consideration as quoted at hypothetical rates and times and should not be used or relied upon for any other purpose.

Assumed Payment Date: May 29, 2007

Pricing as of April 26, 2007

| Coupon | Maturity | Benchmark Rate | Offer Spread (bps) | YLD | Purchase Price | Consent Payment | Total Consideration | N | S | Accrued Interest |
|--------|----------|----------------|--------------------|-----|----------------|-----------------|---------------------|-----|-----|------------------|
| 6.000% | 11/15/13 | 4.601% | 40 | 5.001% | $1,024.55 | $30.00 | $1,054.55 | 13 | 14 | $2.33 |
| 6.125% | 11/01/08 | 4.820% | 30 | 5.120% | $983.57 | $30.00 | $1,013.57 | 3 | 28 | $4.76 |
| 6.125% | 01/15/09 | 4.731% | 35 | 5.081% | $986.04 | $30.00 | $1,016.04 | 4 | 134 | $22.80 |
| 6.750% | 02/15/11 | 4.537% | 35 | 4.887% | $1,032.44 | $30.00 | $1,062.44 | 8 | 104 | $19.50 |
| 6.375% | 10/15/11 | 4.578% | 40 | 4.978% | $1,024.28 | $30.00 | $1,054.28 | 9 | 44 | $7.79 |
| 7.000% | 06/15/28 | 4.797% | 60 | 5.397% | $1,170.14 | $30.00 | $1,200.14 | 43 | 164 | $31.89 |
| 6.875% | 01/15/29 | 4.797% | 60 | 5.397% | $1,157.21 | $30.00 | $1,187.21 | 44 | 134 | $25.59 |

*The Depositary for the Tender Offers and the Consent Solicitations is:*

Global Bondholder Services Corporation

*By Facsimile (Eligible Institutions Only):*

(212) 430-3775
Attention: Corporate Actions
For Information or
Confirmation by Telephone:
(212) 430-3774

*By Mail or Hand:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attention: Corporate Actions

Any questions or requests for assistance may be directed to the Dealer Managers at the addresses and telephone numbers set forth below. Requests for additional copies of this Offer to Purchase and the Letter of Transmittal may be directed to the Information Agent. Requests for copies of the Indentures and the forms of the Supplemental Indentures may also be directed to the Information Agent. Beneficial owners may also contact their Custodian for assistance concerning the Tender Offers and the Consent Solicitations.

*The Information Agent for the Tender Offers and the Consent Solicitations is:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attn: Corporate Actions
Bank and Brokers Call Collect: (212) 430-3774
All Others Please Call Toll-Free: (866) 470-3700

*The Dealer Managers for the Tender Offers and the Solicitation Agents for the Consent Solicitations are:*

Morgan Stanley
Liability Management Group
1585 Broadway, Floor 04
New York, NY 10036
(212) 761-1941
Toll Free: (800) 624-1808

Goldman, Sachs & Co.
Liability Management
1 New York Plaza
New York, NY 10004
(212) 902-9077
Toll Free: (800) 828-3182

LETTER OF TRANSMITTAL AND CONSENT

of

# Tyco International Group S.A.

Pursuant to the Offer to Purchase and Consent Solicitation Statement
dated April 27, 2007
for Any and All of Its Outstanding
Securities Listed on the Table Below

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| 2003 Indenture Notes | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| 1998 Indenture Notes | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

**THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EARLY CONSENT DATE").  THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").**

*The Depositary for the Tender Offers and the Consent Solicitations is:*
Global Bondholder Services Corporation

*By Facsimile*
*(Eligible Institutions Only):*
(212) 430-3775
Attention: Corporate Actions
For Information or Confirmation by Telephone:
(212) 430-3774

*By Registered or Certified Mail,*
*Hand or Overnight Delivery:*
Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attention: Corporate Actions

**DELIVERY OF THIS LETTER OF TRANSMITTAL AND CONSENT (THIS "LETTER OF TRANSMITTAL") TO AN ADDRESS OTHER THAN AS SET FORTH ON THE BACK COVER OF THIS LETTER OF TRANSMITTAL, OR TRANSMISSIONS OF INSTRUCTIONS VIA A FACSIMILE NUMBER OTHER THAN AS SET FORTH ON THE BACK COVER OF THIS LETTER OF TRANSMITTAL, WILL NOT CONSTITUTE A VALID DELIVERY TO THE DEPOSITARY.**

**THE INSTRUCTIONS ACCOMPANYING THIS LETTER OF TRANSMITTAL SHOULD BE READ CAREFULLY AND IN THEIR ENTIRETY BEFORE THIS LETTER OF TRANSMITTAL IS COMPLETED.**

All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Offer to Purchase and Consent Solicitation Statement, dated April 27, 2007 (the "Offer to Purchase").

This Letter of Transmittal is to be used by holders (each, a "Holder," and collectively, the "Holders") of Notes if certificates representing Notes are to be physically delivered to the Depositary, in which case such certificates must be delivered by the Holders of Notes together with this Letter of Transmittal. This Letter of Transmittal also is being supplied only for informational purposes to persons who hold Notes in book-entry form through the facilities of DTC.

**Tender of the Notes and delivery of Consents held through DTC must be made pursuant to the procedures described under "Procedures for Tendering Notes and Delivering Consents — Tender of Notes Held Through DTC and Delivery of Consents" in the Offer to Purchase.**

Holders of Notes who are tendering by book-entry transfer to the Depositary's account at DTC must tender Notes and deliver Consents through ATOP. DTC Participants that are accepting the Tender Offers must transmit their acceptance (and thereby deliver their Consents) to DTC, which will verify the acceptance and execute a book-entry delivery to the Depositary's account at DTC. DTC will then send an Agent's Message to the Depositary for its acceptance. Delivery of the Agent's Message by DTC means that DTC has received an express acknowledgment from each DTC Participant tendering through ATOP that such DTC Participant (i) has received this Letter of Transmittal and agrees to be bound by the terms of this Letter of Transmittal and that the Company may enforce such agreement against such DTC Participant and (ii) consents to the Proposed Amendments and to the execution and delivery of the applicable Supplemental Indentures as described in the Offer to Purchase.

**HOLDERS WHO WISH TO BE ELIGIBLE TO RECEIVE THE TOTAL CONSIDERATION FOR THEIR NOTES, AS SET FORTH IN THE OFFER TO PURCHASE, MUST VALIDLY TENDER AND NOT VALIDLY WITHDRAW THEIR NOTES AND VALIDLY DELIVER AND NOT VALIDLY REVOKE THEIR CONSENTS ON OR PRIOR TO THE EARLY CONSENT DATE. HOLDERS WHO VALIDLY TENDER THEIR NOTES AFTER THE EARLY CONSENT DATE BUT ON OR PRIOR TO THE EXPIRATION DATE WILL RECEIVE ONLY THE PURCHASE PRICE, AS SET FORTH IN THE OFFER TO PURCHASE.**

In the event that the Tender Offers and the Consent Solicitations are terminated, withdrawn or otherwise not completed, neither the Total Consideration nor the Purchase Price, as the case may be, will be paid or become payable and any tendered Notes will be promptly returned to the tendering Holders.

