Exhibit 4.1
EXECUTION COPY

**TYCO INTERNATIONAL GROUP S.A.,**
as Issuer

AND

**TYCO INTERNATIONAL LTD.,**
as Guarantor, if applicable

AND

**THE BANK OF NEW YORK,**
as Trustee

**INDENTURE**

Dated as of November 12, 2003

**UNSUBORDINATED DEBT SECURITIES**

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| **ARTICLE I. DEFINITIONS** | | | 1 |
| | Section 1.01 | Definitions of Terms | 1 |
| **ARTICLE II. ISSUE, DESCRIPTION, TERMS, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES** | | | 8 |
| | Section 2.01 | Designation and Terms of Securities | 8 |
| | Section 2.02 | Form of Securities and Trustee's Certificate | 11 |
| | Section 2.03 | Denominations; Provisions for Payment | 13 |
| | Section 2.04 | Execution and Authentications | 15 |
| | Section 2.05 | Transfer and Exchange | 15 |
| | Section 2.06 | Temporary Securities | 22 |
| | Section 2.07 | Mutilated, Destroyed, Lost or Stolen Securities | 23 |
| | Section 2.08 | Cancellation | 24 |
| | Section 2.09 | Benefits of Indenture | 24 |
| | Section 2.10 | Authenticating Agent | 24 |
| | Section 2.11 | Global Securities | 25 |
| | Section 2.12 | CUSIP Numbers | 25 |
| | Section 2.13 | Securities Denominated in Foreign Currencies | 25 |
| | Section 2.14 | Wire Transfers | 26 |
| | Section 2.15 | Designated Currency | 26 |
| | Section 2.16 | Form of Guarantee | 26 |
| **ARTICLE III. REDEMPTION OF SECURITIES AND SINKING FUND PROVISIONS** | | | 27 |
| | Section 3.01 | Redemption | 27 |
| | Section 3.02 | Notice of Redemption | 27 |
| | Section 3.03 | Payment Upon Redemption | 28 |
| | Section 3.04 | Sinking Fund | 29 |
| | Section 3.05 | Satisfaction of Sinking Fund Payments with Securities | 29 |
| | Section 3.06 | Redemption of Securities for Sinking Fund | 30 |
| **ARTICLE IV. CERTAIN COVENANTS** | | | 30 |
| | Section 4.01 | Payment of Principal, Premium and Interest | 30 |
| | Section 4.02 | Maintenance of Office or Agency | 30 |
| | Section 4.03 | Paying Agents | 31 |
| | Section 4.04 | Statement by Officers as to Default | 31 |
| | Section 4.05 | Appointment to Fill Vacancy in Office of Trustee | 32 |
| **ARTICLE V. SECURITYHOLDERS' LISTS AND REPORTS BY THE COMPANY AND THE TRUSTEE** | | | 32 |
| | Section 5.01 | Company to Furnish Trustee Names and Addresses of Securityholders | 32 |
| | Section 5.02 | Preservation of Information; Communications with Securityholders | 32 |
| | Section 5.03 | Reports by the Company | 32 |

i

| | Section 5.04 | Reports by the Trustee | 33 |
|---|---|---|---|
| **ARTICLE VI.** | **REMEDIES OF THE TRUSTEE AND SECURITYHOLDERS ON EVENT OF DEFAULT** | | 33 |
| | Section 6.01 | Events of Default | 33 |
| | Section 6.02 | Collection of Indebtedness and Suits for Enforcement by Trustee | 35 |
| | Section 6.03 | Application of Funds Collected | 37 |
| | Section 6.04 | Limitation on Suits | 37 |
| | Section 6.05 | Rights and Remedies Cumulative; Delay or Omission not Waiver | 38 |
| | Section 6.06 | Control by Securityholders | 38 |
| | Section 6.07 | Undertaking to Pay Costs | 39 |
| | Section 6.08 | Waiver Of Usury, Stay Or Extension Laws | 39 |
| **ARTICLE VII.** | **CONCERNING THE TRUSTEE** | | 39 |
| | Section 7.01 | Certain Duties and Responsibilities of Trustee | 39 |
| | Section 7.02 | Certain Rights of Trustee | 41 |
| | Section 7.03 | Trustee not Responsible for Recitals or Issuance of Securities | 42 |
| | Section 7.04 | May Hold Securities | 42 |
| | Section 7.05 | Funds Held in Trust | 42 |
| | Section 7.06 | Compensation and Reimbursement | 42 |
| | Section 7.07 | Reliance on Officers' Certificate | 43 |
| | Section 7.08 | Disqualification; Conflicting Interests | 43 |
| | Section 7.09 | Corporate Trustee Required; Eligibility | 43 |
| | Section 7.10 | Resignation and Removal; Appointment of Successor | 44 |
| | Section 7.11 | Acceptance of Appointment By Successor | 45 |
| | Section 7.12 | Merger, Conversion, Consolidation or Succession to Business | 46 |
| | Section 7.13 | Preferential Collection of Claims Against the Company | 46 |
| **ARTICLE VIII.** | **CONCERNING THE SECURITYHOLDERS** | | 47 |
| | Section 8.01 | Evidence of Action by Securityholders | 47 |
| | Section 8.02 | Proof of Execution by Securityholders | 47 |
| | Section 8.03 | Who May be Deemed Owners | 48 |
| | Section 8.04 | Certain Securities Owned by Company Disregarded | 48 |
| | Section 8.05 | Actions Binding on Future Securityholders | 48 |
| **ARTICLE IX.** | **SUPPLEMENTAL INDENTURES** | | 49 |
| | Section 9.01 | Supplemental Indentures Without the Consent of Securityholders | 49 |
| | Section 9.02 | Supplemental Indentures with Consent of Securityholders | 50 |
| | Section 9.03 | Effect of Supplemental Indentures | 51 |
| | Section 9.04 | Securities Affected by Supplemental Indentures | 51 |
| | Section 9.05 | Execution of Supplemental Indentures | 52 |
| **ARTICLE X.** | **SUCCESSOR CORPORATION** | | 52 |
| | Section 10.01 | Consolidation, Merger and Sale of Assets | 52 |
| | Section 10.02 | Successor Person Substituted | 53 |
| **ARTICLE XI.** | **SATISFACTION AND DISCHARGE** | | 54 |

ii

| | | |
|---|---|---|
| Section 11.01 | Applicability of Article. | |
| Section 11.02 | Satisfaction and Discharge of Indenture. | 54 |
| Section 11.03 | Defeasance and Discharge of Obligations; Covenant Defeasance. | 54 |
| Section 11.04 | Deposited Funds to be Held in Trust. | 56 |
| Section 11.05 | Payment of Funds Held by Paying Agents. | 56 |
| Section 11.06 | Repayment to Tyco or the Company. | 57 |
| Section 11.07 | Reinstatement. | 57 |

**ARTICLE XII. IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS**

| | | |
|---|---|---|
| Section 12.01 | No Recourse. | 57 |

**ARTICLE XIII. MISCELLANEOUS PROVISIONS**

| | | |
|---|---|---|
| Section 13.01 | Effect on Successors and Assigns. | 58 |
| Section 13.02 | Actions by Successor. | 58 |
| Section 13.03 | Notices. | 58 |
| Section 13.04 | Governing Law. | 58 |
| Section 13.05 | Treatment of Securities as Debt. | 60 |
| Section 13.06 | Compliance Certificates and Opinions. | 60 |
| Section 13.07 | Payments on Business Days. | 60 |
| Section 13.08 | Conflict with Trust Indenture Act. | 60 |
| Section 13.09 | Counterparts. | 61 |
| Section 13.10 | Separability. | 61 |
| Section 13.11 | No Adverse Interpretation of Other Agreements. | 61 |
| Section 13.12 | Table of Contents, Headings, Etc. | 61 |
| Section 13.13 | Consent to Jurisdiction and Service of Process. | 61 |

**ARTICLE XIV. ADDITIONAL AMOUNTS; CERTAIN TAX PROVISIONS**

| | | |
|---|---|---|
| Section 14.01 | Redemption Upon Changes in Withholding Taxes. | 62 |
| Section 14.02 | Payment of Additional Amounts. | 63 |

**ARTICLE XV. GUARANTEES**

| | | |
|---|---|---|
| Section 15.01 | Guarantee. | 65 |
| Section 15.02 | Execution and Delivery of Guarantee. | 66 |
| Section 15.03 | Release of Guarantee. | 67 |

**Cross Reference Table***

| Section of Trust Indenture Act of 1939, as amended | Section of Indenture |
|---|---|
| 310(a) | 7.09 |
| 310(b) | 7.08 |
| | 7.10 |
| 310(c) | Inapplicable |
| 311(a) | 7.13 |
| 311(b) | 7.13 |
| 311(c) | Inapplicable |
| 312(a) | 5.01 |
| | 5.02(a) |
| 312(b) | 5.02(b) |
| 312(c) | 5.02(b) |
| 313(a) | 5.04(a) |
| 313(b) | 5.04(b) |
| 313(c) | 5.04(a) |
| | 5.04(b) |
| 313(d) | 5.04(b) |
| 314(a) | 5.03 |
| 314(b) | Inapplicable |
| 314(c) | 13.06 |
| 314(d) | Inapplicable |
| 314(e) | 13.06 |
| 314(f) | Inapplicable |
| 315(a) | 7.01 |
| 315(b) | 5.04 |
| 315(c) | 7.01(a) |
| 315(d) | 7.01(b) |
| 315(e) | 6.07 |
| 316(a) | 6.06, 8.04 |
| 316(b) | 6.04 |
| 316(c) | 8.01 |
| 317(a) | 6.02 |
| 317(b) | 4.03 |
| 318(a) | 13.08 |

* This Cross-Reference Table does not constitute part of the Indenture and shall not have any bearing on the interpretation of any of its terms or provisions.

THIS INDENTURE is dated as of November 12, 2003 among Tyco International Group S.A., a Luxembourg company (the "Company"), Tyco International Ltd., a Bermuda company ("Tyco"), and The Bank Of New York, a New York banking corporation (the "Trustee").

RECITALS

A.    This Indenture provides for the issuance of unsecured debt securities (the "Securities"), in an unlimited aggregate principal amount to be issued from time to time in one or more series, to be authenticated by the certificate of the Trustee, and for the issuance of guarantees of the Securities.

