SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jonathan J. Lerner (JL-7117)
Joseph N. Sacca (JS-9435)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

AIG GLOBAL INVESTMENT CORP.              No. 07 CV 3693 (SAS)

                 Plaintiff,              ECF CASE

       - against -                       Document electronically filed

TYCO INTERNATIONAL GROUP S.A.

                 Defendant.

------------------------------x

## DECLARATION OF JOHN JENKINS IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, John Jenkins, under penalty of perjury, declare as follows:

1. I am the Vice President and Corporate Secretary for Tyco International Ltd. ("Tyco"). I submit this declaration in opposition to the motion of plaintiff AIG Global Investment Corp. ("AIG") for a preliminary injunction, and to place before the Court true and correct copies of the relevant excerpts of the documents cited in this declaration and in defendant Tyco International Group S.A.'s ("TIGSA") Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction. This declaration is based on my own personal knowledge.

**The Spin-Off Transaction**

2. On January 13, 2006, Tyco announced that its Board of Directors had approved a plan to separate from Tyco two of its four businesses resulting in three independent, publicly-traded companies (the "Spin-Off Transaction"): one for its electronics businesses ("Tyco Electronics"); one for its healthcare businesses ("Covidien"); and Tyco, which will continue to own and operate its fire and security and engineered products and services businesses. (*See* Ex. 1 at 23, Amendment No. 1 to Form S-1 filed by Tyco International Finance S.A. and Tyco International Ltd. with the Securities & Exchange Commission ("SEC") on April 20, 2007 (the "Form S-1").) Pursuant to this plan, Tyco will distribute to its shareholders all of the common shares of two new Bermuda companies comprising the Tyco Electronics and Covidien businesses. After the distributions, Tyco will continue to own and operate, through a subsidiary that will replace TIGSA, both the fire and security and the engineered products and services businesses. (*Id.*)

3. Tyco's Board of Directors concluded that separating into three companies would be the best way to position each of these companies for sustained growth and value creation.

4. The Spin-Off Transaction is structured as follows: TIGSA is a Luxembourg limited liability company and a wholly-owned subsidiary of Tyco. TIGSA is a holding company that, through its subsidiaries, currently operates Tyco's four major lines of businesses, including (i) the electronics business, (ii) the healthcare business, (iii) the fire and security business, and (iv) the engineered products and services business. As a first step, TIGSA will contribute the assets and liabilities relating to its electronics businesses to the new entity comprising the Tyco Electronics business, and the assets and liabilities relating to its healthcare

businesses to the new entity comprising the Covidien business. These two businesses account for approximately 53% of Tyco's total assets. (*Id.* at 14; Form S-1.)

5.  TIGSA will contribute the assets and liabilities relating to its fire and security and engineered products and services businesses, accounting for approximately 47% of Tyco's total assets, to Tyco International Finance S.A. ("TIFSA"). TIFSA is a newly-formed holding company established in connection with the Spin-Off Transaction to own directly or indirectly Tyco's fire and security and engineered products and services businesses that will replace TIGSA in Tyco's corporate structure. TIFSA will also assume TIGSA's liabilities under TIGSA's indentures. Tyco will continue to serve as the guarantor for the Notes.

6.  After the contribution of all of its assets and liabilities, TIGSA will distribute to Tyco all of the outstanding shares of capital stock of TIFSA, the Tyco Electronics entity, and the Covidien entity. Tyco then will distribute the shares of the Tyco Electronics and the Covidien entities to its shareholders. Tyco will retain full and complete ownership of TIFSA and the fire and security and engineered products and services businesses. (Ex. 2 at 6; Offer To Purchase and Solicitation of Consents Statement, filed April 27, 2007 with the Securities and Exchange Commission (the "Tender Offer").)

7.  TIFSA is replacing TIGSA in Tyco's corporate structure to enable Tyco to complete the Spin-Off Transaction under Luxembourg law. To enable Tyco to distribute the shares of the Tyco Electronics and Covidien entities to its shareholders by way of a tax-free dividend, TIGSA's contribution of the electronics assets and liabilities to the Tyco Electronics entity and the healthcare assets and liabilities to the Covidien entity required creating TIFSA to receive the fire and security and engineered products and services assets and liabilities.

8. Following the Spin-Off Transaction, TIFSA is expected to have assets of more than $29 billion (about 47% of Tyco's present assets) and total shareholders' equity of nearly $15 billion. (*See* Ex. 1 at 38; Form S-1.) TIFSA is expected to have total debt of approximately $4 billion (about 40% of Tyco's present total debt).

9. AIG's assertion that TIFSA will have assets representing only 27% of Tyco's present assets (*see* Compl. ¶ 2) is not correct. As the Form S-1 explains, pursuant to a Separation and Distribution Agreement and a Tax Sharing Agreement that will be executed among Tyco and the Tyco Electronics and Covidien entities, Tyco will assume 27% of certain of its current contingent and other corporate liabilities and 27% of certain tax liabilities. (Ex. 1 at 14-15; Form S-1.) AIG's characterization of the Spin-Off Transaction as a "Proposed Liquidation Transaction" (*see* (Compl. ¶ 3) does not accurately describe the functional nature of the transaction, because it ignores that following the Spin-Off Transaction, Tyco will continue to retain full and complete ownership of TIFSA and the fire and security and engineered products and services businesses as well as operate these businesses through TIFSA, which comprise about 47% of Tyco's present assets.

