# EXHIBIT 1

S-1/A 1 a2176156zs-1a.htm FORM S-1/A

QuickLinks -- Click here to rapidly navigate through this document

As filed with the Securities and Exchange Commission on April 20, 2007

Registration No. 333-140064-01

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# AMENDMENT NO. 1
# TO
# FORM S-1
REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933

| TYCO INTERNATIONAL FINANCE S.A.* | TYCO INTERNATIONAL LTD. |
|---|---|
| (Exact name of registrant as specified in its charter) | (Exact name of registrant as specified in its charter) |
| Luxembourg | Bermuda |
| (State or other jurisdiction of incorporation or organization) | (State or other jurisdiction of incorporation or organization) |
| 7382 | 7382 |
| (Primary Standard Industrial Classification Code Number) | (Primary Standard Industrial Classification Code Number) |
| 98-0518565 | 98-0390500 |
| (I.R.S. Employer Identification Number) | (I.R.S. Employer Identification Number) |
| 17, Boulevard de la Grande Duchesse Charlotte<br>L-1331 Luxembourg<br>Telephone: (352) 464-340-1<br>(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices) | 90 Pitts Bay Road, Second Floor<br>Pembroke HM 08, Bermuda<br>Telephone: (441) 292-8674<br>(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices) |

Judith A. Reinsdorf
Executive Vice President and General Counsel
Tyco International (US) Inc.
9 Roszel Road
Princeton, New Jersey 08540
Telephone: (609) 720-4200
(Name, address, including zip code, and telephone number, including area code, of agent for service)

With copies to:

| Robert E. Buckholz, Jr. | Steven R. Finley |
|---|---|
| Sullivan & Cromwell LLP | Sean P. Griffiths |
| 125 Broad Street | Gibson, Dunn & Crutcher LLP |
| New York, New York 10004 | 200 Park Avenue |
| Telephone: (212) 558-4000 | New York, New York 10166-0193 |
| Fax: (212) 558-3588 | Telephone: (212) 351-4000 |
| | Fax: (212) 351-4035 |

Approximate date of commencement of proposed sale to the public: As soon as practicable after this registration statement becomes effective.

**EXHIBIT 1**

The registrants hereby amend this registration statement on such date or dates as may be necessary to delay its effective date until the registrants shall file a further amendment which specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933 or until the registration statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.

*The registrant was formerly named Topaz International Group S.A. Effective March 1, 2007, the registrant changed its name to Tyco International Finance S.A.

**Risks Relating to the Spin-offs**

> **Our historical financial information may not be indicative of our future results after giving effect to the spin-offs.**

Our consolidated historical financial information reflects the operations of Historical Tyco, including the healthcare and electronics businesses that are being spun-off to Tyco International's shareholders. These businesses in the aggregate historically accounted for approximately 55% of Historical Tyco's net revenues and 53% of its total assets. The consolidated historical financial information we have included or incorporated by reference in this registration statement and prospectus may not be indicative of what our financial condition and results of operations may be in the future after giving effect to the spin-offs. In addition, in connection with the spin-offs, we will enter into certain liability sharing arrangements which may affect our financial condition, results of operations and cash flows.

> **If the distribution or certain internal transactions undertaken in anticipation of the spin-offs are determined to be taxable for U.S. federal income tax purposes, we could incur significant U.S. federal income tax liabilities.**

We have received private letter rulings from the U.S. Internal Revenue Service regarding the U.S. federal income tax consequences of the distribution of Covidien and Tyco Electronics common shares to our shareholders substantially to the effect that the distribution, except for cash received in lieu of fractional shares, will qualify as tax-free under Sections 355 and 368(a)(1)(D) of the Internal Revenue Code of 1986. The private letter rulings also provide that certain internal transactions undertaken in anticipation of the spin-offs will qualify for favorable treatment under the Code. In addition to obtaining the private letter rulings, we expect to obtain an opinion from the law firm of McDermott Will & Emery LLP confirming the tax-free status of the distribution. McDermott Will & Emery also is expected to produce opinions to the effect that the internal transactions addressed in the private letter rulings and certain other internal transactions should qualify for favorable tax treatment under the Code. The private letter rulings and the opinions rely or will rely on certain facts and assumptions, and certain representations and undertakings, from us, Covidien and Tyco Electronics regarding the past and future conduct of our respective businesses and other matters. Notwithstanding the private letter rulings and the opinions, the Internal Revenue Service could determine on audit that the distribution or the internal transactions should be treated as taxable transactions if it determines that any of these facts, assumptions, representations or undertakings are not correct or have been violated, or that the distributions should be taxable for other reasons, including as a result of significant changes in stock or asset ownership after the distribution. If the distribution ultimately is determined to be taxable, we would recognize gain in an amount equal to the excess of the fair market value of the Covidien and Tyco Electronics common shares distributed to our shareholders on the distribution date over our tax basis in such common shares, but such gain, if recognized, generally would not be subject to U.S. federal income tax. However, we, Covidien and Tyco Electronics would incur significant U.S. federal income tax liabilities if it ultimately is determined that certain internal transactions undertaken in anticipation of the spin-offs should be treated as taxable transactions.

