# EXHIBIT 2

OFFER TO PURCHASE AND CONSENT SOLICITATION STATEMENT

# TYCO INTERNATIONAL GROUP S.A.

## OFFER TO PURCHASE AND SOLICITATION OF CONSENTS FOR ANY AND ALL OF ITS OUTSTANDING SECURITIES LISTED IN THE TABLE BELOW

| Title of Securities | CUSIP Number | Outstanding Amount | UST Reference Security | Fixed Spread (bp) | Bloomberg Reference Page | Early Consent Payment |
|---|---|---|---|---|---|---|
| **2003 Indenture Notes** | | | | | | |
| 6.0% notes due 2013 | 902118BK3 | $1,000,000,000 | 4.25% due 11/15/2013 | 40 | PX6 | $30.00 |
| **1998 Indenture Notes** | | | | | | |
| 6.125% notes due 2008 | 902118AM0 | $400,000,000 | 4.875% due 10/31/2008 | 30 | PX4 | $30.00 |
| 6.125% notes due 2009 | 902118AJ7 | $400,000,000 | 3.250% due 1/15/2009 | 35 | PX4 | $30.00 |
| 6.75% notes due 2011 | 902118AY4 | $1,000,000,000 | 5.000% due 2/15/2011 | 35 | PX5 | $30.00 |
| 6.375% notes due 2011 | 902118BC1 | $1,500,000,000 | 4.500% due 9/30/2011 | 40 | PX6 | $30.00 |
| 7.0% notes due 2028 | 902118AC2 | $500,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |
| 6.875% notes due 2029 | 902118AK4 | $800,000,000 | 4.75% due 2/15/2037 | 60 | PX1 | $30.00 |

> THE CONSENT SOLICITATIONS WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THURSDAY, MAY 10, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EARLY CONSENT DATE"). THE TENDER OFFERS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON THURSDAY, MAY 24, 2007, UNLESS EXTENDED OR EARLIER TERMINATED (SUCH TIME AND DATE, AS THE SAME MAY BE EXTENDED, THE "EXPIRATION DATE").

Tyco International Group S.A. (the "Company") hereby offers to purchase for cash any and all of the outstanding notes (collectively, the "Notes") listed in the tables above. The Notes were issued at various times in an aggregate principal amount of approximately $5.6 billion, of which substantially all remained outstanding as of the date of this Offer to Purchase and Consent Solicitation Statement (the "Offer to Purchase").

The offers to purchase the 2003 Notes (as defined herein) (the "2003 Tender Offer") and the 1998 Notes (as defined herein) (the "1998 Tender Offer" and, together with the 2003 Tender Offer, the "Tender Offers") are being made upon the terms and subject to the conditions set forth in this Offer to Purchase and the accompanying Letter of Transmittal and Consent (the "Letter of Transmittal" and, together with this Offer to Purchase, the "Offer Documents").

*The Dealer Managers for the Tender Offers and the Solicitation Agents for the Consent Solicitations are:*

**Goldman, Sachs & Co.**                                    **Morgan Stanley**

**April 27, 2007**

**EXHIBIT 2**

Concurrently with the Tender Offers, the Company is soliciting from the holders of the Notes (each a "Holder" and, collectively, the "Holders") consents ("Consents") to amend the Indentures (as defined herein) under which the Notes were issued to clarify the application of certain provisions of the Indentures to the Proposed Separation (as defined herein). While Tyco International Ltd. ("Tyco"), the guarantor of the Notes, and the Company believe that the various steps in the Proposed Separation are not prohibited by the Indentures, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Consent Solicitations, to eliminate any uncertainty by amending the Indentures.

For any Notes validly delivered and not withdrawn before the Early Consent Date, the Company will pay total consideration for each $1,000 principal amount of Notes (the "Total Consideration"), which will equal the present value of the Notes, calculated as described under "The Tender Offers and Consent Solicitations," based on:

- the yield to maturity of the United States Treasury ("UST") reference security specified for such Notes in the table on the cover page (as calculated by the Dealer Managers (as defined below) in accordance with standard market practice based on the bid side price of such reference security at 2:00 p.m., New York City time, two business days prior to the Expiration Date),

- plus the fixed spread specified for that series in the table on the cover page.

The formula for calculating the Total Consideration of each of the Notes appears in Annex C, and a sample calculation of a hypothetical Total Consideration for each of the Notes appears in Annex D.

The Total Consideration includes a consent payment of $30.00 per $1,000 principal amount of Notes (the "Early Consent Payment") payable to each registered Holder of the Notes who validly delivers (and does not validly revoke) its Consent on or prior to the Early Consent Date. For any Notes validly delivered after the Early Consent Date and prior to the Expiration Date, the Company will pay the Total Consideration minus the Early Consent Payment (the "Purchase Price"). In addition, the Company will pay accrued and unpaid interest on such $1,000 principal amount up to, but not including, the day of payment for (or deposit of an amount with Global Bondholder Services Corporation as Depositary (the "Depositary"), sufficient to pay for) Notes accepted for purchase.

The Notes were issued under two different indentures. The Company's 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2) and 6.875% notes due 2029 (CUSIP No. 902118AK4) (collectively, the "1998 Notes") were issued under an indenture, dated as of June 9, 1998 (as supplemented from time to time, the "1998 Indenture") among the Company, Tyco, as guarantor, and The Bank of New York, as trustee (the "Trustee"). In order to clarify the application of certain provisions of the 1998 Indenture to the Proposed Separation, the Company seeks Consents to the amendment of Article Eight of the 1998 Indenture and to the execution and delivery by the Company, Tyco and the Trustee of a supplemental indenture (the "1998 Supplemental Indenture") containing the proposed amendments to the 1998 Indenture (the "1998 Indenture Amendments," and such consent solicitation, the "1998 Consent Solicitation").