Holders who validly tender their Notes in the Tender Offers are obligated to consent to the Proposed Amendments. Pursuant to the terms of the Offer to Purchase and this Letter of Transmittal, the completion, execution and delivery by a Holder of this Letter of Transmittal in connection with the tender of Notes will be deemed to constitute the Consent of the tendering Holder to the applicable Proposed Amendments. Holders may not deliver Consents without tendering their Notes in the Tender Offers. Holders who validly tender and do not validly withdraw their Notes after the Early Consent Date but on or prior to the Expiration Date will receive only the Purchase Price for their Notes, and not the Early Consent Payment. The Tender Offers and Consent Solicitations are made upon the terms and subject to the conditions set forth in the Offer to Purchase and in this Letter of Transmittal. Holders should carefully read in its entirety the information set forth therein and herein.

THIS LETTER OF TRANSMITTAL DOES NOT CONSTITUTE AN OFFER TO PURCHASE IN ANY JURISDICTION IN WHICH, OR TO OR FROM ANY PERSON TO OR FROM WHOM, IT IS UNLAWFUL TO MAKE SUCH OFFER UNDER APPLICABLE SECURITIES OR "BLUE SKY" LAWS. THE DELIVERY OF THIS LETTER OF TRANSMITTAL SHALL NOT UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF OR THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN OR IN ANY ATTACHMENTS HERETO OR IN THE AFFAIRS OF THE COMPANY OR ANY OF ITS SUBSIDIARIES OR AFFILIATES SINCE THE DATE HEREOF. EXCEPT AS REQUIRED BY APPLICABLE LAW, THE COMPANY DISCLAIMS ANY OBLIGATION TO UPDATE OR REVISE ANY INFORMATION CONTAINED IN THIS LETTER OF TRANSMITTAL.

## TENDER OF NOTES AND DELIVERY OF CONSENTS

List below the Notes to which this Letter of Transmittal relates. If the space provided is inadequate, list the certificate numbers and principal amounts on a separately executed schedule and affix the schedule to this Letter of Transmittal. See Instruction 11. Tender of the Notes and delivery of Consents will be accepted only in principal amounts equal to $1,000 or integral multiples thereof. This form need not be completed by Holders tendering Notes and delivering Consents by ATOP.

| 6.0% notes due 2013 (CUSIP No. 902118BK3) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s) (Please fill in if blank)** | **Notes Tendered (Attach additional list(s) if necessary)** | | |
| | **Certificate Numbers** | **Aggregate Principal Amount Represented** | **Principal Amount Tendered And As To Which Consents Are Given\*** |
| | | | |
| | | | |
| | | | |
| | | | |
| | **Total Principal Amount Tendered:** | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 1.

| 6.125% notes due 2008 (CUSIP No. 902118AM0) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s)**<br>**(Please fill in if blank)** | **Notes Tendered**<br>**(Attach additional list(s) if necessary)** | | |
| | **Certificate Numbers** | **Aggregate Principal Amount Represented** | **Principal Amount Tendered And As To Which Consents Are Given\*** |
| | | | |
| | | | |
| | | | |
| | | | |
| | **Total Principal Amount Tendered:** | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

4

| 6.125% notes due 2009<br>(CUSIP No. 902118AJ7) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s)**<br>**(Please fill in if blank)** | **Notes Tendered**<br>**(Attach additional list(s) if necessary)** | | |
| | **Certificate Numbers** | **Aggregate Principal Amount Represented** | **Principal Amount Tendered And As To Which Consents Are Given\*** |
| | | | |
| | | | |
| | | | |
| | | | |
| | **Total Principal Amount Tendered:** | | |

| 6.75% notes due 2011<br>(CUSIP No. 902118AY4) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s)**<br>**(Please fill in if blank)** | **Notes Tendered**<br>**(Attach additional list(s) if necessary)** | | |
| | **Certificate Numbers** | **Aggregate Principal Amount Represented** | **Principal Amount Tendered And As To Which Consents Are Given\*** |
| | | | |
| | | | |
| | | | |
| | | | |
| | **Total Principal Amount Tendered:** | | |

\*  Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

| 6.375% notes due 2011<br>(CUSIP No. 902118BC1) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s)**<br>**(Please fill in if blank)** | **Notes Tendered**<br>**(Attach additional list(s) if necessary)** | | |
| | **Certificate<br>Numbers** | **Aggregate<br>Principal<br>Amount<br>Represented** | **Principal<br>Amount<br>Tendered And As<br>To Which<br>Consents Are<br>Given\*** |
| | | | |
| | | | |
| | | | |
| | **Total Principal<br>Amount Tendered:** | | |

| 7.0% notes due 2028<br>(CUSIP No. 902118AC2) | | | |
|---|---|---|---|
| **Name(s) and Address(es) of Holders(s)**<br>**(Please fill in if blank)** | **Notes Tendered**<br>**(Attach additional list(s) if necessary)** | | |
| | **Certificate<br>Numbers** | **Aggregate<br>Principal<br>Amount<br>Represented** | **Principal<br>Amount<br>Tendered And As<br>To Which<br>Consents Are<br>Given\*** |
| | | | |
| | | | |
| | | | |
| | **Total Principal<br>Amount Tendered:** | | |

\* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

| 6.875% notes due 2029 (CUSIP No. 902118AK4) | | | |
|---|---|---|---|
| Name(s) and Address(es) of Holders(s) (Please fill in if blank) | Notes Tendered (Attach additional list(s) if necessary) | | |
| | Certificate Numbers | Aggregate Principal Amount Represented | Principal Amount Tendered And As To Which Consents Are Given* |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Principal Amount Tendered: | | |

   \* Unless otherwise indicated in the column labeled "Principal Amount Tendered And As To Which Consents Are Given" and subject to the terms and conditions of the Offer to Purchase, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. See Instruction 2.

   The names and addresses of the Holders should be printed above exactly as they appear on the certificates representing the Notes tendered and Consents delivered hereby. The Notes and the principal amount of the Notes that the undersigned Holder wishes to tender and as to which Consents are given should be indicated in the appropriate boxes.

**NOTE: SIGNATURES MUST BE PROVIDED BELOW**
**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY**

Ladies and Gentlemen:

The undersigned hereby tenders to Tyco International Group S.A., Luxembourg company (the "Company"), the aggregate principal amount of Notes indicated in this Letter of Transmittal upon the terms and subject to the conditions set forth in this Letter of Transmittal and the Offer to Purchase and Consent Solicitation Statement, dated April 27, 2007 (the "Offer to Purchase"), receipt of which is hereby acknowledged.