B.    This Indenture is subject to the provisions of the Trust Indenture Act that are deemed to be incorporated into this Indenture and shall, to the extent applicable, be governed by such provisions.

C.    All things necessary to make this Indenture a valid agreement, in accordance with its terms, have been done.

NOW, THEREFORE, in consideration of the premises and the purchase of the Securities by the holders thereof, it is mutually covenanted and agreed as follows for the equal and ratable benefit of the holders of Securities:

ARTICLE I.

DEFINITIONS

Section 1.01                Definitions of Terms.

The terms defined in this Section 1.01 (except as in this Indenture otherwise expressly provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section 1.01 and shall include the plural as well as the singular. All other terms used in this Indenture that are defined in the Trust Indenture Act or that are by reference in the Trust Indenture Act defined in the Securities Act of 1933, as amended (the "Securities Act") (except as herein otherwise expressly provided or unless the context otherwise requires), shall have the meanings assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of the execution of this instrument. All accounting terms used herein and not expressly defined shall have the meanings assigned to such terms in accordance with generally accepted accounting principles, and the term "generally accepted accounting principles" means such accounting principles as are generally accepted in the United States at the time of any computation.

"144A Global Security", with respect to any series of Securities, means one or more Global Securities bearing the Private Placement Legend that will be issued in an aggregate amount of denominations equal in total to the outstanding principal amount of the Securities of such series sold in global form in reliance on Rule 144A.

"Additional Amounts" has the meaning set forth in Section 14.02.

"Affiliate", with respect to any specified Person, means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Applicable Procedures", with respect to any transfer or exchange of or for beneficial interests in any Global Security for a series of Securities, means the rules and procedures of the Depositary, Euroclear and Clearstream that apply to such transfer or exchange at the relevant time.

"Authenticating Agent" means an authenticating agent with respect to all or any of the series of Securities appointed with respect to all or any series of the Securities by the Trustee pursuant to Section 2.10.

"Board of Directors" means the Board of Directors of the Company or Tyco or any duly authorized committee of such Board of Directors.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company or Tyco to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification.

"Business Day", with respect to any series of Securities, means any day other than Saturday, Sunday or a day on which Federal or State banking institutions in the Borough of Manhattan, The City of New York, or in the city where the office or agency for payment on the Securities is maintained pursuant to Section 4.02, are authorized or obligated by law, executive order or regulation to close.

"Capital Stock" of any Person means any and all shares, interests, participations, rights in or other equivalents (however designated) of such Person's capital stock, other equity interests whether now outstanding or issued after the date of this Indenture, partnership interests (whether general or limited), any other interest or participation that confers on a Person that right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person and any rights (other than debt securities convertible into Capital Stock), warrants or options exchangeable for or convertible into such Capital Stock.

"Clearstream" means Clearstream Banking S.A., or its successors.

"Commission" means the Securities and Exchange Commission.

"Company" means Tyco International Group S.A. until a successor entity shall have become such pursuant to Article X, and thereafter "Company" shall mean such successor entity.

"Corporate Trust Office" means the office of the Trustee at which, at any particular time, its corporate trust business shall be principally administered, which office at the date hereof is located at 101 Barclay Street, 21 W, New York, New York 10286, Attention: Corporate Trust Administration.

"Currency" means Dollars or Foreign Currency.

"Default" means any event, act or condition that with notice or lapse of time, or both, would constitute an Event of Default.

2.05.   "Definitive Security" means a certificated Security registered in the name of the Securityholder thereof and issued in accordance with Section

"Depositary", with respect to Securities of any series which the Company shall determine will be issued in whole or in part as a Global Security, means The Depository Trust Company ("DTC"), New York, New York, another clearing agency, or any successor registered as a clearing agency under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and any other applicable U.S. or foreign statute or regulation, which, in each case, shall be designated by the Company pursuant to Section 2.01.

"Designated Currency" has the meaning set forth in Section 2.15.

"Distribution Compliance Period" means the restricted period as defined in Rule 903(b)(3) under the Securities Act.

"Dollar" or "$" means such currency of the United States as at the time of payment is legal tender for the payment of public and private debts.

"Dollar Equivalent" means, with respect to any monetary amount in a Foreign Currency, at any time for the determination thereof, the amount of Dollars obtained by converting such Foreign Currency involved in such computation into Dollars at the spot rate for the purchase of Dollars with the applicable Foreign Currency as quoted by J.P. Morgan Chase Bank (unless another comparable financial institution is designated by the Company) in New York, New York, at approximately 11:00 a.m. (New York time) on the date two business days prior to such determination.

"Euroclear" means Euroclear Bank S.A./N.V., or its successor, as operator of the Euroclear System.

"Event of Default", with respect to Securities of a particular series, means any event specified in Section 6.01, continued for the period of time, if any, therein designated.

"Foreign Currency" means a currency issued by the government of any country other than the United States or a composite currency the value of which is determined by reference to the values of the currencies of any group of countries.

"Global Security", with respect to any series of Securities, means a Security executed by the Company and delivered by the Trustee to the Depositary or pursuant to the Depositary's instruction, all in accordance with the Indenture, which shall be registered in the name of the Depositary or its nominee.

"Governmental Obligations" means securities that are (i) direct obligations of the United States for the payment of which its full faith and credit is pledged or (ii) obligations of a

3

Person controlled or supervised by and acting as an agency or instrumentality of the United States, the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States that, in either case, are not callable or redeemable at the option of the issuer thereof, and shall also include a depositary receipt issued by a bank (as defined in Section 3(a)(2) of the Securities Act) as custodian with respect to any such Governmental Obligation or a specific payment of principal of or interest on any such Governmental Obligation held by such custodian for the account of the holder of such depositary receipt; provided, however, that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depositary receipt from any amount received by the custodian in respect of the Governmental Obligation or the specific payment of principal of or interest on the Governmental Obligation evidenced by such depositary receipt.

"**Guarantee**" means the unconditional and unsubordinated guarantee by Tyco of the due and punctual payment of principal of and interest on a series of Securities when and as the same shall become due and payable, whether at the stated maturity, by acceleration, call for redemption or otherwise in accordance with the terms of the Securities and this Indenture.

"**herein**," "**hereof**" and "**hereunder**," and other words of similar import, refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

"**Indenture**" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into in accordance with the terms hereof.

"**Indirect Participant**" means any entity that, with respect to DTC, clears through or maintains a direct or indirect, custodial relationship with a Participant.

"**Institutional Accredited Investor**" means an institution that is an "accredited investor" as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act, who is not also a QIB.

"**Interest Payment Date**," when used with respect to any installment of interest on a Security of a particular series, means the date specified herein, in such Security or in a Board Resolution or in an indenture supplemental hereto with respect to such series as the fixed date on which an installment of interest with respect to Securities of that series is due and payable.

"**Officer**" means any managing director, the chairman or any vice chairman of the Board of Directors, the chief executive officer, the president, the chief financial officer, any vice president, the treasurer, any assistant treasurer, the secretary or any assistant secretary of the Company or Tyco, as the case may be.

"**Officers' Certificate**" means a certificate, signed by any two managing directors or by both (a) the chairman of the Board of Directors, or any vice chairman of the Board of Directors, or the chief executive officer, president, chief financial officer or vice president and (b) the secretary or any assistant secretary or the treasurer or any assistant treasurer of the Company or Tyco, as the case may be, that is delivered to the Trustee in accordance with the terms hereof. Each such certificate shall include the statements provided for in Section 13.06, if and to the extent required by the provisions thereof.

4

"Opinion of Counsel" means an opinion in writing of legal counsel, who may be an Officer or employee of or counsel for Tyco or the Company that is delivered to the Trustee in accordance with the terms hereof. Each such opinion shall include the statements provided for in Section 13.06, if and to the extent required by the provisions thereof.

"Original Issue Discount Security" means a Security that provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof pursuant to Section 6.01.

"Outstanding", when used with reference to Securities of any series, shall, subject to the provisions of Section 8.04, mean, as of any particular time, all Securities of such series authenticated and delivered by the Trustee under this Indenture, except

(a)    Securities theretofore canceled by the Trustee or delivered to the Trustee for cancellation;

(b)    Securities, or portions thereof, for the payment or redemption of which funds in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent other than the Company, or, if the Company shall act as its own paying agent, shall have been set aside, segregated and held in trust by the Company for the Holders of such Securities, provided that if such Securities, or portions thereof, are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as herein provided, or provision satisfactory to the Trustee shall have been made for giving such notice; and

(c)    Securities in substitution for which other Securities shall have been authenticated and delivered, or which shall have been paid, pursuant to the terms of Section 2.07, except with respect to any such Security as to which proof satisfactory to the Trustee is presented that such Security is held by a person in whose hands such Security is a legal, valid and binding obligation of the Company.

In determining whether the holders of the requisite principal amount of Outstanding Securities of any series have given any request, demand, authorization, direction, notice, consent or waiver hereunder, the principal amount of an Original Issue Discount Security that shall be deemed to be Outstanding for such purposes shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon a declaration of acceleration of the maturity thereof pursuant to Section 6.01 and the principal amount of a Security denominated in one or more currencies that shall be deemed to be Outstanding for such purposes shall be based on the Dollar Equivalent on the date of original issuance of such Security, of the principal amount of such Security.

"Participant", with respect to the Depositary, Euroclear or Clearstream, means a Person who has an account with the Depositary, Euroclear or Clearstream, respectively (and, with respect to DTC, shall include Euroclear and Clearstream).

"Person" means any individual, corporation, limited liability company, partnership, joint venture, joint-stock company, unincorporated organization or government or any agency or political subdivision thereof.

5

"**Predecessor Security**" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 2.07 in lieu of a lost, destroyed or stolen Security shall be deemed to evidence the same debt as the lost, destroyed or stolen Security.

"**Private Placement Legend**" means the legend set forth in Section 2.02(b) to be placed on all Restricted Securities issued under this Indenture or pursuant to a Board Resolution or an indenture supplemental hereto with respect to a series of Securities, except where specifically stated otherwise by the provisions of this Indenture, such Board Resolution or such supplemental indenture.

"**QIB**" means a "qualified institutional buyer" as defined in Rule 144A.

"**Regulation S Global Security**" means, with respect to any series of Securities, a Regulation S Temporary Global Security of such series if required by Rule 903 of Regulation S or a Regulation S Permanent Global Security of such series, as the case may be.