**The Harm to Tyco and Its Shareholders if the Spin-Off Transaction is Delayed or Disrupted**

10. Tyco and TIGSA have been planning and engaging in steps necessary to implement the Spin-Off Transaction for nearly 18 months, and they and their advisors have devoted thousands of hours, and nearly $200 million dollars, to this process. The Spin-Off Transaction is expected to be beneficial to Tyco's shareholders by increasing the market value of their investments in Tyco.

**The 1998 and 2003 Indenture Agreements**

11. TIGSA, with Tyco as guarantor, issued public debt (the "Notes") under indentures dated June 9, 1998 (the "1998 Indenture") and November 12, 2003 (the "2003 Indenture"). The 1998 Indenture includes a provision titled "Issuer and Guarantors May Consolidate, etc., on Certain Terms" and the 2003 Indenture includes a provision titled "Consolidation, Merger and Sale of Assets." (Ex. 3 at § 8.1, 1998 Indenture; Ex. 4 at § 10.01, 2003 Indenture.) In the 1998 Indenture, TIGSA and Tyco covenanted, in relevant part, that each

> will not . . . sell or convey all or substantially all of its assets to any Person, unless (i) . . . the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer . . . shall expressly assume the due and punctual payment of the principal of and interest on all the Securities . . ., and (ii) the successor corporation . . . shall not immediately after . . . such sale or conveyance, be in default in the performance of any such covenant or agreement.

(Ex. 3 at § 8.1; 1998 Indenture.) The applicable provision in the 2003 Indenture is substantially similar. (Ex. 4 at § 10.01, 2003 Indenture.)

12. The Indentures further provide for a monetary remedy to holders of the Notes for a violation of the Indentures. Upon an event of default, which includes a breach of any covenant by TIGSA or Tyco, holders of the Notes have the option to declare the unpaid principal and interest on the Notes immediately due and payable. (Ex. 3 at § 4.1, 1998 Indenture; Ex. 4 at § 6.01(a), (b), 2003 Indenture.)

**The Tender Offer and Consent Solicitation**

13. On April 27, 2007, TIGSA, which is currently the obligor on the Notes, commenced a tender offer and consent solicitation asking noteholders to tender their Notes to TIGSA in exchange for a premium payment and to consent to the clarification of certain provisions in the Indentures. (Ex. 2 at 1; Tender Offer.)

14. The tender offer is currently set to expire at 12:00 midnight, New York City time, on Thursday, May 24, 2007. (*Id.*; Tender Offer)

15. The tender offer provides for an "early consent date" by which holders of Notes can tender their Notes in exchange for the tender offer price plus an additional early consent payment. (*Id.* at 2; Tender Offer.)

**The Supplement To the Tender Offer And Consent Solicitation**

16. On May 11, 2007, TIGSA supplemented its tender offer materials. (Ex. 5; Supplement.) The supplement disclosed that TIGSA was extending the early consent date from May 10, 2007 to May 15, 2007. (*Id.* at 1; Supplement.) It also disclosed information regarding AIG's complaint and this dispute, stating, in relevant part:

> On May 9, 2007, AIG Global Investment Corp. ("AIG"), which purports to be a holder of 2003 Notes and 1998 Notes, commenced an action against the Company in the United States District Court for the Southern District of New York. The complaint in the action is on file with the Clerk of that court, under the case name AIG Global Investment Corp. v. Tyco International Group, S.A., Case No. 07-cv-03693-SAS.
>
> The complaint alleges that the transfer of assets by the Company to TIFSA in connection with the Proposed Separation will not constitute a transfer of all or substantially all of the Company's assets and, therefore, that the Proposed Separation will violate the provisions of the 1998 Indenture and the 2003 Indenture because the Indentures do not permit the assignment of the Company's obligation on the Notes unless all or substantially all of the assets are being transferred.
>
> The complaint relies upon a case entitled *Sharon Steel Corp. v. The Chase Manhattan Bank*, 691 F.2d 1039 (2d Cir. 1982), which AIG claims supports its interpretation of the Indentures. The complaint also asserts that the Proposed Separation violates the Indentures because the transfer of assets to Tyco Electronics and Covidien will constitute a sale of all or substantially all of the Company's assets, but without a concurrent assumption of the Notes by such entities.
>
> Furthermore, the complaint alleges that the Company's Offer Documents are false and misleading in that they: represent that the transfer of the Company's assets to TIFSA as part of the Proposed Separation shall be deemed a conveyance of substantially all of the Company's assets; describe the 1998 Indenture

6

Amendments and the 2003 Indenture Amendments as "clarifying" the applicable provisions of the Indentures, even though AIG asserts they represent a "dramatic change from the true meaning" of the provisions of the Indentures and that the "proposed amendments in fact effect a material change to the Successor Obligor clauses" of the Indentures; assert that the Company believes that the various steps in the Proposed Separation are not prohibited by the Indentures; and fail to disclose the existence of the *Sharon Steel* decision, which AIG claims is controlling, and that the Company's actions are "attempts to circumvent" the holding of the *Sharon Steel* decision.

The Company disagrees with AIG's position, and intends to vigorously defend the lawsuit.

(*Id.* at 2; Supplement.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of May, 2007 in New York, New York.

_____
John Jenkins