In addition, under the terms of the Tax Sharing Agreement that we will enter into with Covidien and Tyco Electronics in connection with the spin-offs, in the event the distribution or the internal transactions are determined to be taxable and such determination was the result of actions taken after the distribution by us, Covidien or Tyco Electronics, the party responsible for such failure would be responsible for all taxes imposed on us, Covidien or Tyco Electronics as a result thereof. If such determination is not the result of actions taken after the distribution by us, Covidien or Tyco Electronics, then we, Covidien and Tyco Electronics would be responsible for 27%, 42% and 31%, respectively, of any taxes imposed on us, Covidien or Tyco Electronics as a result of such determination. Such tax amounts could be significant. In the event that any party to the Tax Sharing

14

Agreement defaults in its obligation to pay distribution taxes to another party that arise as a result of no party's fault, each non-defaulting party would be responsible for an equal amount of the defaulting party's obligation to make a payment to another party in respect of such other party's taxes.

### We will continue to be responsible for a portion of our contingent and other corporate liabilities following the spin-offs of Covidien and Tyco Electronics, primarily those relating to shareholder litigation.

Under the Separation and Distribution Agreement and other agreements, subject to certain exceptions contained in the Tax Sharing Agreement, we, Covidien and Tyco Electronics will agree to assume and be responsible for 27%, 42% and 31%, respectively, of certain of our contingent and other corporate liabilities. All costs and expenses associated with the management of these contingent and other corporate liabilities will be shared equally among the parties. These contingent and other corporate liabilities primarily relate to consolidated securities litigation and any actions with respect to the separation plan or the distribution brought by any third party. Contingent and other corporate liabilities do not include liabilities that are specifically related to one of the three separated companies, which will be allocated 100% to the relevant company.

If any party responsible for such liabilities were to default in its payment, when due, of any of these assumed obligations, each non-defaulting party would be required to pay equally with any other non-defaulting party the amounts in default. Accordingly, under certain circumstances, we may be obligated to pay amounts in excess of our agreed-upon share of the assumed obligations related to such contingent and other corporate liabilities including associated costs and expenses.

Many lawsuits are outstanding against us, some of which relate to actions taken by our former senior corporate management. We do not believe that it is feasible to predict the final outcome or resolution of these unresolved proceedings. Although we will share any costs and expenses arising out of this litigation with Covidien and Tyco Electronics, an adverse outcome from these unresolved proceedings or liabilities or other proceedings for which we have retained partial liability under the Separation and Distribution Agreement could be material with respect to our earnings and cash flows in any given reporting period.

### We will share responsibility for certain of our, Covidien's and Tyco Electronics' income tax liabilities for tax periods prior to and including the distribution date.

Under the Tax Sharing Agreement, we will share responsibility for certain of our, Covidien's and Tyco Electronics' income tax liabilities based on a sharing formula for periods prior to and including the date of the distribution. More specifically, we, Covidien and Tyco Electronics will share 27%, 42% and 31%, respectively, of U.S. income tax liabilities that arise from adjustments made by tax authorities to our, Covidien's and Tyco Electronics' U.S. income tax returns, certain income tax liabilities arising from adjustments made by tax authorities to intercompany transactions or similar adjustments, and certain taxes attributable to internal transactions undertaken in anticipation of the separation and the distributions. All costs and expenses associated with the management of these shared tax liabilities shall be shared equally among the parties. We will be responsible for all of our own taxes that are not shared pursuant to the Tax Sharing Agreement's sharing formula. In addition, Covidien and Tyco Electronics will be responsible for their tax liabilities that are not subject to the Tax Sharing Agreement's sharing formula.

If any party to the Tax Sharing Agreement were to default in its obligation to another party to pay its share of the distribution taxes that arise as a result of no party's fault, each non-defaulting party would be required to pay, equally with any other non-defaulting party, the amounts in default. In addition, if another party to the Tax Sharing Agreement that is responsible for all or a portion of an income tax liability were to default in its payment of such liability to a taxing authority, we could be

15

# THE SPIN-OFFS

**General**

On January 13, 2006, we announced that our board of directors had approved a plan to separate Tyco International into three independent, publicly-traded companies: one for our healthcare businesses (Covidien); one for our electronics businesses (Tyco Electronics); and one for our fire and security and engineered products and services businesses (Tyco International). The spin-offs will occur through distributions to our shareholders of all of the common shares of Covidien and Tyco Electronics. We will continue to own and operate the fire and security and engineered products and services businesses after the distributions.

Our board of directors and our senior leadership, in consultation with financial and legal advisors, evaluated a broad range of strategic alternatives to the proposed spin-offs, including the continuation of our current operating strategy, the sale of select businesses and the spin-off of only one of our businesses. Our management and board of directors concluded that separating into three businesses would be the best way to position each of these companies for sustained growth and value creation.