The 1998 Indenture Amendments will not become effective unless the Company receives the consent of the Holders of at least a majority in outstanding aggregate principal amount of the 1998 Notes, voting together as one class (the "1998 Requisite Consents"). For purposes of determining the number of Consents required to approve the 1998 Indenture Amendments, the aggregate principal value of all 1998 Notes, excluding those 1998 Notes held by the Company, Tyco or any affiliate of the Company or Tyco (the "1998 Outstanding Amount"), will be counted, and, for such purpose, as of the date of this Offer to Purchase, the aggregate outstanding principal amount of the 1998 Notes is approximately $4.6 billion.

The Company's 6.0% notes due 2013 (CUSIP No. 902118BK3) (the "2003 Notes") were issued under an indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2003 (the "First Supplemental Indenture" and, as amended thereby, the "2003 Indenture"), among the Company, Tyco, as guarantor, and The Bank of New York, as Trustee. In order to clarify the application of certain provisions of the 2003 Indenture to the Proposed Separation, the Company seeks Consents to the amendment of Article X of the 2003 Indenture and to the execution and delivery by the Company, Tyco and the Trustee of a supplemental indenture (the "2003 Supplemental Indenture" and such consent solicitation, the "2003 Consent Solicitation") containing the proposed amendments to the 2003 Indenture (the "2003 Indenture Amendments"). The 2003 Indenture Amendments will not become effective unless the Company receives the consent of the holders of at least a majority in aggregate principal amount of the outstanding

## SUMMARY

*The following summarizes in a question-and-answer format certain material terms of the Tender Offers and the Consent Solicitations. You should carefully read this entire Offer to Purchase and the Letter of Transmittal, as well as all schedules, annexes, appendices and related documents for more detailed information and instructions.*

### *Who is offering to buy my Notes and soliciting my Consent?*

The Company, the issuer of the Notes, is offering to purchase the Notes and requesting Consents to the Proposed Amendments.

### *What securities are the subject of the Consent Solicitations and the Tender Offers?*

The Company is offering to purchase, and is requesting Consents from the Holders of, all of its outstanding 6.0% notes due 2013 (CUSIP No. 902118BK3), 6.125% notes due 2008 (CUSIP No. 902118AM0), 6.125% notes due 2009 (CUSIP No. 902118AJ7), 6.75% notes due 2011 (CUSIP No. 902118AY4), 6.375% notes due 2011 (CUSIP No. 902118BC1), 7.0% notes due 2028 (CUSIP No. 902118AC2) and 6.875% notes due 2029 (CUSIP No. 902118AK4). The 1998 Notes were issued under and are governed by the 1998 Indenture, dated as of June 9, 1998 (as supplemented from time to time) among the Company, Tyco, as guarantor, and the Trustee. The 2003 Notes were issued under and are governed by the 2003 Indenture, dated as of November 12, 2003, as amended by the First Supplemental Indenture, dated as of November 12, 2003, among the Company, Tyco and the Trustee. As of the date of this Offer to Purchase, there was approximately $1 billion outstanding principal amount of 2003 Notes and an aggregate of approximately $4.6 billion principal amount of the 1998 Notes.

### *What is the purpose of the Tender Offers and the Consent Solicitations?*

The principal purpose of the Tender Offers is to acquire all of the outstanding Notes in connection with a refinancing of the Company's outstanding debt. See "Purpose and Background of the Tender Offer and Consent Solicitation" and "The Proposed Separation."

The principal purpose of the Consent Solicitations is to obtain your Consent to the Proposed Amendments.

### *What are the 1998 Indenture Amendments?*

The 1998 Indenture Amendments would amend existing Article Eight of the 1998 Indenture entitled "Consolidation, Merger, Sale or Conveyance" to clarify the application of Article Eight to the Proposed Separation. As discussed in greater detail under "The Proposed Separation," Article Eight of the 1998 Indenture will be clarified to confirm that the transfer of assets by the Company to Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of the Company's or Tyco's assets, that the transfer of assets by the Company to TIFSA, will constitute the transfer of substantially all of the Company's assets (but not all or substantially all of Tyco's assets), that upon such transfer TIFSA will become the successor to the Company under the Indenture (at which time the Company will be discharged from all obligations and covenants under the Indenture and the Notes and may be liquidated and dissolved), and that the distribution to Tyco's shareholders of its electronics and healthcare businesses will not constitute the transfer of all or substantially all of Tyco's assets. The 1998 Consent Solicitation also seeks the Consents of Holders of Notes to the execution by the Company, Tyco and the Trustee of the 1998 Supplemental Indenture containing the foregoing amendments. See "The Proposed Separation" and "Proposed Amendments to the Indenture."

### *What are the 2003 Indenture Amendments?*

The 2003 Indenture Amendments would amend existing Article X of the 2003 Indenture entitled "Successor Corporation" to clarify the application of Article X to the Proposed Separation. As discussed in greater detail under "The Proposed Separation," Article X of the 2003 Indenture will be clarified to confirm that the transfer of assets by the Company to Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of the Company's or Tyco's assets, that the transfer of assets by the Company to TIFSA will constitute the transfer of substantially all of the

1

Company's assets (but not all or substantially all of Tyco's assets), that upon such transfer TIFSA will become the successor to the Company under the Indenture (at which time the Company will be discharged from all obligations and covenants under the Indenture and the Notes and may be liquidated and dissolved), and that the distribution to Tyco's shareholders of its electronics and healthcare businesses will not constitute the transfer of all or substantially all of Tyco's assets. The 2003 Consent Solicitation also seeks the Consents of Holders of Notes to the execution by the Company, Tyco and the Trustee of the 2003 Supplemental Indenture containing the foregoing amendments. See "The Proposed Separation" and "Proposed Amendments to the Indenture."

### When do the Proposed Amendments to the Indentures become effective?

The 1998 Indenture Amendments will not become effective unless the Company receives the Consent of Holders of at least a majority of the 1998 Outstanding Amount voting as one class. The 2003 Indenture Amendments will not become effective unless the Company receives the Consent of Holders of at least a majority of the 2003 Outstanding Amount. See "Conditions of the Tender Offers and Consent Solicitations."