Upon the terms and subject to the conditions of the Tender Offers and the Consent Solicitations, the undersigned hereby consents to the applicable Proposed Amendments to the Indentures and to the execution and delivery of the applicable Supplemental Indentures that will give effect to the applicable Proposed Amendments with respect to the Notes.

Subject to, and effective upon, acceptance for payment of, and payment for, Notes tendered herewith in accordance with the terms of the Offer to Purchase (including, if the Tender Offers are extended or amended, the terms and conditions of such extension or amendment), the undersigned hereby: (a) irrevocably sells, assigns and transfers to, or upon the order of, the Company, all right, title and interest in and to all Notes that are being tendered hereby; (b) waives any and all rights with respect to the Notes (including any existing or past defaults and their consequences in respect of the Notes and the Indentures under which the Notes were issued); (c) releases and discharges the Company, Tyco International Finance S.A. ("TIFSA") and Tyco from any and all claims such Holder may have now, or may have in the future arising out of, or related to, the Notes, including, any claims that such Holder is entitled to receive additional principal or interest payments with respect to the Notes or to participate in any redemption or defeasance of the Notes; (d) delivers such Holder's Consent to the applicable Proposed Amendments and to the execution and delivery of the applicable Supplemental Indentures; and (e) irrevocably constitutes and appoints the Depositary the true and lawful agent and attorney-in-fact of such Holder with respect to any such tendered Notes, with full power of substitution and resubstitution (such power of attorney being deemed to be an irrevocable power coupled with an interest) to (i) deliver certificates representing such Notes, or transfer ownership of such Notes on the account books maintained by DTC, together, in any such case, with all accompanying evidences of transfer and authenticity, to the Company, (ii) present such Notes for transfer on the relevant security register, (iii) receive all benefits or otherwise exercise all rights of beneficial ownership of such Notes (except that the Depositary will have no rights to, or control over, funds from the Company, except as agent for the consenting and tendering Holders, for the Total Consideration or the Purchase Price, as the case may be, and accrued and unpaid interest for any tendered Notes that are accepted for payment by the Company) and (iv) deliver to the Company this Letter of Transmittal as evidence of the undersigned's Consent to the applicable Proposed Amendments and to the execution and delivery of the applicable Supplemental Indentures and as certification that the Requisite Consents (defined below) to the applicable Proposed Amendments duly executed by Holders have been received, all in accordance with the terms of the Offer to Purchase.

The undersigned agrees and acknowledges that, by the execution and delivery hereof, the undersigned makes and provides the written Consent, with respect to the principal amount of Notes tendered hereby or represented hereby, to the Proposed Amendments to the Indentures and to the execution and delivery of the Supplemental Indentures. The Company intends to execute and deliver each of the Supplemental Indentures on, or as soon as practicable after, the Early Consent Date if the 1998 Requisite Consents or 2003 Requisite Consents have been obtained, as applicable.

The undersigned understands that Notes tendered on or prior to the Early Consent Date may be withdrawn by written notice of withdrawal (or a properly transmitted "Request Message" through ATOP) received by the Depositary at any time on or prior to the Early Consent Date, but not thereafter, unless the applicable Tender Offer is terminated without any Notes being purchased thereunder. **Notes validly tendered and Consents validly delivered and not validly withdrawn or revoked on or prior to the Early Consent Date may not be withdrawn or revoked after the Early Consent Date.** In the event of a termination of either of the Tender Offers, Notes tendered pursuant to such Tender Offer will be returned to the tendering Holder promptly.

**A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's Notes will constitute the concurrent valid revocation of such Holder's Consent. As a result, a Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or the Early Consent Payment, as applicable, with respect to those Notes. ANY NOTES VALIDLY TENDERED AND CONSENTS VALIDLY DELIVERED AND NOT VALIDLY WITHDRAWN OR REVOKED ON OR PRIOR TO THE EARLY CONSENT DATE MAY NOT BE WITHDRAWN OR REVOKED AFTER THE EARLY CONSENT DATE.**

The undersigned hereby represents and warrants that the undersigned (i) owns the Notes tendered and is entitled to tender such Notes and (ii) has full power and authority to tender, sell, assign and transfer the Notes tendered hereby and to deliver the Consent contained herein and that, when the same are accepted for payment by the Company, the Company will acquire good, marketable and unencumbered title thereto, free and clear of all liens, restrictions, charges and encumbrances, and the same will not be subject to any adverse claim. The undersigned will, upon request, execute and deliver any additional documents deemed

8

by the Depositary or the Company to be necessary or desirable to complete the sale, assignment and transfer of the Notes tendered hereby or to perfect the undersigned's Consent to the applicable Proposed Amendments and to complete the execution of the applicable Supplemental Indentures.

No authority herein conferred or agreed to be conferred shall be affected by, and all such authority shall survive, the death or incapacity of the undersigned. All obligations of the undersigned hereunder shall be binding upon the heirs, personal and legal representatives, administrators, trustees in bankruptcy, successors and assigns of the undersigned.

The undersigned understands that tender of the Notes pursuant to any of the procedures described under the caption "Procedures for Tendering Notes and Delivering Consents" in the Offer to Purchase and in the instructions hereto will constitute a binding agreement between the undersigned and the Company upon the terms and subject to the terms and conditions set forth in the Offer to Purchase, including the Company's right to amend such terms and conditions.

For purposes of the Tender Offers and Consent Solicitations, the undersigned understands that the Company will be deemed to have accepted for payment validly tendered Notes (or defectively tendered Notes with respect to which the Company has waived such defect or defects) only when the Company gives oral or written notice thereof to the Depositary. Payment for Notes accepted for payment pursuant to the Offer to Purchase will be made by deposit with the Depositary of the Total Consideration or Purchase Price, as the case may be, and accrued and unpaid interest. The Depositary will act as agent for the tendering and consenting Holders for the purpose of receiving payment from the Company and transmitting payment to such Holders.

The undersigned understands that the delivery and surrender of Notes is not effective, and the risk of loss of the Notes does not pass to the Depositary, until receipt by the Depositary of this Letter of Transmittal, or a facsimile hereof, properly completed and duly executed, together with all accompanying evidences of transfer and authenticity and any other required documents in a form satisfactory to the Company.