"**Regulation S Permanent Global Security**", with respect to any series of Securities, means one or more permanent Global Securities bearing the Private Placement Legend that will be issued in an aggregate amount of denominations equal in total to the outstanding principal amount of the Securities of such series initially sold or, if required by Rule 903 of Regulation S, of the Regulation S Temporary Global Security of such series upon expiration of the Distribution Compliance Period with respect to such series, as the case may be.

"**Regulation S Temporary Global Security**", with respect to any series of Securities, means one or more temporary Global Securities bearing the Private Placement Legend and the Regulation S Temporary Global Security Legend issued in an aggregate amount of denominations equal in total to the outstanding principal amount of the Securities of such series initially sold, if required by Rule 903 of Regulation S.

"**Regulation S Temporary Global Security Legend**" means the legend set forth in Section 2.02(d), which is required to be placed on all Regulation S Temporary Global Securities issued under this Indenture.

"**Regulation S**" means Regulation S promulgated under the Securities Act, as it may be amended from time to time, and any successor provision thereto.

"**Responsible Officer**" means any vice president, any trust officer, any assistant trust officer, any assistant vice president, any assistant treasurer, or any other officer of the Trustee customarily performing functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject.

"**Restricted Definitive Security**", with respect to any series of Securities, means one or more Definitive Securities of such series bearing the Private Placement Legend issued under this Indenture.

6

"Restricted Global Security", with respect to any series of Securities, means one or more Global Securities of such series bearing the Private Placement Legend, issued under this Indenture.

"Restricted Security", with respect to any series of Securities, means a Security of such series, unless or until it has been (i) effectively registered under the Securities Act and disposed of in accordance with a registration statement with respect to such series or (ii) distributed to the public pursuant to Rule 144 under the Securities Act (or any similar provision then in force).

"Rule 144A" means Rule 144A promulgated under the Securities Act, as it may be amended from time to time, and any successor provision thereto.

"Securities" means the securities authenticated and delivered under this Indenture.

"Securityholder," "Holder," "holder of Securities," "registered holder," or other similar term, means the Person or Persons in whose name or names a particular Security shall be registered on the books of the Company kept for that purpose in accordance with the terms of this Indenture.

"Security Register" has the meaning set forth in Section 2.05(a).

"Security Registrar" has the meaning set forth in Section 2.05(a).

"Stated Maturity", with respect to any Security, means the date specified in such security as the fixed date on which the payment of principal of such security is due and payable, including pursuant to any mandatory redemption provision (but excluding any provision providing for the repurchase of such security at the option of the holder thereof upon the happening of any contingency beyond the control of the issuer unless such contingency has occurred).

"Subsidiary", with respect to any Person, means any other Person of which at least a majority of the outstanding Voting Stock at the time is owned or controlled directly or indirectly by such Person or by one or more Subsidiaries of such Person or by such Person and one or more Subsidiaries of such Person.

"Taxes" has the meaning set forth in Section 14.02.

"Taxing Authority" has the meaning set forth in Section 14.01.

"Trustee" means The Bank of New York and, subject to the provisions of Article VII, shall include its successors and assigns. The term "Trustee" as used with respect to a particular series of the Securities shall mean the trustee with respect to that series.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended, as in effect at the date of execution of this instrument subject to the provisions of Sections 9.01, 9.02, and 10.01.

"Tyco" means Tyco International Ltd. until a successor entity shall have become such pursuant to Article X, and thereafter "Tyco" shall mean such successor entity.

"Unrestricted Definitive Security", with respect to any series of Securities, means one or more Definitive Securities representing such series of Securities that do not bear and are not required to bear the Private Placement Legend, issued under this Indenture.

"Unrestricted Global Security", with respect to any series of Securities, means one or more permanent Global Securities representing such series of Securities that do not bear and are not required to bear the Private Placement Legend, issued under this Indenture.

"Unrestricted Securities", with respect to any series of Securities, means a Security (i) effectively registered under the Securities Act and disposed of in accordance with a registration statement with respect to such series or (ii) distributed to the public pursuant to Rule 144 under the Securities Act (or any similar provision then in force).

"Voting Stock" of a Person means Capital Stock of such Person of the class or classes pursuant to which the holders thereof have the general voting power under ordinary circumstances to elect at least a majority of the board of directors, managers or trustees of such Person, irrespective of whether or not at the time Capital Stock of any other class or classes shall have or might have voting power by reason of the happening of any contingency.

## ARTICLE II.

### ISSUE, DESCRIPTION, TERMS, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES

Section 2.01          Designation and Terms of Securities.

(a)          The aggregate principal amount of Securities that may be authenticated and delivered under this Indenture is unlimited. The Securities may be issued in one or more series up to the aggregate principal amount of Securities of that series from time to time authorized by or pursuant to a Board Resolution of the Company or pursuant to one or more indentures supplemental hereto. Prior to the initial issuance of Securities of any series, there shall be established in or pursuant to a Board Resolution of the Company, and set forth in an Officers' Certificate of the Company, or established in one or more indentures supplemental hereto, with respect to the Securities of the series:

(1)          the title of the Security of the series (which shall distinguish the Securities of the series from all other Securities);

(2)          any limit upon the aggregate principal amount of the Securities of that series that may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for or in lieu of other Securities of that series);

(3)          the date or dates on which the principal and premium, if any, of the Securities of the series is payable;

8

(4)   the rate or rates (which may be fixed or variable) at which the Securities of the series shall bear interest or the manner of calculation of such rate or rates, if any (including any procedures to vary or reset such rate or rates), and the basis upon which interest will be calculated if other than that of a 360 day year of twelve 30–day months;

(5)   the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest will be payable or the manner of determination of such Interest Payment Dates, and the record date for the determination of holders to whom interest is payable on any such Interest Payment Dates;

(6)   any trustees, authenticating agents or paying agents with respect to such series, if different from those set forth in this Indenture;

(7)   the right, if any, to extend the interest payment periods or defer the payment of interest and the duration of such extension or deferral;

(8)   the period or periods within which, the price or prices at which and the terms and conditions upon which, Securities of the series may be redeemed, in whole or in part, at the option of the Company;

(9)   the obligation, if any, of the Company to redeem, purchase or repay Securities of the series pursuant to any sinking fund or analogous provisions (including payments made in cash in anticipation of future sinking fund obligations) or at the option of a holder thereof and the period or periods within which, the price or prices at which, and the terms and conditions upon which, Securities of the series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation;

(10)   the form of the Securities of the series including the form of the Trustee's certificate of authentication for such series;

(11)   if other than denominations of $1,000 or any integral multiple thereof, the denominations in which the Securities of the series shall be issuable;

(12)   the Currency or Currencies in which payment of the principal of, premium, if any, and interest on, Securities of the series shall be payable;

(13)   if the principal amount payable at the Stated Maturity of Securities of the series will not be determinable as of any one or more dates prior to such Stated Maturity, the amount which will be deemed to be such principal amount as of any such date for any purpose, including the principal amount thereof which will be due and payable upon any maturity other than the Stated Maturity or which will be deemed to be Outstanding as of any such date (or, in any such case, the manner in which such deemed principal amount is to be determined);

(14)   the terms of any repurchase or remarketing rights;

(15)   if the Securities of the series shall be issued in whole or in part in the form of a Global Security or Securities, the type of Global Security to be issued; the terms and conditions, if different from those contained in this Indenture, upon which such Global Security

9

or Securities may be exchanged in whole or in part for other individual Securities in definitive registered form; the Depositary for such Global Security or Securities; and the form of any legend or legends to be borne by any such Global Security or Securities in addition to or in lieu of the legends referred to in Section 2.02;

(16)     whether the Securities of the series will be convertible into or exchangeable for other Securities, shares of common stock or other securities of any kind of the Company or another obligor, and, if so, the terms and conditions upon which such Securities will be so convertible or exchangeable, including the initial conversion or exchange price or rate or the method of calculation, how and when the conversion price or exchange ratio may be adjusted, whether conversion or exchange is mandatory, at the option of the holder or at our option, the conversion or exchange period, and any other provision in addition to or in lieu of those described herein;

(17)     if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof pursuant to Section 6.01;

(18)     any additional restrictive covenants or Events of Default that will apply to the Securities of the series, or any changes to the restrictive covenants set forth in Article IV or the Events of Default set forth in Section 6.01 that will apply to the Securities of the series, which may consist of establishing different terms or provisions from those set forth in Article IV or Section 6.01 or eliminating any such restrictive covenant or Event of Default with respect to the Securities of the series;

(19)     any provisions granting special rights to holders when a specified event occurs;

(20)     if the amount of principal or any premium or interest on Securities of a series may be determined with reference to an index or pursuant to a formula, the manner in which such amounts will be determined;

(21)     any special tax implications of the Securities, including provisions for original issue discount securities, if offered;

(22)     whether and upon what terms Securities of a series may be defeased if different from the provisions set forth in this Indenture;

(23)     with regard to the Securities of any series that do not bear interest, the dates for certain required reports to the Trustee;

(24)     whether the Securities of the series will be issued as Unrestricted Securities or Restricted Securities, and, if issued as Restricted Securities, the rule or regulation promulgated under the Securities Act in reliance on which they will be sold;

(25)     whether the Securities of the series will be guaranteed by Tyco; and

(26)     any and all additional, eliminated or changed terms that shall apply to the

10

Securities of the series, including any terms which may be required by or advisable under United States laws or regulations (including the Securities Act and the rules and regulations promulgated thereunder) or advisable in connection with the marketing of Securities of that series.

(b)    All Securities of any one series shall be substantially identical except that Securities of any particular series may be issued at various times, in different denominations, with different currency of payments due thereunder, with different dates on which the principal or any installment of principal is payable, with different rates of interest, if any, or different methods by which rates of interest may be determined, with different dates from which such interest may accrue or on which such interest may be payable, and with different redemption dates, and except as may otherwise be provided in or pursuant to any such Board Resolution or in any supplemental indenture.  If any of the terms of the series are established by action taken pursuant to a Board Resolution of the Company, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Officers' Certificate of the Company setting forth the terms of the series.  The terms of the Securities of any series may provide that such Securities shall be authenticated and delivered by the Trustee upon original issuance from time to time upon written order of persons designated in such Board Resolution or supplemental indenture and that such persons are authorized to determine, consistent with such Board Resolution or supplemental indenture, such terms and conditions of the Securities of such series.

Section 2.02    Form of Securities and Trustee's Certificate.