Since January 2006, our board of directors met numerous times with and without members of our senior management team to discuss the spin-offs. In these meetings, our board of directors considered, among other things, the benefits to the businesses and to Tyco International's shareholders that are expected to result from the spin-offs, the capital allocation strategies and dividend policies for the separated companies, the allocation of our existing assets, liabilities and businesses among the separated companies, the terms of certain commercial relationships among the separated companies that will exist following the spin-offs, the corporate governance arrangements that will be in place at each company following the spin-offs and the appropriate members of senior management at each company following the spin-offs.

The distributions of the common shares of Covidien and Tyco Electronics are being made in furtherance of the spin-offs. On            , 2007, the distribution date, each of our shareholders will receive            common shares of Covidien for each common share of Tyco International and            common shares of Tyco Electronics for each common share of Tyco International held at the close of business on the record date, as described below. Immediately following the distributions, our shareholders will own 100% of the outstanding common shares of Covidien and Tyco Electronics.

**Reasons for the Spin-offs**

Our board of directors regularly reviews the various businesses that we conduct to ensure that our resources are being put to use in a manner that is in the best interests of Tyco International and its shareholders. Over the last several years, we have achieved increased revenues and earnings. During that time, however, we concluded that operating as a conglomerate made it difficult for analysts and the market generally to understand our real value and have found that any real or perceived negative issue at any one of our business units has usually obscured the performance of Tyco International as a whole. Our board of directors evaluated a number of strategic alternatives to increase value and concluded that the spin-offs would be the most feasible and the most financially attractive approach. Our board of directors believes that creating independent, focused companies is the best way to unlock the full value of our businesses in both the short and long term. There will be one company for our electronics businesses, one company for our healthcare businesses and a third company for our fire and security and engineered products and services businesses.

We believe that the spin-offs of our businesses provide each separated company with certain opportunities and benefits. The following are some of the opportunities and benefits that our board of directors considered in approving the spin-offs:

- Each separated company will be able to focus on its core business and growth opportunities, which will allow each separated company to respond more quickly and efficiently to

23

## TYCO INTERNATIONAL LTD.
### PRO FORMA CONDENSED CONSOLIDATED BALANCE SHEET (UNAUDITED)
### As of December 29, 2006
### (dollars in millions)

| | Historical | Pro Forma Adjustments | | | | Financing Adjustments | Pro Forma for the Spin-offs and the Financing |
|---|---|---|---|---|---|---|---|
| | | Distribution of Healthcare Businesses(a) | Distribution of Electronics Businesses(a) | Other Adjustments | Pro Forma for the Spin-Offs | | |
| **Assets** | | | | | | | |
| **Current Assets:** | | | | | | | |
| Cash and cash equivalents | $ 2,598 | $ (305) | $ (472) | $ (223)(e) | $ 1,598 | $ | $ |
| Accounts receivable, less allowance for doubtful accounts | 7,115 | (1,587) | (2,496) | — | 3,032 | | |
| Inventories | 5,268 | (1,286) | (2,134) | — | 1,848 | | |
| Other current assets | 3,672 | (555) | (884) | — | 2,233 | | |
| Total current assets | 18,653 | (3,733) | (5,986) | (223) | 8,711 | | |
| Property, plant and equipment, net | 9,515 | (2,564) | (3,439) | — | 3,512 | | |
| Goodwill | 25,054 | (6,170) | (7,465) | — | 11,419 | | |
| Intangible assets, net | 5,101 | (1,370) | (1,022) | — | 2,709 | | |
| Other assets | 4,645 | (387) | (1,428) | 3 (j) (22)(i) | 2,811 | (h) | |
| **Total Assets** | $ 62,968 | $ (14,224) | $ (19,340) | $ (242) | $ 29,162 | $ | $ |
| **Liabilities and Shareholders' Equity** | | | | | | | |
| **Current Liabilities:** | | | | | | | |
| Current maturities of long-term debt | $ 1,627 | $ (121) | $ (8) | $ (748)(f) | $ 750 | $ (g) | $ |
| Accounts payable | 3,467 | (476) | (1,357) | — | 1,634 | | |
| Accrued and other current liabilities | 5,706 | (858) | (1,161) | 1,300 (l) | 4,987 | | |
| Total current liabilities | 10,800 | (1,455) | (2,526) | 552 | 7,371 | | |
| Long-term debt | 8,602 | (173) | (144) | (5,035)(f) | 3,250 | (g) | |
| Other liabilities | 7,690 | (1,661) | (1,303) | (1,020)(j) | 3,706 | | |
| **Total liabilities** | 27,092 | (3,289) | (3,973) | (5,503) | 14,327 | | |
| Minority interest | 37 | (2) | (16) | — | 19 | | |
| Total Shareholders' Equity | 35,839 | (10,933) | (15,351) | 5,261 | 14,816 | | |
| **Total Liabilities and Shareholders' Equity** | $ 62,968 | $ (14,224) | $ (19,340) | $ (242) | $ 29,162 | $ | $ |

See Notes to Pro Forma Consolidated Financial Statements.

38