If the Requisite Consents are obtained for either of the Consent Solicitations, the Company and Tyco intend to execute the Supplemental Indentures containing the relevant Proposed Amendments on, or as soon as practicable after, the Early Consent Date. Each of the Supplemental Indentures will become effective upon execution of such Supplemental Indenture by the Company, Tyco and the Trustee, with such Proposed Amendments becoming operative on the date the Company notifies the Trustee and the Depositary that an amount of Notes representing the Requisite Consents for such Proposed Amendments has been accepted for purchase. In the event that the 1998 Notes or 2003 Notes are not accepted for purchase by the Company for any reason, the applicable Indenture will remain in effect in its present form.

### What happens to my Notes if the Requisite Consents are obtained but I do not validly tender my Notes?

Any Notes not tendered and purchased pursuant to the Tender Offers will remain outstanding. As a result of the consummation of the Tender Offers, the aggregate principal amount of Notes that remains outstanding is expected to be significantly reduced, which may adversely affect the liquidity of and, consequently, the market prices for, any Notes that remain outstanding after consummation of the Tender Offers. See "Certain Considerations — Limited Trading Market." If the transactions described under "The Proposed Separation" occur as anticipated, any such remaining Notes will become obligations of TIFSA, guaranteed by Tyco, and the Company will be released from its obligations on the Notes.

### What happens if the Requisite Consents are obtained with respect to only the 2003 Notes or only the 1998 Notes?

The 2003 Tender Offer and the 1998 Tender Offers are not conditioned on each other. The 2003 Tender Offer is conditioned upon the receipt of the 2003 Requisite Consents and the 1998 Tender Offer is conditioned upon receipt of the 1998 Requisite Consents. The Company reserves the right to waive any and all conditions of either of the Tender Offers and the Consent Solicitations on or prior to the Expiration Date. See "Conditions of the Tender Offers and Consent Solicitations."

### What price will I receive for my Notes if I validly tender them to you and for my Consents if I deliver them to you?

The Company is offering to pay you the Total Consideration for your Notes, if you validly tender and do not validly withdraw your Notes before the Early Consent Date. The Total Consideration for each of the Notes will be calculated as described under "The Tender Offers and the Consent Solicitations." Annex C contains the formula to be used in calculating the Total Consideration for each of the Notes, and Annex D contains a hypothetical calculation of the Total Consideration for each of the Notes.

If you validly tender and do not validly withdraw your Notes, you will be deemed to have given your Consent; you may not do one without the other. The Total Consideration includes an amount, which is referred to as the Early Consent Payment, which is equal to $30.00 per $1,000 principal amount of Notes and is payable only to Holders who validly tender and do not validly withdraw their Notes prior to the Early Consent Date. If, *but only if*, you validly tender

2

## INFORMATION CONCERNING THE COMPANY, TIFSA AND TYCO

The Company was formed as a Luxembourg company on March 30, 1998, as a wholly owned subsidiary of Tyco. The Company is a holding company whose only business is to own indirectly a substantial portion of the operating subsidiaries of Tyco and to perform treasury operations for Tyco companies. Otherwise, it conducts no independent business.

Tyco is a diversified manufacturing and service company that, through its subsidiaries:

- designs, manufactures and distributes electrical and electronic components and related solutions;

- designs, manufactures, installs, monitors and services electronic security and fire protection systems;

- designs, manufactures and distributes medical devices and supplies, imaging agents, pharmaceuticals and adult incontinence and infant care products; and

- designs, manufactures, distributes and services engineered products, including industrial valves and controls, as well as steel tubular goods, and provides consulting, engineering and construction management and operating services.

Tyco maintains its registered and principal executive offices at 90 Pitts Bay Road, Second Floor, Pembroke HM 08, Bermuda. The executive offices of Tyco's principal United States subsidiaries are located at 9 Roszel Road, Princeton, NJ 08540. The telephone number there is (609) 720-4200. The Company, a Luxembourg company, maintains its registered and principal executive offices at 58, rue Charles Martel, L-2134 Luxembourg. The Company's telephone number is (352) 464-340-1. TIFSA is a newly-formed holding company established in connection with the spin-offs of the Company's healthcare and electronics businesses to directly and indirectly own Tyco's fire and security and engineered products and services operating subsidiaries, to issue new notes and to perform Tyco's treasury operations. Otherwise, it conducts no independent business. TIFSA's registered and principal offices are located at 58, rue Charles Martel, L-2134 Luxembourg. Its telephone number at that address is (352) 464-340-1.

## THE PROPOSED SEPARATION

In January 2006, Tyco announced that its board of directors had approved a plan (the "Proposed Separation") to separate Tyco into three independent, publicly-traded companies: one for Tyco's electronics businesses (Tyco Electronics), one for its healthcare businesses (Covidien), with the third (Tyco) continuing operations with its fire and security and engineered products and services businesses. The Proposed Separation will occur through tax-free distributions to Tyco's shareholders as of a record date that Tyco will set of all of the common shares of Tyco Electronics and Covidien, two subsidiaries that hold or will hold, through their respective subsidiaries, all of the assets and liabilities of the electronics and healthcare businesses, respectively. The fire and security and engineered products and services businesses will remain with Tyco after the distribution.

Prior to the distribution to its shareholders but after completion of these Tender Offers and similar offers to purchase certain of the Company's other outstanding public indebtedness, and as necessary steps to enable Tyco to make the distribution, the Company will contribute the assets and liabilities relating to its electronics businesses to Tyco Electronics, and the assets and liabilities relating to its healthcare businesses to Covidien. The assets and liabilities relating to its fire and security and engineered products and services businesses will be contributed to TIFSA, and TIFSA will assume the liabilities of the Company under its indentures and under any of the Company's public debt that remains outstanding upon completion of the Tender Offers and the similar offers referred to above. After the contribution of all of its assets and liabilities, the Company will liquidate and, as a final liquidating distribution, will distribute to Tyco all of the outstanding shares of capital stock of TIFSA, Tyco Electronics and Covidien. Tyco then will distribute the shares of Tyco Electronics and Covidien to its shareholders.