The undersigned hereby recognizes and acknowledges that: (i) all questions as to the validity, form, eligibility (including time of receipt) and acceptance for payment of Notes and deliveries of Consents will be resolved by the Company, whose determination will be final and binding; (ii) the Company reserves the absolute right to reject any or all tenders and Consents that are not in proper form or the acceptance, withdrawal or revocation of which may, in the opinion of counsel for the Company, be unlawful; (iii) the Company reserves the absolute right to waive any condition to the Tender Offers and any irregularities or conditions of tender as to particular Notes or of delivery as to particular consents; (iv) the Company's interpretation of the terms and conditions of the Offer to Purchase (including the instructions in this Letter of Transmittal) will be final and binding; (v) unless waived, any irregularities in connection with tenders of Notes or deliveries of Consents must be cured within such time as the Company shall determine; (vi) the Company and the Depositary shall not be under any duty to give notification of defects in such tenders of Notes or deliveries of Consents and shall not incur liabilities, for failure to give such notification; (vii) tenders of Notes or deliveries of Consents will not be deemed to have been made until such irregularities have been cured or waived; (viii) any Notes received by the Depositary that are not validly tendered and as to which the irregularities have not been cured or waived will be returned by the Depositary to the tendering Holder, unless otherwise provided in this Letter of Transmittal, as soon as practicable following the Expiration Date; and (ix) the consummation of the Tender Offers and the Consent Solicitations is conditioned upon, among other things, the satisfaction of the Financing Condition, the Requisite Consent Condition, and the Supplemental Indenture Condition and the General Conditions, as described under the caption "Conditions of the Tender Offer and Consent Solicitation" in the Offer to Purchase.

Unless otherwise indicated herein under "Special Issuance Instructions," the undersigned hereby requests that any Notes representing principal amounts not tendered be issued in the name(s) of the undersigned, and checks constituting payments for Notes purchased and Early Consent Payments made in connection with the Tender Offers and the Consent Solicitations be issued to the order of the undersigned. Similarly, unless otherwise indicated herein under "Special Delivery Instructions," the undersigned hereby requests that any Notes representing principal amounts not tendered and checks constituting payments for Notes to be purchased and the Early Consent Payments made in connection with the Tender Offers and Consent Solicitations be delivered to the undersigned at the address(es) shown herein. In the event that the "Special Issuance Instructions" box or the "Special Delivery Instructions" box, or both, are completed, the undersigned hereby requests that any Notes representing principal amounts not tendered be issued in the name(s) of, certificates for such Notes be delivered to, and checks constituting payments for Notes purchased and Early Consent Payments made in connection with the Tender Offers and Consent Solicitations, be issued in the name(s) of and be delivered to, the person(s) at the address(es) so indicated, as applicable.

9

**SPECIAL ISSUANCE INSTRUCTIONS**
**(See Instructions 2, 4, 5 and 7)**

To be completed ONLY if certificates(s) for the Notes not tendered or not purchased, and/or the check for the Total Consideration, or the Purchase Price, as the case may be, of the Notes purchased, are to be issued in the name of someone other than the undersigned.

☐ Issue check and Certificate(s) to:

Name: _____
**(Please Type or Print)**

Address: _____
**(Include Zip Code)**

_____
**(Employer Identification or**
**Social Security Number)**

**(See Substitute Form W-9 Included Herewith)**

**SPECIAL DELIVERY INSTRUCTIONS**
**(See Instructions 2, 4, 5 and 7)**

To be completed ONLY if certificates(s) for the Notes not tendered or not purchased, and/or the check for the Total Consideration, or the Purchase Price, as the case may be, of Notes purchased are to be sent to someone other than the undersigned.

☐ Mail check and Certificate(s) to:

Name: _____
**(Please Type or Print)**

Address: _____
**(Include Zip Code)**

_____
**(Employer Identification or**
**Social Security Number)**

**(See Substitute Form W-9 Included Herewith)**

10

**IMPORTANT**
**HOLDER(S) SIGN HERE**
**(SEE INSTRUCTIONS 1 AND 3)**
**(PLEASE ALSO COMPLETE SUBSTITUTE FORM W-9 CONTAINED HEREIN)**

Authorized Signature: _____

Authorized Signature: _____
**Signature(s) of Holder(s):**

Dated: _____

(Must be assigned by registered Holder(s) exactly as name(s) appear(s) on certificate(s) or by person(s) authorized to become registered Holder(s) by certificate(s) and documents transmitted with this Letter of Transmittal. If signed by person(s) to whom the Notes represented hereby have been assigned or transferred as evidenced by endorsement or stock powers transmitted herewith, the signatures must be guaranteed. See Instruction 3. If signature is by trustee(s), executor(s), administrator(s), guardian(s), attorney(s)-in-fact, officer(s), agent(s), corporation(s) or other person(s) acting in a fiduciary or representative capacity, please provide the following information and see Instruction 3.)

Name(s): _____
**(Please Print)**

Capacity (Full Title): _____

Address: _____

_____
**(Include Zip Code)**

_____
**(Daytime Telephone Number, including Area Code)**

_____
**(Employer Identification or Social Security Number)**
**(See Substitute Form W-9 Included Herewith)**

SIGNATURE GUARANTEE
(IF REQUIRED-SEE INSTRUCTION 3)

Authorized Signature: _____

Name: _____
**(Please Print)**

Name of Firm: _____

Address: _____
**(Include Zip Code and Place Seal Here)**

Telephone Number, including Area Code: _____

Dated: _____, 2007

11

**INSTRUCTIONS**
**FORMING PART OF THE TERMS AND CONDITIONS OF THE TENDER OFFERS**
**AND CONSENT SOLICITATIONS**

**1.   Procedures for Tendering Notes and Delivering Consents; Withdrawal of Tenders and Revocation of Consents.**
To tender Notes in the Tender Offers and to deliver Consents in the Consent Solicitations, certificates representing such Notes, together with a properly completed and duly executed copy (or facsimile) of this Letter of Transmittal, and any other documents required by this Letter of Transmittal must be received by the Depositary at the address set forth herein on or prior to the Early Consent Date or the Expiration Date, as the case may be. The method of delivery of this Letter of Transmittal, certificates for Notes and all other required documents to the Depositary is at the election and risk of Holders. If such delivery is to be made by mail, it is suggested that Holders use properly insured registered mail, return receipt requested, and that the mailing be made sufficiently in advance of the Early Consent Date or the Expiration Date, as the case may be, to permit delivery to the Depositary on or prior to such date. Except as otherwise provided below, the delivery will be deemed made when actually received or confirmed by the Depositary. **THIS LETTER OF TRANSMITTAL AND NOTES SHOULD BE SENT ONLY TO THE DEPOSITARY, AND NOT TO TYCO, THE COMPANY, THE DEALER MANAGERS, THE SOLICITATION AGENTS, THE INFORMATION AGENT OR THE BOOK-ENTRY TRANSFER FACILITY.**

This Letter of Transmittal also is being supplied only for informational purposes to persons who hold Notes in book-entry form through the facilities of DTC. Tender of Notes held through DTC must be made pursuant to the procedures described in the Offer to Purchase under the caption "'Procedures for Tendering Notes and Delivering Consents — Tender of Notes Held Through DTC and Delivery of Consents."