(a)    The Securities of any series and the Trustee's certificate of authentication to be borne by such Securities shall be substantially of the tenor and purport as set forth in one or more indentures supplemental hereto or as provided in a Board Resolution of the Company and as set forth in an Officers' Certificate of the Company and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the Company may deem appropriate and as are not inconsistent with the provisions of this Indenture, any Board Resolution or any indenture supplemental hereto, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any stock exchange on which Securities of that series may be listed, or to conform to usage.

(b)    Each Restricted Security (and all Restricted Securities issued in exchange therefor or substitution thereof) shall bear a Private Placement Legend in substantially the following form:

"THIS SECURITY (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933 (THE "SECURITIES ACT"). THIS SECURITY MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM. EACH PURCHASER OF THIS SECURITY IS HEREBY NOTIFIED THAT THE SELLER OF THIS SECURITY MAY BE RELYING ON THE EXEMPTION FROM THE

11

PROVISIONS OF SECTION 5 OF THE SECURITIES ACT PROVIDED BY RULE 144A THEREUNDER.

THE HOLDER OF THIS SECURITY AGREES FOR THE BENEFIT OF THE COMPANY THAT (A) THIS SECURITY MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED, ONLY (I) IN THE UNITED STATES TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT) IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A, (II) OUTSIDE THE UNITED STATES IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 904 UNDER THE SECURITIES ACT, (III) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144 THEREUNDER (IF AVAILABLE), (IV) TO AN INSTITUTIONAL ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a)(1), (2), (3) OR (7) OF REGULATION D UNDER THE SECURITIES ACT) THAT, PRIOR TO SUCH TRANSFER, FURNISHES THE TRUSTEE A SIGNED LETTER CONTAINING CERTAIN REPRESENTATIONS AND AGREEMENTS RELATING TO THE TRANSFER OF THIS SECURITY, OR (V) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH OF CASES (I) THROUGH (V) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES, AND (B) THE HOLDER WILL, AND EACH SUBSEQUENT HOLDER IS REQUIRED TO, NOTIFY ANY PURCHASER OF THIS SECURITY FROM IT OF THE RESALE RESTRICTIONS REFERRED TO IN (A) ABOVE."

(c)     To the extent required by the Depositary for particular series of Securities, each Global Security of such series shall bear legends in substantially the following forms:

"THIS GLOBAL SECURITY IS HELD BY THE DEPOSITARY (AS DEFINED IN THE INDENTURE GOVERNING THIS SECURITY) OR ITS NOMINEE IN CUSTODY FOR THE BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THE TRUSTEE MAY MAKE ANY SUCH NOTATIONS HEREON AS MAY BE REQUIRED PURSUANT TO THE INDENTURE, (II) THIS GLOBAL SECURITY MAY BE EXCHANGED IN WHOLE BUT NOT IN PART PURSUANT TO SECTION 2.05(C) OF THE INDENTURE, (III) THIS GLOBAL SECURITY MAY BE DELIVERED TO THE TRUSTEE FOR CANCELLATION PURSUANT TO THE INDENTURE AND (IV) THIS GLOBAL SECURITY MAY BE TRANSFERRED TO A SUCCESSOR DEPOSITARY WITH THE PRIOR WRITTEN CONSENT OF THE COMPANY."

"UNLESS AND UNTIL IT IS EXCHANGED IN WHOLE OR IN PART FOR SECURITIES IN DEFINITIVE FORM, THIS SECURITY MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITARY TO A

12

NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR TO ANOTHER NOMINEE OF THE DEPOSITARY OR BY THE DEPOSITARY OR ANY SUCH NOMINEE TO A SUCCESSOR DEPOSITARY OR A NOMINEE OF SUCH SUCCESSOR DEPOSITARY. UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITARY TO THE COMPANY OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF ANY ENTITY AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITARY (AND ANY PAYMENT IS MADE TO SUCH ENTITY AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITARY), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF HAS AN INTEREST HEREIN."

(d)    To the extent required by the Depositary, each Regulation S Temporary Global Security shall bear a legend in substantially the following form:

"THE RIGHTS ATTACHING TO THIS REG S TEMPORARY GLOBAL SECURITY, AND THE CONDITIONS AND PROCEDURES GOVERNING ITS EXCHANGE FOR DEFINITIVE SECURITIES, ARE AS SPECIFIED IN THE INDENTURE (AS DEFINED HEREIN). NEITHER THE HOLDER NOR THE BENEFICIAL OWNERS OF THIS REG S TEMPORARY SECURITY SHALL BE ENTITLED TO RECEIVE CASH PAYMENTS OF INTEREST DURING THE PERIOD WHICH SUCH HOLDER HOLDS THIS SECURITY. NOTHING IN THIS LEGEND SHALL BE DEEMED TO PREVENT INTEREST FROM ACCRUING ON THIS SECURITY."

Section 2.03          Denominations; Provisions for Payment.

The Securities shall be issuable as registered Securities and in the denominations of $1,000 or any integral multiple thereof, subject to Section 2.01(a)(11). The Securities of a particular series shall bear interest payable on the dates and at the rate specified as provided in Section 2.01 with respect to that series. The principal of and the interest on the Securities of any series, as well as any premium thereon in case of redemption thereof prior to maturity, shall be payable in Dollars except as otherwise specified pursuant to Section 2.01(a)(12), at the office or agency of the Company maintained for that purpose pursuant to Section 4.02. Each Security shall be dated the date of its authentication. Unless otherwise specified with respect to a series of Securities in accordance with the provisions of Section 2.01(a)(4), interest on the Securities shall be computed on the basis of a 360-day year composed of twelve 30-day months.

The interest installment on any Security that is payable, and is punctually paid or duly provided for, on any Interest Payment Date for Securities of that series shall be paid to the Person in whose name said Security (or one or more Predecessor Securities) is registered at the close of business on the regular record date for such interest installment. In the event that any Security of a particular series or portion thereof is called for redemption and the redemption date

13

is subsequent to a regular record date with respect to any Interest Payment Date and prior to such Interest Payment Date, interest on such Security will be paid upon presentation and surrender of such Security as provided in Section 3.03.

Unless otherwise set forth in a Board Resolution or one or more indentures supplemental hereto establishing the terms of any series of any Securities pursuant to Section 2.01, the term "regular record date" as used in this Section 2.03 with respect to a series of Securities shall mean a date 15 days immediately preceding any Interest Payment Date. Subject to the provisions of this Section 2.03, each Security of a series delivered under this Indenture upon registration of transfer or in exchange for or in lieu of any other Security of such series shall carry the rights to interest accrued and unpaid, and to accrue, that were carried by such other Security.

Unless otherwise specified with respect to a series of Securities in accordance with the provisions of Section 2.01, any interest on any Security that is payable, but is not punctually paid or duly provided for, on any Interest Payment Date for such Security ("Defaulted Interest") shall forthwith cease to be payable to the registered holder on the relevant regular record date, and such Defaulted Interest shall be paid by the Company, at its election, as provided in clause (1) or clause (2) below.

(1)    The Company may make payment of any Defaulted Interest on Securities to the Persons in whose names such Securities (or their respective Predecessor Securities) are registered at the close of business on a special record date for the payment of such Defaulted Interest, which shall be fixed in the following manner: the Company shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each such Security and the date of the proposed payment, and at the same time the Company shall deposit with the Trustee funds in an amount equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such funds when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this clause (1) provided. Thereupon the Trustee shall fix a special record date for the payment of such Defaulted Interest which shall not be more than 15 nor less than ten days prior to the date of the proposed payment and not less than ten days after the receipt by the Trustee of the notice of the proposed payment. The Trustee promptly shall notify the Company of such special record date and, in the name and at the expense of the Company, shall cause notice of the proposed payment of such Defaulted Interest and the special record date therefor to be mailed, first class postage prepaid, to each Securityholder at his or her address as it appears in the Security Register, not less than ten days prior to such special record date. Notice of the proposed payment of such Defaulted Interest and the special record date therefor having been mailed as aforesaid, such Defaulted Interest shall be paid to the Persons in whose names such Securities (or their respective Predecessor Securities) are registered on such special record date and shall not be payable pursuant to the following clause (2).

(2)    The Company may make payment of any Defaulted Interest on any Securities in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Securities may be listed, and upon such notice as may be required by such exchange.

14

Section 2.04                    Execution and Authentications.

The Securities shall be signed on behalf of the Company by any two managing directors or by both (a) the chairman of its Board of Directors, any vice chairman of its Board of Directors, its president or vice president and (b) its secretary, any assistant secretary, its treasurer or any assistant treasurer. Signatures may be in the form of a manual or facsimile signature. In the case of Definitive Securities of any series, such signatures may be imprinted or otherwise reproduced on such Securities. The Securities may contain such notations, legends or endorsements required by law, stock exchange rule or usage. Each Security shall be dated the date of its authentication by the Trustee.

A Security shall not be valid until authenticated manually by an authorized signatory of the Trustee or by an Authenticating Agent. Such signature shall be conclusive evidence that the Security so authenticated has been duly authenticated and delivered hereunder and that the holder is entitled to the benefits of this Indenture. At any time and from time to time after the execution and delivery of this Indenture, the Company may deliver Securities of any series executed by the Company, and, if applicable, endorsed by Tyco, to the Trustee for authentication, together with a written order of the Company for the authentication and delivery of such Securities, signed by an Officer (an "Authentication Order"), and the Trustee in accordance with such written order shall authenticate and deliver such Securities.

Section 2.05                    Transfer and Exchange.

(a)      Registration of Transfer and Exchange.  The Company shall keep, or cause to be kept, at its office or agency designated for such purpose as provided in Section 4.02, a register or registers (the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Company shall register the Securities and the transfers of Securities as provided in this Article II and which at all reasonable times shall be open for inspection by the Trustee. The registrar for the purpose of registering Securities and the transfer of Securities as herein provided shall be appointed as authorized by Board Resolution (the "Security Registrar"). If the Company fails to appoint or maintain another entity as Security Registrar, the Trustee shall act as such.  The Company or any of its Subsidiaries may act as Security Registrar.