The amendments to the Indentures that are the subject of the Consent Solicitations would clarify:

- with respect to the 1998 Indenture, the application of Article Eight to the Proposed Separation by confirming, for purposes of Article Eight, that the contribution of assets to Tyco Electronics and Covidien will not constitute a sale or conveyance of all or substantially all of Tyco's or the Company's assets, that the contribution to TIFSA of the assets relating to Tyco's fire and security and engineered products and services businesses will constitute the sale or conveyance of substantially all of the Company's (but not Tyco's) assets to TIFSA, that TIFSA will be the successor obligor to the Company under the Indenture and that the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's assets; and

- with respect to the 2003 Indenture, the application of Article X to the Proposed Separation by confirming, for purposes of Article X, that the contribution of assets to Tyco Electronics and Covidien will not constitute a transfer of substantially all of Tyco's or the Company's assets, that the contribution to TIFSA of the assets relating to Tyco's fire and security and engineered products and services businesses will constitute the transfer of substantially all of the Company's (but not Tyco's) assets to TIFSA, that TIFSA will be the successor obligor to the Company under the Indenture, and that the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of Tyco's assets.

## PURPOSE AND BACKGROUND OF THE TENDER OFFERS AND CONSENT SOLICITATIONS

The principal purpose of the Tender Offers and the Consent Solicitations is to acquire all of the outstanding Notes and to clarify the application of Article Eight of the 1998 Indenture and Article X of the 2003 Indenture to the Proposed Separation.

Following the consummation of the Tender Offers and the Consent Solicitations, if any Notes remain outstanding, the Company or its affiliates, from time to time, may acquire Notes through open market purchases, privately negotiated transactions, tender offers, exchange offers, redemptions or otherwise, upon such terms and at such prices as it may determine, which may be more or less than the price paid pursuant to the Tender Offers and may involve cash or other consideration.

The total amount of funds required to purchase all of the Notes sought pursuant to the Tender Offers, to make Early Consent Payments with respect to all of the Notes, to pay any and all accrued and unpaid interest on the Notes, and to pay all fees and expenses in connection therewith is expected to be approximately $7.3 billion, assuming all outstanding Notes are validly tendered prior to the Early Consent Date. The Company intends to obtain these funds primarily from the Bridge Loan Facilities.

## CERTAIN CONSIDERATIONS

**In deciding whether to participate in the Tender Offers and the Consent Solicitations, in addition to the other information contained or incorporated by reference in this Offer to Purchase, each Holder should consider carefully and in its entirety the following:**

**Limited Trading Market**

To the extent that Notes are traded, prices for the Notes may fluctuate greatly depending on the trading volume and the balance between buy and sell orders. To the extent that Notes are tendered and accepted in the Tender Offers, the trading market for the Notes would become more limited. A debt security with a smaller outstanding principal amount available for trading (a smaller "float") may command a lower price than would a comparable debt security with a greater float. Therefore, the market price for Notes not tendered or not purchased may be affected adversely to the extent that the principal amount of Notes tendered pursuant to the Tender Offers reduces the float. The reduced float may tend to make the trading price more volatile. Holders of Notes not tendered or not purchased may attempt to obtain quotations for their Notes from their brokers; however, there can be no assurance that any trading market will exist for the Notes following consummation of the Tender Offers. The extent of the public market for the Notes following consummation of the Tender Offers will depend upon, among other things, the remaining outstanding principal amount of Notes after the Tender Offers, the number of Holders of such Notes remaining at such time and the interest in maintaining a market in the Notes on the part of securities firms and other factors. The Company does not intend to create or sustain a market for any Notes that remain outstanding following consummation of the Tender Offers.

**Effect of the Proposed Amendments on Unpurchased Notes**

The Proposed Amendments will not relieve the Company or TIFSA, as the case may be, from its obligation to make scheduled payments of principal and accrued interest on the Notes not purchased pursuant to the Tender Offers in accordance with the terms of the Indenture as currently in effect. If the transactions described under "The Proposed Separation" occur as anticipated, any such remaining Notes will become obligations of TIFSA, guaranteed by Tyco, and the Company will be released from its obligations on the Notes.

## THE TENDER OFFERS AND CONSENT SOLICITATIONS

**The Offer Documents contain important information that should be read carefully and in their entirety prior to making any decision with respect to the Tender Offers and the Consent Solicitations.**

**Introduction**

The Company hereby offers, upon the terms and subject to the conditions set forth in the Offer Documents, to purchase for cash any and all of the outstanding Notes that are validly tendered (and not validly withdrawn) to the Depositary prior to the Expiration Date for the consideration described below. The Company will accept tenders of Notes in principal amounts of $1,000 or integral multiples thereof.

**Total Consideration**

The Company is offering to purchase for cash, on the terms and subject to the conditions described in the Offer Documents, any and all of the outstanding Notes. The Dealer Managers will calculate the Total Consideration, which includes the Early Consent Payment, for each of the Notes, as the present value of the cash payments of interest and principal due on such Notes, based on a yield to maturity (the "Cash Flow Yield") for such Notes equal to the yield to maturity of the UST Reference Security for such Notes calculated as described below (the "Reference Yield" for such Notes) plus the fixed spread for such Notes indicated in the table on the cover page.

Specifically, the Dealer Managers will calculate the Total Consideration for each of the Notes equal to the value per $1,000 principal amount of such Notes, assuming those Notes will be repaid in full at maturity, of all remaining payments of principal thereof and interest thereon to be made through maturity, discounted to the date of payment of the Total Consideration, at a rate equal to the Cash Flow Yield for such Notes (in a manner consistent with the methodology underlying the formula for the Total Consideration set forth in Annex C), minus accrued and unpaid interest per $1,000 principal amount of such Notes to, but excluding, the date of payment of the Total Consideration. In addition, each Holder will receive any and all accrued and unpaid interest on such $1,000 principal amount up to, but not including, the Payment Date.