Except as provided herein for the book-entry procedures, unless Notes being tendered and Consents being delivered are deposited with the Depositary prior to the Early Consent Date or Expiration Date (accompanied by the appropriate, properly completed and duly executed Letter of Transmittal and any required signature guarantees and other documents required by this Letter of Transmittal, unless validly tendered through ATOP), as the case may be, the Company may, in its sole discretion, reject such tender and Consent. Payment for Notes will be made only against deposit of tendered Notes and delivery of all other required documents.

**UPON RECEIPT OF THE 1998 REQUISITE CONSENTS OR 2003 REQUISITE CONSENTS, AS APPLICABLE, THE COMPANY INTENDS TO CAUSE THE EXECUTION OF THE APPLICABLE SUPPLEMENTAL INDENTURES PROVIDING FOR THE APPLICABLE PROPOSED AMENDMENTS TO OCCUR ON, OR AS SOON AS PRACTICABLE AFTER, THE EARLY CONSENT DATE. UPON ITS BECOMING OPERATIVE, EACH OF THE SUPPLEMENTAL INDENTURES WILL BE BINDING UPON EACH HOLDER OF THE APPLICABLE NOTES, WHETHER OR NOT SUCH HOLDER HAS TENDERED ITS NOTES AND CONSENTED TO THE PROPOSED AMENDMENTS.**

By executing this Letter of Transmittal (or a facsimile thereof) or tendering through ATOP, a tendering Holder waives any right to receive any notice of the acceptance for payment of tendered Notes.

For a full description of the procedures for tendering Notes, see "Procedures for Tendering Notes and Delivering Consents" in the Offer to Purchase.

Holders who tender their Notes in the Tender Offers are obligated to deliver Consents to the Proposed Amendments. Notes validly tendered on or prior to the Early Consent Date may be validly withdrawn by following the procedures set forth in the Offer to Purchase at any time on or prior to the Early Consent Date, but not thereafter, unless the Tender Offers are terminated without any Notes being purchased thereunder. Notes validly tendered after the Early Consent Date may not be withdrawn. A valid withdrawal of tendered Notes on or prior to the Early Consent Date will be deemed a valid revocation of the related Consents.

Holders who wish to exercise their right of withdrawal with respect to the Tender Offers and revocation of their Consents must give written notice of withdrawal and revocation, delivered by mail, hand delivery or manually signed facsimile transmission, or a properly transmitted "Request Message" through ATOP, which notice must be received by the Depositary at its address set forth on the back cover of this Letter of Transmittal on or prior to the Early Consent Date.  In order to be valid, a notice of withdrawal and revocation must specify the name of the person who deposited the Notes to be withdrawn (the "Depositor"), the name in which those Notes are registered (or, if tendered by a book-entry transfer, the name of the participant in the Book-Entry Transfer Facility whose name appears on the security position listing as the owner of such Notes), if different from that of the Depositor, and the principal amount of Notes to be withdrawn. If certificates have been delivered or otherwise identified (through confirmation of book-entry transfer of such Notes) to the Depositary, the name of the Holder and the certificate number or numbers relating to such Notes withdrawn also must be furnished to the Depositary as aforesaid prior to the physical release of the certificates for the withdrawn Notes (or, in the case of Notes transferred by book-entry transfer, the name and number of the account at the Book-Entry Transfer Facility to be credited with withdrawn Notes). The notice of withdrawal

12

and revocation (other than a notice transmitted through ATOP) must be signed by the Holder in the same manner as this Letter of Transmittal (including, in any case, any required signature guarantee(s)) or be accompanied by evidence satisfactory to the Company that the person withdrawing the tender has the legal authority to withdraw such tender on behalf of the Holder. Holders may not rescind withdrawals of tendered Notes. However, validly withdrawn Notes at any time on or prior to the Expiration Date may be re-tendered by following the procedures therefor described elsewhere in the Offer to Purchase.

**The valid withdrawal of a tender of a Holder's Notes will constitute the concurrent valid revocation of such Holder's Consent. A Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or an Early Consent Payment with respect to those Notes. ANY NOTES VALIDLY TENDERED AND CONSENTS VALIDLY DELIVERED AND NOT VALIDLY WITHDRAWN OR REVOKED ON OR PRIOR TO THE EARLY CONSENT DATE MAY NOT BE WITHDRAWN OR REVOKED AFTER THE EARLY CONSENT DATE.**

2.    **Partial Tenders and Consents.** Tenders of Notes pursuant to the Tender Offers and the corresponding Consents thereto pursuant to the Consent Solicitations will be accepted only in principal amounts equal to $1,000 or integral multiples thereof. If less than the entire principal amount of any Notes evidenced by a submitted certificate is tendered, the tendering Holder must fill in the principal amount tendered in the last column of the box entitled "Description of the Notes" herein. Unless otherwise indicated, the entire principal amount represented by the certificates for all Notes delivered to the Depositary will be deemed to have been tendered, and a related Consent in respect thereof given. If the entire principal amount of all Notes is not tendered, certificates for the principal amount of Notes not tendered will be sent to the Holder unless otherwise provided in the appropriate box on this Letter of Transmittal (see Instruction 4), promptly after the Notes are accepted for payment.

3.    **Signatures on this Letter of Transmittal, Bond Powers and Guarantee of Signatures.** If this Letter of Transmittal is signed by the Holder(s) of the Notes tendered hereby, the signature(s) must correspond with the name(s) as written on the face of the certificate(s) without alteration, enlargement or any change whatsoever.

**IF THIS LETTER OF TRANSMITTAL IS EXECUTED BY A HOLDER OF NOTES WHO IS NOT THE REGISTERED HOLDER, THEN THE REGISTERED HOLDER MUST SIGN A VALID POWER OF ATTORNEY, WITH THE SIGNATURE OF SUCH REGISTERED HOLDER GUARANTEED BY AN ELIGIBLE INSTITUTION.**

If any Notes tendered hereby are owned of record by two or more joint owners, all such owners must sign this Letter of Transmittal. If any tendered Notes are registered in different names on several certificates, it will be necessary to complete, sign and submit as many copies of this Letter of Transmittal and any necessary accompanying documents as there are different names in which certificates are held.

If this Letter of Transmittal is signed by the Holder, and the certificates for any principal amount of Notes not tendered for purchase are to be issued (or if a principal amount of Notes that is not tendered for purchase is to be reissued or returned) to the Holder, and checks constituting payments for Notes to be purchased and Early Consent Payment made in connection with the Tender Offers and the Consent Solicitations are to be issued to the order of the Holder, then the Holder need not endorse any certificates for tendered Notes nor provide a separate bond power. In any other case (including if this Letter of Transmittal is not signed by the Holder), the Holder must either properly endorse the certificates for Notes tendered or transmit a separate properly completed bond power with this Letter of Transmittal (in either case, executed exactly as the name(s) of the registered Holder(s) appear(s) on such Notes), with the signature on the endorsement or bond power guaranteed by an Eligible Institution, unless such certificates or bond powers are executed by an Eligible Institution.