To permit registrations of transfers and exchanges, the Company shall execute, and if applicable Tyco shall endorse, and deliver and the Trustee shall authenticate a new Security or Securities of the same series as the Security presented for a like aggregate principal amount and in authorized denominations upon receipt of an Authentication Order. The Trustee shall not be required to register the transfer of or exchange any Security selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company, and if applicable Tyco, evidencing the same indebtedness, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange. Prior to such due presentment for the registration of a transfer of any Security, the Trustee, the Company, any paying agent and the Security Registrar may deem and treat the Person in whose name any Security is registered as the absolute owner of such Security for the purpose of receiving payment of principal of and interest on such Securities

15

and for all other purposes, and none of the Trustee, the Company, the paying agent or the Security Registrar shall be affected by notice to the contrary.

All certifications, certificates and opinions of counsel required to be submitted to the Trustee pursuant to this Section 2.05 to effect a registration of transfer or exchange may be submitted by facsimile.

(b)     Service Charge.  No service charge shall be made to a holder of a beneficial interest in a Global Security or to a Holder of a Definitive Security for any exchange or registration of transfer of Securities, or issue of new Securities in case of partial redemption of any series, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge in relation thereto (other than any such taxes or other governmental charge payable upon exchange or registration of transfer pursuant to Sections 2.06, 3.03(b) and 9.04).

(c)     Transfer and Exchange of Global Securities.  A Global Security may not be transferred except as a whole by the Depositary for a series of the Securities to a nominee of such Depositary, by a nominee of such Depositary to such Depositary or to another nominee of such Depositary, or by such Depositary or any such nominee to a successor Depositary for a series of the Securities or a nominee of such successor Depositary. If at any time the Depositary for a series of the Securities notifies the Company that it is unwilling or unable to continue as Depositary for such series or if at any time the Depositary for such series shall no longer be registered or in good standing under the Exchange Act or other applicable statute or regulation, and a successor Depositary for such series is not appointed by the Company within 90 days after the Company receives such notice or becomes aware of such condition, as the case may be, the provisions of Section 2.11 shall no longer be applicable to the Securities of such series. In addition, the Company may at any time determine that the Securities of any series shall no longer be represented by a Global Security and that the provisions of Section 2.11 shall no longer apply to the Securities of such series. In either such event the Company will execute, and if applicable Tyco will endorse, and subject to this Section 2.05 the Trustee, upon receipt of an Officers' Certificate evidencing such determination by the Company, if applicable, will authenticate and deliver the Definitive Securities of such series, in authorized denominations, and in an aggregate principal amount equal to the principal amount of the Global Security of such series in exchange for such Global Security. Upon the exchange of the Global Security of such series for such Definitive Securities of such series, the Global Security shall be canceled by the Trustee. Such Definitive Securities shall be registered in such names and in such authorized denominations as the Depositary, pursuant to instructions from its Participants or Indirect Participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Securities to the Depositary for delivery to the Persons in whose names such Securities are so registered.

Except as provided in Sections 2.06 and 2.07, a Global Security may not be exchanged for another Security other than as provided in this Section 2.05(c); however, beneficial interests in a Global Security may be transferred and exchanged as provided in Section 2.05(d) or (e). The provisions of this Section 2.05(c) are subject to Section 2.11.

(d)     Transfer and Exchange of Beneficial Interests in the Global Securities.  The transfer and exchange of beneficial interests in the Global Securities of a series shall be effected through the Depositary, in accordance with the provisions of this Indenture, any Board

16

Resolution and any one or more indentures supplemental hereto, and the Applicable Procedures. Beneficial interests in the Restricted Global Securities of a series shall be subject to restrictions on transfer comparable to those set forth herein to the extent required by the Securities Act. Transfers of beneficial interests in the Global Securities also shall require compliance with either subparagraph (1) or (2) below, as applicable, as well as one or more of the other following subparagraphs, as applicable:

(1)        Transfer of Beneficial Interests in the Same Global Security.  Beneficial interests in any Restricted Global Security of a series may be transferred to Persons who take delivery thereof in the form of a beneficial interest in the same Restricted Global Security in accordance with the transfer restrictions set forth in the Private Placement Legend. Beneficial interests in any Unrestricted Global Security of a series may be transferred to Persons who take delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series. Subject to Section 2.05(e)(4), no written orders or instructions shall be required to be delivered to the Security Registrar to effect the transfers described in this Section 2.05(d)(1).

(2)        All Other Transfers and Exchanges of Beneficial Interests in Global Securities.  In connection with all transfers and exchanges of beneficial interests that are not subject to Section 2.05(d)(1) above, the transferor of such beneficial interest must deliver to the Security Registrar, as applicable, either:

(A)(1) an order from a Participant or an Indirect Participant given to the Depositary in accordance with the relevant Applicable Procedures directing the Depositary to credit or cause to be credited a beneficial interest in another Global Security of such series in an amount equal to the beneficial interest to be transferred or exchanged and (2) instructions given in accordance with the relevant Applicable Procedures containing information regarding the Participant account to be credited with such increase; or

(B)(1) an order from a Participant or an Indirect Participant given to the Depositary in accordance with the relevant Applicable Procedures directing the Depositary to cause to be issued a Definitive Security of such series in an amount equal to the beneficial interest to be transferred or exchanged and (2) instructions given by the Depositary to the Security Registrar containing information regarding the Person in whose name such Definitive Security shall be registered to effect the transfer or exchange referred to in (B)(1) above;

provided that in no event shall Definitive Securities of a series be issued upon the transfer or exchange of beneficial interests in the Regulation S Temporary Global Security of such series prior to (y) the expiration of the relevant Distribution Compliance Period and (z) the receipt by the Security Registrar of any certificates identified by the Company or its counsel to be required pursuant to Rule 903 and Rule 904 under the Securities Act. Upon satisfaction of all the requirements for transfer and exchange of beneficial interests in Global Securities of a series contained in this Indenture, any Board Resolution, or one or more indentures supplemental hereto and the Securities of such series or otherwise

applicable under the Securities Act, the Trustee shall adjust the principal amount of the relevant Global Security or Securities of such series pursuant to Section 2.05(h).

(3)     Transfer of Beneficial Interests to Another Restricted Global Security.  A beneficial interest in any Restricted Global Security of a series may be transferred to a Person who takes delivery thereof in the form of a beneficial interest in another Restricted Global Security of the same series if the transfer complies with the requirements of Section 2.05(d)(2) and the Security Registrar receives a completed certificate in the form of Exhibit A.

(4)     Transfer and Exchange of Beneficial Interests in a Restricted Global Security for Beneficial Interests in an Unrestricted Global Security.  A beneficial interest in any Restricted Global Security of any series may be exchanged by any holder thereof for a beneficial interest in an Unrestricted Global Security of such series or transferred to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series if the exchange or transfer complies with the requirements of Section 2.05(d)(2) above and the Security Registrar receives a completed certificate from such holder in the form of Exhibit A or Exhibit B, as applicable, and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Security Registrar and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

If any such transfer is effected at a time when an Unrestricted Global Security of such series has not yet been issued, the Company shall issue and, upon receipt of an Authentication Order in accordance with Section 2.04, the Trustee shall authenticate one or more Unrestricted Global Securities of such series in an aggregate principal amount equal to the aggregate principal amount of beneficial interests so transferred. Beneficial interests in an Unrestricted Global Security of a series cannot be exchanged for, or transferred to Persons who take delivery thereof in the form of, a beneficial interest in a Restricted Global Security of such series.

(e)     Transfer or Exchange of Beneficial Interests for Definitive Securities.

(1)     Beneficial Interests in Restricted Global Securities to Restricted Definitive Securities.  If any holder of a beneficial interest in a Restricted Global Security of a series proposes to exchange such beneficial interest for a Restricted Definitive Security of such series or to transfer such beneficial interest to a Person who takes delivery thereof in the form of a Restricted Definitive Security of such series, then, upon receipt by the Security Registrar of a completed certificate from such holder in the form of Exhibit A or Exhibit B, as applicable, and certificates and opinions of counsel, if applicable, the trustee shall cause the aggregate principal amount of the applicable Restricted Global Security of such series to be reduced accordingly pursuant to Section 2.05(h), and the Company shall execute,

18

and if applicable Tyco shall endorse, and, upon receipt of an Authentication Order pursuant to Section 2.04, the Trustee shall authenticate and deliver to the Person designated in the instructions a Restricted Definitive Security of such series in the appropriate principal amount. Any Restricted Definitive Security of such series issued in exchange for a beneficial interest in a Restricted Global Security of such series pursuant to this Section 2.05(e) shall be registered in such name or names and in such authorized denomination or denominations as the holder of such beneficial interest shall instruct the Security Registrar through instructions from the Depositary for such series and the Participant or Indirect Participant. The Trustee shall deliver such Restricted Definitive Securities of such series to the Persons in whose names such Securities are so registered. Any Restricted Definitive Security of such series issued in exchange for a beneficial interest in a Restricted Global Security of such series pursuant to this Section 2.05(e)(1) shall bear the Private Placement Legend and shall be subject to all restrictions on transfer contained therein.

(2)     Beneficial Interests in Restricted Global Securities to Unrestricted Definitive Securities. A holder of a beneficial interest in a Restricted Global Security of a series may exchange such beneficial interest for an Unrestricted Definitive Security of such series or may transfer such beneficial interest to a Person who takes delivery thereof in the form of an Unrestricted Definitive Security of such series only if the Security Registrar receives a completed certificate from such holder in the form of Exhibit A or Exhibit B, as applicable and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Security Registrar and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

(3)     Beneficial Interests in Unrestricted Global Securities to Unrestricted Definitive Securities. If any holder of a beneficial interest in an Unrestricted Global Security of a series proposes to exchange such beneficial interest for an Unrestricted Definitive Security of such series or to transfer such beneficial interest to a Person who takes delivery thereof in the form of an Unrestricted Definitive Security of such series, then, upon satisfaction of the conditions set forth in Section 2.05(d)(2), the Trustee shall cause the aggregate principal amount of the applicable Unrestricted Global Security of such series to be reduced accordingly pursuant to Section 2.05(h), and the Company shall execute, and if applicable Tyco shall endorse, and, upon receipt of an Authentication Order in accordance with Section 2.04, the Trustee shall authenticate and deliver to the Person designated in the instructions an Unrestricted Definitive Security of such series in the appropriate principal amount. Any Unrestricted Definitive Security issued in exchange for a

19

beneficial interest pursuant to this Section 2.05(e)(3) shall be registered in such name or names and in such authorized denomination or denominations as the holder of such beneficial interest shall instruct the Security Registrar through instructions from the Depositary for such series and the Participant or Indirect Participant. The Trustee shall deliver such Unrestricted Definitive Securities to the Persons in whose names such Securities are so registered. Any Unrestricted Definitive Security issued in exchange for a beneficial interest pursuant to this Section 2.05(e)(3) shall not bear the Private Placement Legend.