The Dealer Managers will calculate the Reference Yield used to determine the Total Consideration for each of the Notes in accordance with standard market practice based on the bid-side price of the UST Reference Security for such Notes as displayed on Bloomberg Bondtrader Pages PX1 through PX6 as of 2:00 p.m., New York City time, two business days prior to the Expiration Date (or, if the dealer managers determine that such pages are not operational or are displaying inaccurate information at that time, the bid-side price of such UST Reference Security as determined at or around 2:00 p.m., New York City time, on such date by such other means as the Dealer Managers may consider to be appropriate under the circumstances). The Company will issue a press release specifying the final Reference Yields promptly after they are calculated.

The Total Consideration for each of the Notes includes an Early Consent Payment of $30.00 per $1,000 principal amount of Notes payable only to Holders who validly tender (and do not validly withdraw) their Notes prior to the Early Consent Date. Upon the terms and subject to the conditions set forth in this Offer to Purchase, the Company will pay the Total Consideration to Holders who validly tender (and do not validly withdraw) their Notes prior to the Early Consent Date. Holders who tender their Notes after the Early Consent Date and prior to the Expiration Date will receive only the Purchase Price as described above. Payment of the Total Consideration or the Purchase Price, as applicable, will be made promptly after the Expiration Date, if such Notes are accepted for payment.

Payment for Notes validly tendered (and not validly withdrawn) and accepted for payment will be made by the deposit of immediately available funds by the Company with the Depositary. The Depositary will act as agent for the tendering Holders for the purpose of receiving payments from the Company and transmitting such payments to Holders.

**Early Consent Payment**

Upon the terms and subject to the conditions of the Consent Solicitations (including, if either of the Consent Solicitations are extended or amended, the terms and conditions of any such extension or amendment), the Company is soliciting from Holders Consents with respect to the Proposed Amendments. The Total Consideration includes the Early Consent Payment, and Holders who tender their Notes after the Early Consent Date will, upon purchase of their Notes by the Company, receive only the Purchase Price, which equals the Total Consideration minus the Early Consent Payment. Holders who desire to tender their Notes pursuant to the Tender Offers and receive the Total Consideration (i.e., the Purchase Price and the Early Consent Payment) are required to tender their Notes and deliver their Consents to the Proposed Amendments on or prior to the Early Consent Date. If a Holder's Notes are not validly tendered pursuant to the Tender Offers on or prior to the Early Consent Date such Holder will not receive an Early Consent Payment, even though, assuming the Requisite Consents are obtained and the Supplemental Indentures are executed, the Proposed Amendments will be effective and operative as to any of such Holder's Notes that are not purchased in the Tender Offers. See "Proposed Amendments to the Indenture."

**The Purchase Price and, if applicable, the Early Consent Payment will be paid on the Payment Date assuming the Notes are accepted for purchase and the satisfaction or waiver of the conditions to the Tender Offers and Consent Solicitations. HOLDERS WHO VALIDLY TENDER (AND DO NOT VALIDLY WITHDRAW) THEIR NOTES WILL BE DEEMED BY SUCH TENDER TO HAVE DELIVERED THEIR CONSENTS AND, IF SUCH TENDER IS AFTER THE EARLY CONSENT DATE, WILL RECEIVE THE PURCHASE PRICE, BUT ARE NOT ENTITLED TO RECEIVE THE EARLY CONSENT PAYMENT.**

Tenders of Notes pursuant to the Tender Offers may be validly withdrawn and Consents delivered pursuant to the Consent Solicitations may be validly revoked at any time prior to the Early Consent Date by following the procedures described herein. A Holder may not validly revoke a Consent except by validly withdrawing such Holder's previously tendered Notes, and the valid withdrawal of a Holder's previously tendered Notes will constitute the concurrent valid revocation of such Holder's Consent. Any Notes tendered on or prior to the Early Consent Date that are not validly withdrawn prior to the Early Consent Date may not be withdrawn thereafter. A Holder who validly withdraws previously tendered Notes will not receive the Purchase Price or an Early Consent Payment, unless such Notes are retendered on or prior to the Early Consent Date (in which case the Holder will receive the Total Consideration) or the Expiration Date (in which case the Holder will be entitled to receive the Purchase Price only).

The Company has reserved the right to extend, amend or terminate the Tender Offers and the Consent Solicitations. See "Expiration Date; Extension; Amendment; Termination."

## PROPOSED AMENDMENTS TO THE INDENTURES

**Proposed Amendments to the 1998 Indenture**

The Company is soliciting the Consents of the Holders of the 1998 Notes to the 1998 Indenture Amendments substantially in the form of Annex A hereto and to the execution and delivery by the Company and Tyco of the 1998 Supplemental Indenture to effect the 1998 Indenture Amendments. All statements herein regarding the substance of any provision of the 1998 Indenture Amendments and the 1998 Indenture are qualified in their entirety by reference to the language set forth in Annex A and to the 1998 Indenture. Initially capitalized terms used below that are not otherwise defined herein have the meanings assigned to them in the 1998 Indenture. Copies of the 1998 Indenture are available upon request from the Information Agent at the address and telephone number set forth on the back cover of this Offer to Purchase.

The 1998 Indenture Amendments would amend Article Eight of the 1998 Indenture to clarify the applicability of Article Eight to the Proposed Separation. While Tyco and the Company believe that the various steps in the Proposed Separation are not prohibited by the 1998 Indenture, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Tender Offers, to eliminate any uncertainty by amending Article Eight of the 1998 Indenture to clarify that:

9

- the contribution of the Company's assets and liabilities relating to Tyco's electronics businesses to Tyco Electronics and the Company's assets and liabilities relating to Tyco's healthcare businesses to Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's or the Company's assets;

- the contribution of the Company's assets and liabilities relating to Tyco's fire and security and engineered products and services business to TIFSA will constitute the conveyance of substantially all of the Company's assets (but not all or substantially all of Tyco's assets) to TIFSA;

- upon compliance with the conditions precedent set forth in Article Eight, TIFSA will be the successor obligor to the Company under the Indenture and the Notes and the Company will be discharged from its obligations under the Indenture and the Notes and may be liquidated and dissolved; and

- the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's assets.