No signature guarantee is required if: (i) this Letter of Transmittal is signed by the registered Holder(s) of the Notes tendered herewith and the payments for Notes to be purchased are to be made, or any Notes for principal amounts not tendered for purchase are to be issued, directly to such registered Holder(s) and neither the "Special Issuance Instructions" box nor the "Special Delivery Instructions" box of this Letter of Transmittal has been completed; or (ii) such Notes are tendered for the account of an Eligible Institution. In all other cases, all signatures on Letters of Transmittal accompanying Notes must be guaranteed by an Eligible Institution.

If this Letter of Transmittal or any certificates representing Notes or bond powers are signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, agents or others acting in a fiduciary or representative capacity, such persons should so indicate when signing, and proper evidence satisfactory to the Company of their authority so to act must be submitted with this Letter of Transmittal.

4.    **Special Issuance and Special Delivery Instructions.** Tendering Holders should indicate in the applicable box or boxes the name(s) and address(es) to which Notes for principal amounts not tendered or not accepted for payment or checks constituting payments for Notes to be purchased and Early Consent Payments made in connection with the Tender Offers and the Consent Solicitations are to be issued or sent, if different from the name(s) and address(es) of the Holder signing this Letter of Transmittal. In the case of issuance in a different name, the employer identification or social security number of the person named must also be

indicated. If no instructions are given, Notes not validly tendered or not accepted for payment will be returned to the Holder of the Notes tendered.

5.   **Taxpayer Identification Number and Substitute Form W-9.** Each tendering U.S. Holder is required to provide the Depositary with such U.S. Holder's correct taxpayer identification number ("TIN"), generally the U.S. Holder's social security or employer identification number, on the Substitute Form W-9 provided after the section titled "Important Tax Information" below or, alternatively, to establish another basis for exemption from backup withholding. A U.S. Holder must cross out item (2) in Part II of the Substitute Form W-9 if such U.S. Holder is subject to backup withholding. Failure to provide the information on the form may subject the tendering U.S. Holder to backup withholding at a rate equal to the fourth lowest rate of income tax applicable to unmarried individuals (which is currently 28%) on the payments made to the U.S. Holder with respect to Notes purchased pursuant to the Tender Offers and the Consent Solicitations. The "Applied For" box in Part I of the Form W-9 should be checked if the tendering U.S. Holder has not been issued a TIN and has applied for a TIN or intends to apply for a TIN in the near future. If the "Applied For" box in Part I is checked and the Depositary is not provided with a TIN by the time of payment, the Depositary will withhold 28% from all such payments with respect to Notes to be purchased and Early Consent Payments until a TIN is provided to the Depositary.

6.   **Transfer Taxes.** The Company will pay all transfer taxes, if any, payable on the purchase and transfer of Notes purchased pursuant to the Tender Offers. If, however, Notes not validly tendered are to be registered or issued in the name of any person other than the registered Holder of the Notes tendered hereby, or if tendered Notes are registered in the name of any person other than the person signing this Letter of Transmittal, or if a transfer tax is imposed for any reason other than the transfer of Notes to the Company or its order pursuant to the Tender Offers and Consent Solicitations, the amount of any such transfer taxes (whether imposed on the registered Holder or any other persons), will be payable by the tendering Holder. If satisfactory evidence of payment of such taxes or exemption therefrom is not submitted herewith, the amount of such transfer taxes will be billed directly to such tendering Holder.

7.   **Determination of Validity.** All questions as to the validity, form, eligibility (including the time of receipt) and acceptance for payment of any tenders of Notes and deliveries of Consents pursuant to the procedures described in the Offer to Purchase and this Letter of Transmittal and the form and validity of all documents will be determined by the Company, in its sole discretion, which determination shall be final and binding on all parties. The Company reserves the absolute right to reject any or all tenders of Notes and deliveries of Consents determined by it not to be in proper form or the acceptance of or payment for which may be unlawful. The Company also reserves the absolute right to waive, in whole or in part, any of the conditions of the Tender Offers and the Consent Solicitations and any defect or irregularity in the tender of any particular Notes or in the delivery of Consents. The Company's interpretations of the terms and conditions of the Tender Offers and the Consent Solicitations (including the instructions in this Letter of Transmittal) shall be final and binding. No alternative, conditional or contingent tenders will be accepted. Unless waived, any irregularities in connection with tenders or deliveries of Consents must be cured within such time as the Company shall determine. None of the Company, TIFSA, Tyco, the Depositary, the Information Agent, the Dealer Managers, the Solicitation Agents or any other person will be under any duty to give notification of any defects or irregularities in such tenders or deliveries of Consents or will incur any liability to Holders for failure to give such notification. Tenders of such Notes shall not be deemed to have been made until such irregularities have been cured or waived. Any Notes received by the Depositary that are not properly tendered and as to which the irregularities have not been cured or waived will be returned by the Depositary to the tendering Holders, unless such Holders have otherwise provided herein, as promptly as practical following the Expiration Date.

8.   **Mutilated, Lost, Stolen or Destroyed Certificates for Notes.** Any Holder of Notes whose certificates for Notes have been mutilated, lost, stolen or destroyed should contact the Depositary for further instruction at the address or telephone number set forth on the back cover of this Letter of Transmittal.

9.   **Requests for Assistance or Additional Copies.** Questions relating to the procedure for tendering Notes and delivering Consents and requests for assistance or additional copies of the Offer to Purchase and this Letter of Transmittal may be directed to, and additional information about the Tender Offers may be obtained from Goldman, Sachs & Co. or Morgan Stanley, the Dealer Managers and Solicitation Agents for the Tender Offers and Consent Solicitations, or to Global Bondholder Services Corporation, the Information Agent for the Tender Offers and Consent Solicitations, whose addresses and telephone numbers appear on the back cover of this Letter of Transmittal. Requests for additional copies of the Offer to Purchase and this Letter of Transmittal also may be obtained from the Information Agent.

10.   **Non-U.S. Holders.** Each Non-U.S. Holder must submit the appropriate completed IRS Form W-8 (generally Form W-8BEN) to avoid backup withholding. The appropriate form may be obtained via the Internal Revenue Service website at www.irs.gov or by contacting the Depositary at the address on the back cover of this Letter of Transmittal.

11.   **Inadequate Space.** If the space provided herein is inadequate, the certificate numbers of the Notes and the principal amounts represented by such Notes should be listed on a separately signed schedule and affixed to this Letter of Transmittal.