(4)     Transfer or Exchange of Regulation S Temporary Global Securities. Notwithstanding the other provisions of this Section 2.05, a beneficial interest in the Regulation S Temporary Global Security of a series may not be (A) exchanged for a Definitive Security of such series prior to (y) the expiration of the Distribution Compliance Period with respect to such series (unless such exchange is effected by the Company, does not require an investment decision on the part of the Holder thereof and does not violate the provisions of Regulation S) and (z) the receipt by the Security Registrar of any certificates identified by the Company or its counsel to be required pursuant to Rule 903(b)(3)(ii)(B) under the Securities Act or (B) transferred to a U.S. person (as such term is defined in Regulation S) or for the account or benefit of a U.S. person (other than an initial purchaser of such Regulation S Temporary Global Security) or a Person who takes delivery thereof in the form of a Definitive Security of such series prior to the events set forth in clause (A) above or unless the transfer is pursuant to an exemption from the registration requirements of the Securities Act other than Rule 903 or 904.

(f)     Transfer and Exchange of Definitive Securities for Beneficial Interests.

(1)     Restricted Definitive Securities to Beneficial Interests in Restricted Global Securities. If any Holder of a Restricted Definitive Security of a series proposes to exchange such Security for a beneficial interest in a Restricted Global Security of such series or to transfer such Restricted Definitive Securities of such series to a Person who takes delivery thereof in the form of a beneficial interest in a Restricted Global Security of such series, then, upon receipt by the Trustee of the following documentation:

(A) if the Holder of such Restricted Definitive Security of such series proposes to exchange such Security for a beneficial interest in a Restricted Global Security of such series, a completed certificate from such holder in the form of Exhibit B; or

(B) if such Restricted Definitive Note is being transferred to a QIB in accordance with Rule 144A under the Securities Act or to a non-U.S. person in an offshore transaction in accordance with Rule 903 or 904 under the Securities Act, a completed certificate to that effect set forth in Exhibit A,

the Trustee shall cancel the Restricted Definitive Security of such series, increase or cause to be increased the aggregate principal amount of, in the case of clause (A) above, the appropriate Restricted Global Security of such series and, in the case of clause (B) above, the 144A Global Security of such series or the Regulation S Global Security of such series as applicable.

(2)     Restricted Definitive Securities to Beneficial Interests in Unrestricted Global Securities. A Holder of a Restricted Definitive Security of a series may exchange such Security for a beneficial interest in an Unrestricted Global Security of such series or

20

transfer such Restricted Definitive Security of such series to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series only if the Security Registrar receives a completed certificate from such Holder in the form of Exhibit A or Exhibit B, as applicable, and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Security Registrar and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act. Upon satisfaction of the conditions of any of the subparagraphs in this Section 2.05(f)(2), the Trustee shall cancel the Restricted Definitive Securities of such series so transferred or exchanged and increase or cause to be increased the aggregate principal amount of the Unrestricted Global Security of such series.

(3)    Unrestricted Definitive Securities to Beneficial Interests in Unrestricted Global Securities.  A Holder of an Unrestricted Definitive Security of a series may exchange such Security for a beneficial interest in an Unrestricted Global Security of such series or transfer such Definitive Securities of such series to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Security of such series at any time. Upon receipt of a request for such an exchange or transfer, the Trustee shall cancel the applicable Unrestricted Definitive Security and increase or cause or be increased the aggregate principal amount of one of the Unrestricted Global Securities of such series. If any such exchange or transfer from a Definitive Security of a series to a beneficial interest is effected pursuant to subparagraphs (2) or (3) of this Section 2.05(f) at a time when an Unrestricted Global Security of such series has not yet been issued, the Company shall issue and, upon receipt of an Authentication Order in accordance with Section 2.04, the Trustee shall authenticate one or more Unrestricted Global Securities of such series in an aggregate principal amount equal to the principal amount of Definitive Securities of such series so transferred.

(g)    Transfer and Exchange of Definitive Securities for Definitive Securities.  Upon request by a Holder of Definitive Securities of a series and such Holder's compliance with the provisions of this Section 2.05(g), the Trustee shall register the transfer or exchange of Definitive Securities of such series pursuant to the provisions of Section 2.05(a). In addition to the requirements set forth in Section 2.05(a), the requesting Holder shall provide any additional certifications, documents, and information, as applicable, required pursuant to the following provisions of this Section 2.05(g).

(1)    Restricted Definitive Securities to Restricted Definitive Securities.  Any Restricted Definitive Security of a series may be transferred to and registered in the name of Persons who take delivery thereof in the form of a Restricted Definitive Security of such series if the Trustee receives a completed certificate in the form of Exhibit A, including the certifications, certificates and opinions of counsel required by item (3) thereof, if applicable.

(2)    Restricted Definitive Securities to Unrestricted Definitive Securities.  Any Restricted Definitive Security of a series may be exchanged by the Holder thereof for an Unrestricted Definitive Security of such series or transferred to a Person or Persons who

21

take delivery thereof in the form of an Unrestricted Definitive Security of such series if the Security Registrar receives a completed certificate from such Holder in the form of Exhibit A or Exhibit B, as applicable and an opinion of counsel in form, and from legal counsel, reasonably acceptable to the Trustee and the Company to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

(3)    Unrestricted Definitive Securities to Unrestricted Definitive Securities.  A Holder of Unrestricted Definitive Securities of a series may transfer such Securities to a Person who takes delivery thereof in the form of an Unrestricted Definitive Security of such series in accordance with subsection 2.05(a). Upon receipt of a request to register such a transfer, the Security Registrar shall register the Unrestricted Definitive Securities of such series pursuant to the instructions from the Holder thereof.

(h)    Cancellation and/or Adjustment of Global Securities.  At such time as all beneficial interests in a particular Global Security of a series have been exchanged for Definitive Securities of such series or a particular Global Security of a series has been redeemed, repurchased or cancelled in whole and not in part, each such Global Security of such series shall be returned to or retained and cancelled by the Trustee in accordance with Section 2.08. At any time prior to such cancellation, if any beneficial interest in a Global Security of such series is exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Security of such series or for Definitive Securities of such series, the principal amount of Securities of such series represented by such Global Security shall be reduced accordingly and an endorsement may be made on such Global Security by the Trustee or by the Depositary at the direction of the Trustee to reflect such reduction; and if the beneficial interest is being exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Security of such series, such other Global Security shall be increased accordingly and an endorsement may be made on such Global Security by the Trustee or by the Depositary at the direction of the Trustee to reflect such increase.

(i)    No Exchange or Transfer.  The Company shall not be required (i) to issue, exchange or register the transfer of any Securities during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of less than all the Outstanding Securities of the same series and ending at the close of business on the day of such mailing, (ii) to register the transfer of or exchange any Securities of any series or portions thereof called for redemption, nor (iii) to register the transfer of or exchange a Security of any series between the applicable record date pursuant to Section 2.01(a)(5) and the next succeeding Interest Payment Date.

Section 2.06        Temporary Securities.

Pending the preparation of definitive Securities of any series, the Company may execute, and if applicable Tyco may endorse, and the Trustee shall authenticate and deliver, temporary Securities (printed, lithographed or typewritten) of any authorized denomination. Such temporary Securities shall be substantially in the form of the definitive Securities in lieu of which they are

22

issued, but with such omissions, insertions and variations as may be appropriate for temporary Securities, all as may be determined by the Company. Every temporary Security of any series shall be executed by the Company, and if applicable endorsed by Tyco, and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities of such series. Without unnecessary delay the Company will execute, and if applicable Tyco will endorse, and will furnish definitive Securities of such series and thereupon any or all temporary Securities of such series may be surrendered in exchange therefor without charge to the holders, at the office or agency of the Company maintained pursuant to Section 4.02 for the purpose of exchanges of Securities of such series, and the Trustee shall authenticate and such office or agency shall deliver in exchange for such temporary Securities an equal aggregate principal amount of definitive Securities of such series, unless the Company advises the Trustee to the effect that definitive Securities need not be executed and furnished until further notice from the Company. Until so exchanged, temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of such series authenticated and delivered hereunder.

Section 2.07        Mutilated, Destroyed, Lost or Stolen Securities.

In case any temporary or definitive Security shall become mutilated or be destroyed, lost or stolen, the Company (subject to the next succeeding sentence) shall execute, and if applicable Tyco shall endorse, and upon the Company's request the Trustee (subject to the next succeeding sentence) shall authenticate and deliver, a new Security of the same series, bearing a number not contemporaneously outstanding in exchange and substitution for the mutilated Security, or in lieu of and in substitution for the Security so destroyed, lost or stolen. In every case the applicant for a substituted Security shall furnish to the Company and the Trustee such security or indemnity as may be required by them to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Company and the Trustee evidence to their satisfaction of the destruction, loss or theft of the applicant's Security and of the ownership thereof. The Trustee may authenticate any such substituted Security and deliver the same upon the written request or authorization of any Officer. Upon the issuance of any substituted Security, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith. In case any Security that has matured or is about to mature shall become mutilated or be destroyed, lost or stolen, the Company, instead of issuing a substitute Security, may pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated Security) if the applicant for such payment shall furnish to the Company and the Trustee such security or indemnity as they may require to save them harmless, and, in case of destruction, loss or theft, evidence to the satisfaction of the Company and the Trustee of the destruction, loss or theft of such Security and of the ownership thereof.

Every replacement Security issued pursuant to the provisions of this Section 2.07 shall constitute an additional contractual obligation of the Company whether or not the mutilated, destroyed, lost or stolen Security shall be found at any time, or be enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of the same series duly issued hereunder. All Securities shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the

23

replacement or payment of mutilated, destroyed, lost or stolen Securities, and shall preclude (to the extent lawful) any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

Section 2.08          Cancellation.