**The 2003 Indenture Amendments**

The Company is soliciting the Consents of the Holders of the 2003 Notes to the 2003 Indenture Amendments substantially in the form of Annex B hereto and to the execution and delivery by the Company and Tyco of the 2003 Supplemental Indenture to effect the 2003 Indenture Amendments. All statements herein regarding the substance of any provision of the 2003 Indenture Amendments and the 2003 Indenture are qualified in their entirety by reference to the language set forth in Annex B and to the 2003 Indenture. Initially capitalized terms used below that are not otherwise defined herein have the meanings assigned to them in the 2003 Indenture. Copies of the 2003 Indenture are available upon request from the Information Agent at the address and telephone number set forth on the back cover of this Offer to Purchase.

The 2003 Indenture Amendments would amend Article X of the 2003 Indenture to clarify the applicability of Article X to the Proposed Separation. While Tyco and the Company believe that the various steps in the Proposed Separation are not prohibited by the 2003 Indenture, Tyco and the Company believe it is desirable, prior to completing the Proposed Separation but after completion of the Tender Offers, to eliminate any uncertainty by amending Article X of the 2003 Indenture to clarify that:

- the contribution of the Company's assets and liabilities relating to Tyco's electronics businesses to Tyco Electronics and the Company's assets and liabilities relating to Tyco's healthcare businesses to Covidien will not constitute the sale or conveyance of all or substantially all of Tyco's or the Company's assets;

- the contribution of the Company's assets and liabilities relating to Tyco's fire and security and engineered products and services business to TIFSA will constitute the conveyance of substantially all of the Company's assets (but not all or substantially of Tyco's assets) to TIFSA;

- upon compliance with the conditions precedent set forth in Article X, TIFSA will be the successor obligor to the Company under the Indenture and the Notes and the Company will be discharged from its obligations under the Indenture and the Notes and may be liquidated and dissolved; and

- the distribution to Tyco's shareholders of all of the shares of capital stock of Tyco Electronics and Covidien will not constitute the transfer of all or substantially all of Tyco's assets.

**General**

The Proposed Amendments will be set forth in the Supplemental Indentures. The Supplemental Indentures will be executed on, or as soon as practicable after, the Early Consent Date by the Company, Tyco and the Trustee if the Requisite Consents have been obtained.

The Supplemental Indentures will become effective upon execution by the Company, Tyco and the Trustee, but will provide that the Proposed Amendments will not become operative until the date the Company notifies the Trustee and the Depositary that an amount of Notes representing the Requisite Consents with respect to such Proposed Amendments has been accepted for purchase. The Indentures will remain in effect, without giving effect to the Proposed Amendments,

until the Proposed Amendments become operative. The 1998 Indenture Amendments and the 2003 Indenture Amendments are each being presented as separate and complete proposals. Consequently, the delivery of a Consent by a Holder is the delivery of a Consent to all of the either all of the 1998 Indenture Amendments or all of the 2003 Indenture Amendments, as applicable, and a Consent purporting to consent to only some of the applicable Proposed Amendments will not be valid. **If the Supplemental Indentures are executed and the Proposed Amendments become operative, the Holders of Notes that are not purchased for any reason will be bound thereby even though they have not consented to the Proposed Amendments. See "Certain Considerations."**

In addition, the Company reserves the right to make certain technical changes to the Indenture pursuant to the provisions thereof and to include such changes in the Supplemental Indenture.

## EXPIRATION DATE; EXTENSION; AMENDMENT; TERMINATION

The Tender Offers will expire at 12:00 midnight, New York City time, on Thursday, May 24, 2007, unless extended or earlier terminated by the Company. The Consent Solicitations will expire at 5:00 p.m., New York City time, on Thursday, May 10, 2007, unless extended or earlier terminated by the Company. In the event the Tender Offers and the Consent Solicitations are extended, the terms "Expiration Date" and "Early Consent Date" with respect to such extended Tender Offers or Consent Solicitations shall mean the time and date on which the Tender Offers or the Consent Solicitations, as so extended, shall expire. The Company reserves the right to extend either of the Tender Offers and the Consent Solicitations from time to time or for such period or periods as it may determine in its sole discretion by giving oral (to be confirmed in writing) or written notice of such extension to the Depositary and by making a public announcement by press release to the *Dow Jones News Service, Business Wire,* or another similar service, at or prior to 9:00 a.m., New York City time, on the next business day following the previously scheduled Early Consent Date or Expiration Date, as the case may be. During any extension of a Tender Offer, all Notes previously tendered and not accepted for purchase will remain subject to such Tender Offer and, subject to the terms and conditions of such Tender Offer, may be accepted for purchase by the Company. During any extension of the Consent Solicitations, all Consents validly delivered to the Depositary will remain effective unless validly revoked prior to such extended Early Consent Date.

To the extent it is legally permitted to do so, the Company reserves the right, in its sole discretion, at any time prior to the Expiration Date, to waive any condition to either of the Tender Offers or the Consent Solicitations, to amend any of the terms of either of the Tender Offers or the Consent Solicitations, and to modify the Purchase Price of any or all Notes or the Early Consent Payment. Any waiver or amendment to either of the Tender Offers or the Consent Solicitations will apply to all Notes tendered pursuant to such Tender Offer, except that any modification of the Purchase Price shall only apply to the particular series of Notes affected. If the Company makes a material change in the terms of the Tender Offers or waives a material condition of either of the Tender Offers, the Company will give oral (to be confirmed in writing) or written notice of such amendment or such waiver to the Depositary and will disseminate additional Offer Documents and will extend the applicable Tender Offer to the extent required by law. If either of the Consent Solicitations are amended on or prior to the Early Consent Date in a manner determined by the Company to constitute a material change to Holders of the applicable Notes, the Company promptly will give oral (to be confirmed in writing) or written notice of such amendment to the Depositary, disseminate additional Consent Solicitations materials and, if necessary, extend the Consent Solicitations with respect to the applicable Tender Offer for a period deemed by the Company to be adequate to permit Holders of the applicable Notes to deliver or revoke their Consents. If any such amendment occurs after the Early Consent Date, the Company may solicit Consents for a revised supplemental indenture.