14

IMPORTANT: THIS LETTER OF TRANSMITTAL (OR A FACSIMILE THEREOF) PROPERLY COMPLETED AND DULY EXECUTED (TOGETHER WITH ANY REQUIRED SIGNATURE GUARANTEES AND TIME CERTIFICATES OR CONFIRMATION OF BOOK-ENTRY TRANSFER AND ALL OTHER REQUIRED DOCUMENTS) MUST BE RECEIVED BY THE DEPOSITARY ON OR PRIOR TO THE EXPIRATION DATE OR, TO RECEIVE THE TOTAL CONSIDERATION, ON OR PRIOR TO THE EARLY CONSENT DATE.

## IMPORTANT TAX INFORMATION

Under United States federal income tax law, a tendering Holder may be subject to backup withholding tax at a rate of 28% with respect to payments by the Depositary pursuant to the Tender Offers and the Consent Solicitations unless such Holder: (i) is a corporation or other exempt recipient and, if required, establishes its exemption from backup withholding; (ii) provides its correct TIN and certifies that (A) the TIN provided is correct (or that such Holder is awaiting a TIN) and (B) it is not currently subject to backup withholding; or (iii) certifies as to its non-United States status. If such Holder is an individual, the TIN is his or her social security number. Completion of the Substitute Form W-9, in the case of a U.S. Holder, provided in this Letter of Transmittal, should be used for this purpose. Failure to provide such Holder's TIN on the Substitute Form W-9, if applicable, may subject the tendering Holder (or other payee) to a $50.00 penalty imposed by the Internal Revenue Service, and payments that are made to such tendering Holder pursuant to the Tender Offers and the Consent Solicitations may be subject to backup withholding (see below). More serious penalties may be imposed for providing false information which, if willfully done, may result in fines and/or imprisonment. The "Applied For" box in Part I of the Substitute Form W-9 may be checked if the tendering U.S. Holder (or other payee) has not been issued a TIN and has applied for a TIN or intends to apply for a TIN in the near future. If the "Applied For" box in Part I is so checked and the Depositary is not provided with a TIN by the time of payment, the Depositary will withhold 28% on all such payments received pursuant to the Tender Offers and the Consent Solicitations until a TIN is provided to the Depositary. A tendering U.S. Holder who checks the "Applied For" box in Part I in lieu of furnishing his or her TIN should furnish the Depositary with such Holder's TIN as soon as it is received. In order for a Non-U.S. Holder to qualify as an exempt recipient, that Non-U.S. Holder should submit the appropriate Internal Revenue Service Form W-8 (which are available from the Depositary) signed under penalties of perjury, attesting to that Non-U.S. Holder's foreign status.

If backup withholding applies to a tendering Holder, the Depositary is required to withhold 28% of any payments made to such Holder pursuant to the Tender Offers and the Consent Solicitations. Backup withholding is not an additional tax. Rather, provided that the required information is timely furnished to the IRS, the U.S. federal income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld or, if withholding results in an overpayment of taxes, a refund may be obtained by filing a tax return with the Internal Revenue Service. The Depositary cannot refund amounts withheld by reason of backup withholding. Tendering Holders are urged to consult their own tax advisers to determine whether they are exempt from these backup withholding and reporting requirements.

**SUBSTITUTE FORM W-9**
**Request for Taxpayer Identification Number and Certification**
**Department of the Treasury**
**Internal Revenue Service**

PAYER'S NAME: Global Bondholder Services Corporation, as Depositary

| PAYEE INFORMATION (please print or type) | | | |
|---|---|---|---|
| Individual or business name: | | | |
| Check appropriate box: | ☐ Individual/Sole Proprietor | ☐ Corporation | ☐ Partnership |
| | ☐ Other | ☐ Exempt from backup withholding | |
| | | | |

Address (number, street, and apt. or suite no.):

City, state and ZIP code:

**PART I: Taxpayer Identification Number ("TIN")**

Enter your TIN below. For individuals, your TIN is your social security number. Sole proprietors may enter either their social security number or their employer identification number. For other entities, your TIN is your employer identification number.

Social security number:

☐ ☐ ☐ – ☐ ☐ – ☐ ☐ ☐ ☐

or

Employer identification number:

☐ ☐ ☐ – ☐ ☐ – ☐ ☐ ☐ ☐

☐     Applied For

**PART II: Certification**

Certification Instructions: You must cross out item 2 below if you have been notified by the Internal Revenue Service (the "IRS") that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. However, if after being notified by the IRS that you were subject to backup withholding you received another notification from the IRS that you are no longer subject to backup withholding, do not cross out item 2.

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct TIN (or a TIN has not been issued to me and either (a) I have mailed or delivered on application to receive a TIN to the appropriate IRS Center or Social Security Administration Office, or (b) I intend to mail or deliver an application in the near future). I understand that until I provide my TIN to the payer, a portion of all reportable payments made to me by the payer may be withheld and remitted to the IRS as backup withholding;

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding. (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified me that I am no longer subject to backup withholding;

3. I am a U.S. person (including a U.S. resident alien); and

4. All of the information provided on this form is true and correct.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

Signature _____     Date _____, 2007

**NOTE: FAILURE TO COMPLETE AND RETURN THIS FORM MAY RESULT IN BACKUP WITHHOLDING OF 28% OF ANY PAYMENTS MADE TO YOU PURSUANT TO THE TENDER OFFERS AND THE CONSENT SOLICITATIONS AND A $50 PENALTY IMPOSED BY THE IRS. PLEASE REVIEW THE ENCLOSED** *GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION NUMBER ON SUBSTITUTE FORM W-9 FOR ADDITIONAL DETAILS.*

16

**GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION
NUMBER ON SUBSTITUTE FORM W-9**

**Guidelines for Determining the Proper Identification Number to Give the Payer** - Social security numbers have nine digits separated by two hyphens: i.e., 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.  Employer identification numbers have nine digits separated by only one hyphen: i.e., 00-0000000.  The table below will help determine the number to give the payer.

| For this type of account: | Give the SOCIAL SECURITY number of— | For this type of account: | Give the EMPLOYER IDENTIFICATION number of— |
|---|---|---|---|
| 1. Individual | The Individual | 8. Sole proprietorship account | The Owner (4) |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account (1) | 9. A valid trust, estate, pension trust | Legal entity (Do not furnish the identifying number of the personal representative or trustee unless the legal entity itself is not designated in the account title ) (5) |
| 3. Husband and wife (joint account) | The actual owner of the account or, if joint funds, the first individual on the account (1) | 10. Corporate | The corporation |
| 4. Custodian account of a minor (Uniform Gift to Minors Act) | The minor (2) | 11. Religious, charitable, or educational organization | The organization |
| 5. Adult and minor (joint account) | The adult or, if the minor is the only contributor, the minor (1) | 12. Partnership held in the name of the business | The partnership |
| 6. Account in the name of guardian or committee for a designated ward, minor, or incompetent person | The ward, minor, or incompetent person (3) | 13. Association, club or other tax-exempt organization | The organization |
| 7. a. The usual revocable savings trust account (grantor is also trustee) | The grantor-trustee | 14. A broker or registered nominee | The broker or nominee |
| b. So-called trust account that is not a legal or valid trust under State Law | The actual owner (1) | 15. Account with the Department of Agriculture in the name of a public entity (such as a State or local government, school district or prison) that received agricultural program payments | The public entity |