All Securities surrendered for the purpose of payment, redemption, exchange or registration of transfer, if surrendered to the Company or any paying agent, shall be delivered to the Trustee for cancellation, or, if surrendered to the Trustee, shall be cancelled by it, and no Securities shall be issued in lieu thereof except as expressly required or permitted by any of the provisions of this Indenture. On written request of the Company at the time of such surrender, the Trustee shall deliver to the Company canceled Securities held by the Trustee. In the absence of such request the Trustee may dispose of canceled Securities in accordance with its standard procedures. If the Company shall otherwise acquire any of the Securities, however, such acquisition shall not operate as a redemption or satisfaction of the indebtedness represented by such Securities unless and until the same are delivered to the Trustee for cancellation.

Section 2.09          Benefits of Indenture.

Nothing in this Indenture or in the Securities, express or implied, shall give or be construed to give to any Person, other than the parties hereto and the holders of the Securities, any legal or equitable right, remedy or claim under or in respect of this Indenture, or under any covenant, condition or provision herein contained; all such covenants, conditions and provisions being for the sole benefit of the parties hereto and of the holders of the Securities.

Section 2.10          Authenticating Agent.

So long as any of the Securities of any series remain Outstanding, there may be an Authenticating Agent for any or all such series of Securities which the Trustee shall have the right to appoint. Said Authenticating Agent shall be authorized to act on behalf of the Trustee to authenticate Securities of such series, including Securities issued upon exchange, registration of transfer or partial redemption thereof, and Securities so authenticated shall be entitled to the benefits of this Indenture and shall be valid and obligatory for all purposes as if authenticated by the Trustee hereunder. All references in this Indenture to the authentication of Securities by the Trustee shall be deemed to include authentication by an Authenticating Agent for such series. Each Authenticating Agent shall be acceptable to the Company and shall be a corporation that has a combined capital and surplus, as most recently reported or determined by it, sufficient under the laws of any jurisdiction under which it is organized or in which it is doing business to conduct a trust business, and that is otherwise authorized under such laws to conduct such business and is subject to supervision or examination by Federal or State authorities. If at any time any Authenticating Agent shall cease to be eligible in accordance with these provisions, it shall resign immediately. Any Authenticating Agent may resign at any time by giving written notice of resignation to the Trustee and to the Company. The Trustee at any time may, and upon request by the Company shall, terminate the agency of any Authenticating Agent by giving written notice of termination to such Authenticating Agent and to the Company. Upon resignation, termination or cessation of eligibility of any Authenticating Agent, the Trustee may

24

appoint an eligible successor Authenticating Agent acceptable to the Company. Any successor Authenticating Agent, upon acceptance of its appointment hereunder, shall become vested with all the rights, powers and duties of its predecessor hereunder as if originally named as an Authenticating Agent pursuant hereto.

**Section 2.11**                **Global Securities.**

(a)        General.  If the Company shall establish pursuant to Section 2.01 that the Securities of a particular series are to be issued as a Global Security, then the Company shall execute, and if applicable Tyco shall endorse, and the Trustee in accordance with Section 2.04 shall authenticate, a Global Security that (i) shall represent, and shall be denominated in an amount equal to the aggregate principal amount of, all of the Outstanding Securities of such series, (ii) shall be registered in the name of the Depositary or its nominee and (iii) shall be delivered to the Trustee as custodian for the Depositary or otherwise delivered pursuant to the Depositary's instructions. Global Securities may be issued in either temporary or permanent form.

(b)        Euroclear and Clearstream Procedures Applicable.  The provisions of the "Operating Procedures of the Euroclear System" and the "Terms and Conditions Governing Use of Euroclear" and the "General Terms and Conditions of Clearstream Banking" and "Customer Handbook" of Clearstream, respectively, in effect at the relevant time shall be applicable to transfers of beneficial interests in the Regulation S Global Securities of such series that are held by Participants through Euroclear or Clearstream.

**Section 2.12**                **CUSIP Numbers.**

The Company in issuing the Securities of a series may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Securityholders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Company will promptly notify the Trustee of any change in the "CUSIP" numbers.

**Section 2.13**                **Securities Denominated in Foreign Currencies.**

Except as otherwise specified pursuant to Section 2.01 for Securities of any series, payment of the principal of, premium, if any, and interest on, Securities of such series denominated in any Foreign Currency will be made in such Foreign Currency.

In the event any Foreign Currency or Currencies in which any payment with respect to any series of Securities may be made ceases to be a freely convertible Currency on United States Currency markets, for any date thereafter on which payment of principal of, premium, if any, or interest on the Securities of a series is due, the Company shall select the Currency of payment for use on such date, all as provided in the Securities of such series, in a Board Resolution or in one or more indentures supplemental hereto. In such event, the Company shall notify the Trustee of the Currency which it has selected to constitute the funds necessary to meet the Company's

obligations on such payment date and of the amount of such Currency to be paid. Such amount shall be determined as provided in the Securities of such series, in a Board Resolution or in one or more indentures supplemental hereto. The payment with respect to such payment date shall be deposited with the Trustee by the Company solely in the Currency so selected.

Section 2.14          Wire Transfers.

Notwithstanding any other provision to the contrary in this Indenture, the Company may make any payment required to be deposited with the Trustee on account of principal of, premium, if any, or interest on, the Securities by wire transfer in immediately available funds to an account designated by the Trustee on or before the date such payment is to be made to the Holders of the Securities in accordance with the terms hereof.

Section 2.15          Designated Currency.

The Company may provide pursuant to Section 2.01 for Securities of any series that:

(a) the obligation, if any, of the Company to pay the principal of, premium, if any, and interest on the Securities of any series in a Foreign Currency or Dollars (the "Designated Currency") as may be specified pursuant to Section 2.01(a)(12) is of the essence and agree that, to the fullest extent possible under applicable law, judgments in respect of Securities of such series shall be given in the Designated Currency;

(b) the obligation of the Company to make payments in the Designated Currency of the principal of, premium, if any, and interest on such Securities shall be discharged, notwithstanding any payment in any other Currency (whether pursuant to a judgment or otherwise), only to the extent of the amount in the Designated Currency that the Securityholder receiving such payment, in accordance with normal banking procedures, may purchase with the amount paid in such other Currency after any premium and cost of exchange on the business day in the country of issue of the Designated Currency or in the international banking community immediately following the day on which such Securityholder receives such payment;

(c) if the amount in the Designated Currency that may be so purchased for any reason falls short of the amount originally due, the Company shall pay such additional amounts as may be necessary to compensate for such shortfall; and

(d) any obligation of the Company not discharged by such payment shall be due as a separate and independent obligation and, until discharged as provided herein, shall continue in full force and effect.

Section 2.16          Form of Guarantee.

The form of Guarantee, if applicable, shall be set forth on the applicable series of Securities substantially as follows:

GUARANTEE

For value received, Tyco hereby absolutely, unconditionally and irrevocably guarantees to the holder of this Security the payment of principal of, premium, if any, and interest on, the Security upon which this Guarantee is endorsed in the amounts and at the time when due and payable whether by declaration thereof, or otherwise, and interest on the overdue principal and interest, if any, of such Security, if lawful, to the holder of such Security and the Trustee on behalf of the Holders, all in accordance with and subject to the terms and limitations of such Security and Article XV of the Indenture. This Guarantee will not become effective until the Trustee or Authenticating Agent duly executes the certificate of authentication on this Security. This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles thereof.

Dated:
TYCO INTERNATIONAL LTD.


By:    _____
       Name:
       Title:

## ARTICLE III.

### REDEMPTION OF SECURITIES AND SINKING FUND PROVISIONS

Section 3.01        Redemption.

The Company may redeem the Securities of any series issued hereunder on and after the dates and in accordance with the terms established for such series pursuant to Section 2.01 or 14.01.

Section 3.02        Notice of Redemption.

(a)    If the Company desires to exercise such right to redeem all or, as the case may be, a portion of the Securities of any series, the Company shall, or shall cause the Trustee to, give notice of such redemption to holders of the Securities of such series to be redeemed by mailing, first class postage prepaid, a notice of such redemption not less than 30 days and not more than 60 days before the date fixed for redemption of that series to such holders at their last addresses as they shall appear upon the Security Register (unless a shorter period is specified in the Securities to be redeemed). Any notice that is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the registered holder receives the notice. In any case, failure duly to give such notice to the holder of any Security of any series designated for redemption in whole or in part, or any defect in the notice, shall not affect the validity of the proceedings for the redemption of any other Securities of such series or any other series. In the case of any redemption of Securities prior to the expiration of any restriction on such redemption provided in the terms of such Securities or elsewhere in this Indenture, the

Company shall furnish the Trustee with an Officers' Certificate evidencing compliance with any such restriction.

Each such notice of redemption shall specify the date fixed for redemption and the redemption price at which Securities of that series are to be redeemed, and shall state that: (i) payment of the redemption price of such Securities to be redeemed will be made at the office or agency of the Company maintained for such purpose, or, if none, at the Corporate Trust Office of the Trustee, upon presentation and surrender of such Securities; (ii) interest accrued to the date fixed for redemption will be paid as specified in said notice; (iii) from and after said date interest will cease to accrue; and (iv) the redemption is for a sinking fund, if such is the case. If less than all the Securities of a series are to be redeemed, the notice to the holders of Securities of that series to be redeemed in whole or in part shall specify the particular Securities to be so redeemed. In case any Security is to be redeemed in part only, the notice that relates to such Security shall state the portion of the principal amount thereof to be redeemed, and shall state that on and after the redemption date, upon surrender of such Security, a new Security or Securities of such series in principal amount equal to the unredeemed portion thereof will be issued.

(b)     If all or less than all the Securities of a series are to be redeemed, the Company shall give the Trustee at least 45 days' notice (unless a shorter period shall be satisfactory to the Trustee) in advance of the date fixed for redemption as to the aggregate principal amount of Securities of the series to be redeemed. If less than all the Securities are to be redeemed, the Trustee thereupon shall select from Securities of such series Outstanding not previously called for redemption, in accordance with a method that it shall deem appropriate and fair (in such manner as complies with applicable legal and stock exchange requirements, if any) and that may provide for the selection of a portion or portions (equal to $1,000 or any integral multiple thereof) of the principal amount of such Securities of such series of a denomination larger than $1,000, the Securities of such series to be redeemed. The Trustee promptly shall notify the Company in writing of the numbers of the Securities of such series to be redeemed, in whole or in part.