The Company reserves the right, in its sole discretion, to terminate either of the Tender Offers and Consent Solicitations. Any such termination will be followed promptly by public announcement thereof. In the event the Company terminates either of the Tender Offers, it shall give immediate notice thereof to the Depositary, and all applicable Notes theretofore tendered and not accepted for payment shall be returned promptly to the tendering Holders thereof. In the event that either of the Tender Offers and the Consent Solicitations are terminated, withdrawn or otherwise not consummated prior to the Expiration Date, neither the Purchase Price nor the Early Consent Payment will become payable. See "Withdrawal of Tenders and Revocation of Consents; Absence of Appraisal Rights" and "Conditions of the Tender Offers and Consent Solicitations."

## ACCEPTANCE OF NOTES FOR PURCHASE; PAYMENT FOR NOTES AND CONSENTS

Upon the terms and subject to the conditions of the Tender Offers, the Company will accept for purchase Notes validly tendered pursuant to the Tender Offers (or defectively tendered, if such defect has been waived by the Company)

## ANNEX A

### THE PROPOSED AMENDMENTS TO THE 1998 INDENTURE

The following is a description of the 1998 Indenture Amendments to be made effective in accordance with the terms of Article Seven of the 1998 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 1998 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 1998 Supplemental Indenture.

The provisions of the 1998 Indenture reprinted below are qualified in their entirety by reference to the 1998 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex A without definition have the same meanings as set forth in the 1998 Indenture.

**Article Eight of the Indenture would be amended to read in its entirety as follows:**

SECTION 8.1       Issuer and Guarantors May Consolidate, etc., on Certain Terms.

(a)   Each of the Issuer, Tyco and any other Guarantors, if any, covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless (i) either the Issuer or such Guarantor, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of the Issuer or such Guarantor, as the case may be (if other than the Issuer or such Guarantor, as the case may be), shall expressly assume the due and punctual payment of the principal of and interest on all the Securities or the obligations under the Guarantees, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by the Issuer or such Guarantor, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Issuer or such Guarantor, as the case may be, or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or agreement.

(b)   In connection with the Separation Transactions (as defined in Section 8.1(c)), the provisions of Section 8.1(a) shall be interpreted as follows:

(i)        the transfer of a portion of the Issuer's assets to Tyco Electronics (as defined in Section 8.1(c)) and a portion of the Issuer's assets to Covidien (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed not to be a sale or conveyance of all or substantially all of the Issuer's assets or Tyco's assets;

(ii)       the transfer of a portion of the Issuer's assets to Tyco International Finance S.A. (as defined in Section 8.1(c)), as contemplated by the Separation Transactions, shall be deemed to be a conveyance of substantially all of the Issuer's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

(iii)      the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c) For purposes of this Article, the following terms have the meanings ascribed to them.

*"Covidien"* refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

*"Separation Transactions"* means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies: one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.). The steps of the Separation Transactions will include: (i) the contribution of the assets and liabilities of the healthcare businesses of the Issuer to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Issuer to Tyco Electronics Group S.A. and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Issuer to Tyco

A-1

International Finance S.A.; (ii) the assumption by Tyco International Finance S.A. as the successor entity under this Article of the Issuer's obligations under this Indenture and under the Securities, which will continue to be guaranteed by Tyco; (iii) the liquidation of the Issuer and the liquidating distribution to Tyco in connection therewith of all of the shares of capital stock of Covidien Ltd., Tyco Electronics Ltd. and Tyco International Finance S.A.; and (iv) the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd.

*"Tyco Electronics"* refers to both Tyco Electronics Ltd., a Bermuda company, and Tyco Electronics Group S.A., a Luxembourg company.

*"Tyco International Finance S.A."* refers to Tyco International Finance S.A., a Luxembourg company.

SECTION 8.2     Successor Entity Substituted.

In case of any such consolidation, merger, sale or conveyance in which the Issuer or any Guarantor, as the case may be, is not the continuing entity, and following such assumption by the successor entity, such successor entity shall succeed to and be substituted for the Issuer or such Guarantor, as the case may be, with the same effect as if it had been named herein. Such successor entity may cause to be signed, and may issue either in its own name or in the name of the Issuer or such Guarantor, as the case may be, prior to such succession any or all of the Securities or Guarantees as the case may be, issuable hereunder which theretofore shall not have been signed by the Issuer or such Guarantor, as the case may be, and delivered to the Trustee; and, upon the order of such successor entity instead of the Issuer or such Guarantor, as the case may be, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or Guarantees, as the case may be, which previously shall have been signed and delivered by the officers of the Issuer or such Guarantor, as the case may be, to the Trustee for authentication, and any Securities or Guarantees, as the case may be, which such successor entity thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities or Guarantees, as the case may be, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or Guarantees, as the case may be, theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities or such Guarantees, as the case may be, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale, lease or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities or Guarantees thereafter to be issued as may be appropriate.

In the event of any such sale or conveyance (other than a conveyance by way of lease) the Issuer or any Guarantor or any successor entity which shall theretofore have become such in the manner described in this Article shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

SECTION 8.3     Opinion of Counsel to Trustee.

The Trustee, subject to the provisions of Sections 5.1 and 5.2, may receive an Opinion of Counsel, prepared in accordance with Section 11.5, as conclusive evidence that any such consolidation, merger, sale, lease or conveyance, and any such assumption, and any such liquidation or dissolution, complies with the applicable provisions of this Indenture.

SECTION 8.4     Exception Applicable to Certain Guarantors.

The provisions of this Article shall not apply to a merger, consolidation, sale or conveyance of a Guarantor other than Tyco, if, in connection with such merger, consolidation, sale or conveyance, the Guarantee of such Guarantor is released and discharged in accordance with Section 3.11(b).