(1)    List first and circle the name of the person whose number you furnish. If only one person on a joint account has a social security number, that person's social security number must be furnished.
(2)    Circle the minor's name and furnish the minor's social security number.
(3)    Circle the ward's, minor's or incompetent person's name and furnish such person's social security number.
(4)    You must show your individual name, but you may also enter your business or "doing business as" name. You may use either your social security number or your employer identification number (if you have one).
(5)    List first and circle the name of the legal trust, estate or pension trust.

**Note:**  If no name is circled when there is more than one name listed, the number will be considered to be that of the first name listed.

17

## GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION
## NUMBER ON SUBSTITUTE FORM W-9

### Page 2

**Obtaining a Number**

If you don't have a taxpayer identification number or you don't know your number, obtain Form SS-5, Application for a Social Security Number Card, or Form SS-4, Application for Employer Identification Number, at the local office of the Social Security Administration or the Internal Revenue Service and apply for a number.

**Payees Exempt from Backup Withholding**

Payees specifically exempted from backup withholding generally include the following:

- A corporation.
- A financial institution.
- An organization exempt from tax under Section 501 (a), an individual retirement plan or a custodial account under Section 403 (b) (7) if the account satisfies the requirements of Section 401 (f) (2).
- The United States or any agency or instrumentality thereof.
- A state, the District of Columbia, a possession of the United States, or any subdivision or instrumentality thereof.
- A foreign government, a political subdivision of a foreign government, or any agency or instrumentality thereof.
- An international organization or any agency or instrumentality thereof.
- A registered dealer in securities or commodities registered in the U.S., the District of Columbia or a possession of the U.S.
- A real estate investment trust.
- A common trust fund operated by a bank under Section 584(a).
- An entity registered at all times under the Investment Company Act of 1940.
- A foreign central bank of issue.

Payments of dividends and patronage dividends not generally subject to backup withholding include the following:

- Payments to nonresident aliens subject to withholding under Section 1441.
- Payments to partnerships not engaged in a trade or business in the U.S. and which have at least one nonresident partner.
- Payments of patronage dividends not paid in money.

Payments made by certain foreign organizations. Payments of interest not generally subject to backup with-holding include the following:

- Payments of interest on obligations issued by individuals. *Note: You may be subject to backup withholding if this interest is $600 or more and is paid in the course of the payer's trade or business and you have not provided your correct taxpayer identification number to the payer.*
- Payments of tax-exempt interest (including exempt-interest dividends under Section 852).
- Payments described in Section 6049 (b)( 5) to nonresident aliens.

- Payments on tax-free covenant bonds under Section 1451.
- Payments made by certain foreign organizations.

Exempt payees described above should file Form W -9 to avoid possible erroneous backup withholding. FILE THIS FORM WITH THE PAYER, FURNISH YOUR TAXPAYER IDENTIFICATION NUMBER, WRITE "EXEMPT" ON THE FACE OF THE FORM, AND RETURN IT TO THE PAYER. IF THE PAYMENTS ARE INTEREST DIVIDENDS, OR PATRONAGE DIVIDENDS, ALSO SIGN AND DATE THE FORM.

Certain payments other than interest, dividends, and patronage dividends that are not subject to information reporting are also not subject to backup withholding. For details, see Sections 6041, 6041A(a), 6042, 6044, 6045, 6049, 6050A and 6050N, and their regulations.

**Privacy Act Notice —** Section 6109 requires most recipients of dividend, interest, or other payments to give their correct taxpayer identification numbers to payers who must report the payments to the IRS. The IRS uses the numbers for identification purposes and to help verify the accuracy of tax returns. The IRS may also provide this information to the Department of Justice for civil and criminal litigation and to cities, states and the District of Columbia to carry out their tax laws. Payers must be given the numbers whether or not recipients are required to file tax returns. Payers must generally withhold federal income tax on taxable interest, dividend, and certain other payments to a payee who does not furnish a taxpayer identification number to a payer. Certain penalties may also apply.

**Penalties**

**(1) Penalty for Failure to Furnish Taxpayer Identification Number. —** If you fail to furnish your taxpayer identification number to a payer, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**(2) Civil Penalty for False Information With Respect to Withholding. —** If you make a false statement with no reasonable basis which results in no imposition of backup withholding, you are subject to a penalty of $500.

**(3) Criminal Penalty for Falsifying Information. —** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**(4) Misuse of Taxpayer Identification Numbers. —** If the requester discloses or uses taxpayer identification numbers in violation of federal law, the requester may be subject to civil and criminal penalties.

**FOR ADDITIONAL INFORMATION CONTACT YOUR TAX CONSULTANT OR THE INTERNAL REVENUE SERVICE.**

**\*Unless otherwise indicated, all references are to the Internal Revenue Code of 1986, as amended.**

*The Depositary for the Tender Offers and the Consent Solicitations is:*

Global Bondholder Services Corporation

*By Facsimile (Eligible Institutions Only):*

(212) 430-3775
Attention: Corporate Actions
For Information or
Confirmation by Telephone:
(212) 430-3774

*By Mail or Hand:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attention: Corporate Actions

Any questions or requests for assistance may be directed to the Dealer Managers at the addresses and telephone numbers set forth below. Requests for additional copies of this Offer to Purchase and the Letter of Transmittal may be directed to the Information Agent. Requests for copies of the Indentures and the forms of the Supplemental Indentures may also be directed to the Information Agent. Beneficial owners may also contact their Custodian for assistance concerning the Tender Offers and the Consent Solicitations.

*The Information Agent for the Tender Offer and Consent Solicitation is:*

Global Bondholder Services Corporation
65 Broadway – Suite 723
New York, New York 10006
Attn: Corporate Actions
Bank and Brokers Call Collect: (212) 430-3774
All Others Please Call Toll-Free: (866) 470-3700

*The Dealer Managers for the Tender Offer and the Solicitation Agents for the Consent Solicitation are:*

Morgan Stanley
Liability Management Group
1585 Broadway, Floor 04
New York, NY 10036
(212) 761-1941
Toll Free: (800) 624-1808

Goldman, Sachs & Co.
Liability Management
1 New York Plaza
New York, NY 10004
(212) 902-9077
Toll Free: (800) 828-3182