The Company, if and whenever it shall so elect, by delivery of instructions signed on its behalf by any of its Officers, may instruct the Trustee or any paying agent to call all or any part of the Securities of a particular series for redemption and to give notice of redemption in the manner set forth in this Section 3.02, such notice to be in the name of the Company or its own name, as the Trustee or such paying agent may deem advisable. In any case in which notice of redemption is to be given by the Trustee or any such paying agent, the Company shall deliver or cause to be delivered to, or permit to remain with, the Trustee or such paying agent, as the case may be, such Security Register, transfer books or other records, or suitable copies or extracts therefrom, sufficient to enable the Trustee or such paying agent to give any notice by mail that may be required under the provisions of this Section 3.02.

Section 3.03                    Payment Upon Redemption.

(a)     If the giving of notice of redemption shall have been completed as above provided, the Securities or portions of Securities of the series to be redeemed specified in such notice shall become due and payable on the date and at the place stated in such notice at the

28

applicable redemption price, together with interest accrued to the date fixed for redemption, in each case as established pursuant to Section 2.01 or 14.01. Interest on such Securities or portions of Securities shall cease to accrue on and after the date fixed for redemption, unless the Company shall default in the payment of such redemption price and accrued interest with respect to any such Security or portion thereof. On presentation and surrender of such Securities on or after the date fixed for redemption at the place of payment specified in the notice, said Securities shall be paid and redeemed at the applicable redemption price for such series, together with interest accrued thereon to the date fixed for redemption (but if the date fixed for redemption is an Interest Payment Date, the interest installment payable on such date shall be payable to the registered holder at the close of business on the applicable record date pursuant to Section 2.01).

(b)    Upon presentation of any Security of such series that is to be redeemed in part only, the Company shall execute, and if applicable Tyco shall endorse, and the Trustee shall authenticate, and the office or agency where the Security is presented shall deliver to the holder thereof, at the expense of the Company, a new Security of the same series and tenor of authorized denominations in principal amount equal to the unredeemed portion of the Security so presented; except that if a Global Security is so surrendered, the Company shall execute, and if applicable Tyco shall endorse, and, upon receipt of an Officers' Certificate requesting authentication and delivery, the Trustee shall authenticate and deliver to the Depositary for such Global Security, without service charge, a new Global Security of like tenor in a denomination equal to and in exchange for the unredeemed portion of the principal of the Global Security so surrendered.

Section 3.04          Sinking Fund.

The provisions of Sections 3.04, 3.05 and 3.06 shall be applicable to any sinking fund for the retirement of Securities of a series, except as otherwise specified as contemplated by Section 2.01 for Securities of such series.

The minimum amount of any sinking fund payment provided for by the terms of Securities of any series is referred to as a "mandatory sinking fund payment," and any payment in excess of such minimum amount provided for by the terms of Securities of any series is referred to as an "optional sinking fund payment." If provided for by the terms of Securities of any series, the cash amount of any sinking fund payment may be subject to reduction as provided in Section 3.05. Each sinking fund payment shall be applied to the redemption of Securities of any series as provided for by the terms of Securities of such series.

Section 3.05          Satisfaction of Sinking Fund Payments with Securities.

The Company (i) may deliver Outstanding Securities of a series (other than any Securities previously called for redemption) and (ii) may apply as a credit Securities of a series that have been redeemed either at the election of the Company pursuant to the terms of such Securities or through the application of permitted optional sinking fund payments pursuant to the terms of such Securities, in each case in satisfaction of all or any part of any sinking fund payment with respect to the Securities of such series required to be made pursuant to the terms of such Securities, provided that such Securities have not been previously so credited. Such Securities shall be received and credited for such purpose by the Trustee at the redemption price

29

specified in such Securities for redemption through operation of the sinking fund and the amount of such sinking fund payment shall be reduced accordingly.

Section 3.06          Redemption of Securities for Sinking Fund.

Not less than 30 days prior to each sinking fund payment date for any series of Securities, the Company will deliver to the Trustee an Officers' Certificate specifying the amount of the next ensuing sinking fund payment for that series pursuant to the terms of the series, the portion thereof, if any, that is to be satisfied by payment of cash in the Currency in which the Securities of such series are denominated (except as provided pursuant to Section 2.01), the portion thereof, if any, that is to be satisfied by delivering and crediting Securities of that series pursuant to Section 3.05 and the basis for such credit. Together with such Officers' Certificate, the Company will deliver to the Trustee any Securities to be so delivered. Not less than 30 days before each such sinking fund payment date the Trustee shall select the Securities to be redeemed upon such sinking fund payment date in the manner specified in Section 3.02 and cause notice of the redemption thereof to be given in the name of and at the expense of the Company in the manner provided in Section 3.02. Such notice having been duly given, the redemption of such Securities shall be made upon the terms and in the manner stated in Section 3.03.

ARTICLE IV.

CERTAIN COVENANTS

The following covenants shall apply to the Securities, except with respect to any series of Securities for which the supplemental indenture or resolution of the Board of Directors under which such series of Securities is issued or in the form of Security for such series expressly provides that any such covenant shall not apply to such series of Securities:

Section 4.01          Payment of Principal, Premium and Interest.

The Company will duly and punctually pay or cause to be paid the principal of, premium, if any, and interest on the Securities of a series at the time and place and in the manner provided herein and established with respect to such Securities.

Section 4.02          Maintenance of Office or Agency.

So long as any series of the Securities remain Outstanding, the Company will maintain for such series an office or agency where Securities of such series may be presented or surrendered for payment, where Securities of such series may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Company in respect of the Securities of such series and this Indenture may be given or served. Such designation will continue with respect to each office or agency until the Company, by written notice signed by any Officer and delivered to the trustee, shall designate some other office or agency for such purposes or any of them. If at any time the Company shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee, and the Company hereby appoints the Trustee as its agent to receive all presentations, surrenders, notices and demands. Unless otherwise specified in accordance with Section 2.01

30

with respect to a series of Securities, the Company initially designates the Corporate Trust Office of The Bank of New York, 101 Barclay Street, 21 W. New York, New York 10286, acting as the Company's agent, as the office to be maintained by it for each such purpose.

**Section 4.03**                    Paying Agents.

(a)       The Company may appoint one or more paying agents, other than the Trustee, for all or any series of the Securities. If the Company fails to appoint or maintain another entity as paying agent, the Trustee shall act as such. Tyco, the Company or any of their Subsidiaries may act as paying agent.

(b)       The Company shall require each paying agent other than the Trustee to agree in writing that the paying agent will hold in trust for the benefit of Securityholders or the Trustee all funds held by the paying agent for the payment of principal, premium, if any, or interest on the Securities, and will promptly notify the Trustee in writing of any default by the Company in making any such payment. While any such default continues, the Trustee may require a paying agent to pay all funds held by it to the Trustee. The Company at any time may require a paying agent to pay all funds held by it to the Trustee. Upon payment over to the Trustee, the paying agent (if other than Tyco, the Company or any of their Subsidiaries) shall have no further liability for the funds. If Tyco, the Company or any of their Subsidiaries acts as paying agent, it shall segregate and hold in a separate trust fund for the benefit of the Securityholders all funds held by it as paying agent.

(c)       Notwithstanding anything in this Section to the contrary, (i) the agreement to hold funds in trust as provided in this Section 4.03 is subject to the provisions of Section 11.06, and (ii) the Company at any time, for the purpose of obtaining the satisfaction and discharge or defeasance of this Indenture or for any other purpose, may pay, or direct any paying agent to pay, to the Trustee all funds held in trust by the Company or such paying agent, such funds to be held by the Trustee upon the same terms and conditions as those upon which such funds were held by the Company or such paying agent. Upon such payment by any paying agent to the Trustee, such paying agent shall be released from all further liability with respect to such funds.

**Section 4.04**                    Statement by Officers as to Default.

So long as any of the Securities remain outstanding, the Company and Tyco will furnish to the Trustee on or before March 31 in each year a brief certificate (which need not comply with Section 13.06) executed by the principal executive, financial or accounting officer of each of the Company and Tyco on their respective behalf as to his or her knowledge of the Company's or Tyco's, as the case may be, compliance with all covenants and agreements under the Indenture required to be complied with by the Company and Tyco, respectively (such compliance to be determined without regard to any period of grace or requirement of notice provided under the Indenture). Such certificate need not include a reference to any non-compliance that has been fully cured prior to the date as of which such certificate speaks.

The Company shall provide written notice to the Trustee within 30 days of the occurrence of any Event of Default under Section 6.01.

31

Section 4.05        <u>Appointment to Fill Vacancy in Office of Trustee.</u>

The Company, whenever necessary to avoid or to fill a vacancy in the office of Trustee, will appoint, in the manner provided in Section 7.10, a Trustee, so that there shall be at all times a Trustee hereunder.

ARTICLE V.

SECURITYHOLDERS' LISTS AND REPORTS BY THE COMPANY AND<br/>THE TRUSTEE

Section 5.01        <u>Company to Furnish Trustee Names and Addresses of Securityholders.</u>

The Company will furnish or cause to be furnished to the Trustee (a) semi-annually at least seven Business Days before each Interest Payment Date for a series of Securities (and in all events at intervals of not more than six months) a list, in such form as the Trustee may reasonably require, of the names and addresses of the holders of each series of Securities as of such date, provided that the Company shall not be obligated to furnish or cause to furnish such list at any time that the list shall not differ in any respect from the most recent list furnished to the Trustee by the Company and (b) at such other times as the Trustee may require in writing within 30 days after the receipt by the Company of any such request, a list of similar form and content as of a date not more than 15 days prior to the time such list is furnished; provided, however, that, in either case, no such list need be furnished for any series for which the Trustee shall be the Security Registrar.

Section 5.02        <u>Preservation of Information; Communications with Securityholders.</u>

(a)        The Trustee shall preserve, in as current a form as is reasonably practicable, all information as to the names and addresses of the holders of Securities contained in the most recent list furnished to it as provided in Section 5.01 and as to the names and addresses of holders of Securities received by the Trustee in its capacity as Security Registrar (if acting in such capacity).

(b)        Securityholders may communicate as provided in Section 312(b) of the Trust Indenture Act with other Securityholders with respect to their rights under this Indenture or under the Securities.

Section 5.03        <u>Reports by the Company.</u>

(a)        So long as any Securities are outstanding, the Company shall file with the Trustee, within 15 days after Tyco is required to file with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) that Tyco may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act. The Company shall be deemed to have complied with the previous sentence to the extent that such information, documents and reports are filed with the Commission via EDGAR (or any successor electronic delivery procedure).

32