## ANNEX B

## THE PROPOSED AMENDMENTS TO THE 2003 INDENTURE

The following is a description of the 2003 Indenture Amendments to the 2003 Indenture to be made effective in accordance with the terms of Article IX of the 2003 Indenture. Holders of Notes who desire to be eligible to receive the Total Consideration, including the Early Consent Payment, must tender Notes and Consent to the 2003 Indenture Amendments on or prior to the Early Consent Date. Such amendments will be contained and reflected in the 2003 Supplemental Indenture.

The provisions of the 2003 Indenture reprinted below are qualified in their entirety by reference to the 2003 Indenture, copies of which can be obtained without charge from the Information Agent. Capitalized terms used in this Annex B without definition have the same meanings as set forth in the 2003 Indenture.

**Article X of the Indenture would be amended to read in its entirety as follows:**

Section 10.01    <u>Consolidation, Merger and Sale of Assets.</u>

(a)   Each of Tyco and the Company covenants that it will not merge or consolidate with any other Person or sell or convey all or substantially all of its assets to any Person, unless

(i)   either Tyco or the Company, as the case may be, shall be the continuing entity, or the successor entity or the Person which acquires by sale or conveyance substantially all the assets of Tyco or the Company, as the case may be (if other than Tyco or the Company, as the case may be), (A) shall expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all the Securities, or, if applicable, the obligations under any Guarantee, as the case may be, according to their tenor, and the due and punctual performance and observance of all of the covenants and agreements of this Indenture to be performed or observed by Tyco or the Company, as the case may be, by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such Person and (B) is an entity treated as a "corporation" for United States tax purposes or Tyco or the Company, as the case may be, obtains either (x) an opinion, in form and substance reasonably acceptable to the Trustee, of tax counsel of recognized standing reasonably acceptable to the Trustee, which counsel shall include Gibson, Dunn & Crutcher LLP, or (y) a ruling from the United States Internal Revenue Service, in either case to the effect that such merger or consolidation, or such sale or conveyance, will not result in an exchange of the Securities for new debt instruments for United States federal income tax purposes; and

(ii)   no Event of Default and no event that, after notice or lapse of time or both, would become an Event of Default shall be continuing immediately after such merger or consolidation, or such sale or conveyance.

(b)   In connection with the Separation Transactions (as defined in Section 10.03), the provisions of Section 10.01(a) shall be interpreted as follows:

(i)   the transfer of a portion of the Company's assets to Tyco Electronics (as defined in Section 10.03) and a portion of the Company's assets to Covidien (as defined in Section 10.03) as contemplated by the Separation Transactions shall be deemed not to be a sale or conveyance of all or substantially all of the Company's assets or Tyco's assets;

(ii)   the transfer of a portion of the Company's assets to Tyco International Finance S.A. (as defined in Section 10.03) as contemplated by the Separation Transactions shall be deemed to be a conveyance of substantially all of the Company's assets to Tyco International Finance S.A. and be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets; and

B-1

(iii)    the distribution by Tyco to its shareholders of the shares of Covidien Ltd. and Tyco Electronics Ltd. shall be deemed not to be a sale or conveyance of all or substantially all of Tyco's assets.

(c)  The Company shall deliver to the Trustee prior to the consummation of the proposed transaction an Officer's Certificate to the foregoing effect and an Opinion of Counsel stating that the proposed transaction and such supplemental indenture comply with this Indenture.

(d)  To the extent that a Board Resolution or supplemental indenture pertaining to any series provides for different provisions relating to the subject matter of this Article X, the provisions in such Board Resolution or supplemental indenture shall govern for purposes of such series.

Section 10.02    Successor Person Substituted.

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of Tyco or the Company, as the case may be, the successor Person formed by such consolidation or into or with which Tyco or the Company, as the case may be, is merged or to which such sale, lease, conveyance or other disposition is made shall succeed to, and be substituted for, and may exercise every right and power of, Tyco or the Company, as the case may be, under this Indenture with the same effect as if such successor Person had been named as Tyco or the Company, as the case may be, herein.  In the event of any such sale or conveyance (other than a conveyance by way of lease) Tyco or the Company, as the case may be, or any successor entity which shall theretofore have become such in the manner described in this Article, shall be discharged from all obligations and covenants under this Indenture, the Securities and any Guarantee and may be liquidated and dissolved.

Section 10.03    Definitions of Certain Terms.

For purposes of this Article X, the following terms have the meanings ascribed to them.

"Covidien" refers to both Covidien Ltd., a Bermuda company, and Covidien International Finance S.A., a Luxembourg company.

"Separation Transactions" means the series of transactions pursuant to which Tyco will separate its businesses into three independent, publicly traded companies: one for its healthcare businesses (Covidien); one for its electronics businesses (Tyco Electronics); and a third for its fire and security and engineered products and services businesses (Tyco and Tyco International Finance S.A.).  The steps of the Separation Transactions will include:  (i) the contribution of the assets and liabilities of the healthcare businesses of the Company to Covidien International Finance S.A., the contribution of the assets and liabilities of the electronics businesses of the Company to Tyco Electronics Group S.A. and the contribution of the assets and liabilities of the fire and security and engineered products and services businesses of the Company to Tyco International Finance S.A.; (ii) the assumption by Tyco International Finance S.A. as the successor person under this Article X of the Company's obligations under this Indenture and under  the Securities, which will continue to be guaranteed by Tyco; (iii) the liquidation of the Company and the liquidating distribution to Tyco in connection therewith of the shares of Covidien Ltd., Tyco Electronics Ltd. and Tyco International Finance S.A.; and (iv) the distribution by Tyco to its shareholders of all of the shares of capital stock of Covidien Ltd. and Tyco Electronics Ltd.

"Tyco Electronics" refers to both Tyco Electronics Ltd., a Bermuda corporation and Tyco Electronics Group S.A., a Luxembourg company.

"Tyco International Finance S.A." refers to Tyco International Finance S.A., a Luxembourg company.